## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Exactech, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12441 ([_____])<br><br>(Joint Administration Requested) |

## DEBTORS' MOTION FOR ENTRY OF (A) AN ORDER (I) AUTHORIZING DEBTORS TO FILE A CONSOLIDATED (A) CREDITOR MATRIX AND (B) TOP 30 CREDITORS LIST, (II) AUTHORIZING REDACTION OF CERTAIN PERSONAL IDENTIFICATION INFORMATION, AND (III) GRANTING RELATED RELIEF; AND (B) A SUPPLEMENTAL ORDER AUTHORIZING REDACTION OF CERTAIN ADDITIONAL PERSONAL IDENTIFICATION INFORMATION

Exactech, Inc. and its affiliated debtors and debtors in possession (each, a "Debtor" and collectively, the "Debtors") in the above-captioned chapter 11 cases, by and through their undersigned proposed counsel, hereby submit this motion (this "Motion") for entry of an order granting the relief described below. In support hereof, the Debtors rely on the *Declaration of Jesse York, Chief Restructuring Officer of Exactech, Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration")[2] filed concurrently herewith, and further represent as follows:

### JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  Osteon Holdings, Inc. (7042); Osteon Intermediate Holdings I, Inc. (7778); Osteon Intermediate Holdings II, Inc. (1292); Exactech, Inc. (3930); and XpandOrtho, Inc. (4250).  The Debtors' service address is 2320 NW 66th Court, Gainesville, Florida 32653.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

*Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3.     The statutory bases for the relief requested herein are sections 105(a), 107(c), 342(a), and 521 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 1007, 2002, 9007, 9013, and 9037 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 1001-1(c), 1007-1, 1007-2, 2002-1, 9013-1(m), and 9018-1(d).

## RELIEF REQUESTED

4.     The Debtors respectfully request entry of (a) an order, substantially in the form attached hereto as **Exhibit A** (the "Order"): (i) authorizing the Debtors to file a consolidated (a) list of creditors (the "Consolidated Creditor Matrix") in lieu of submitting a separate mailing matrix for each Debtor and (b) list of the Debtors' thirty (30) largest unsecured creditors (the "Consolidated Top 30 Creditors List") in lieu of submitting a separate list for each Debtor; (ii) authorizing the Debtors to redact certain personal identification information; and (iii) granting related relief; and (b) a supplemental order, substantially in the form attached hereto as **Exhibit B** (the "Supplemental Order"), authorizing the Debtors to redact the names and other

Personal Data of any natural person to the extent they are processed subject to the UK GDPR or EU GDPR (as such terms are defined below).

**BACKGROUND**

5.        On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committee of unsecured creditors has yet been appointed in these chapter 11 cases.

6.        Founded in 1985, the Debtors, together with their non-Debtor subsidiaries (collectively, the "Company"), are a global medical device company that designs, manufactures, and markets joint replacement implants and related surgical instruments to help surgeons worldwide make patients more mobile.  The Company's broad and innovative products include hip implants, knee implants, extremity implants, and ExactechGPS systems, among others.  The Company directs commercial operations in the United States as well as nine international markets, including Spain, Australia, Japan, the United Kingdom, and Italy.  The Company is headquartered in Gainesville, Florida and employs approximately 900 individuals worldwide.  Since its founding in 1985, the Company has expanded its distribution to over 30 countries.

7.        Additional factual background regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the First Day Declaration, filed concurrently herewith and incorporated herein by reference.

**BASIS FOR RELIEF REQUESTED**

**I.     THE USE OF A CONSOLIDATED CREDITOR MATRIX IS APPROPRIATE AND SHOULD BE APPROVED**

8.      Section 521(a)(1)(A) of the Bankruptcy Code requires a debtor to file a list of creditors.  11 U.S.C. § 521(a)(1)(A).  Additionally, Bankruptcy Rule 1007(a)(1) requires a debtor to file "a list containing the name and address of each entity included or to be included on Schedules D, E/F, G, and H."  Fed. R. Bankr. P. 1007(a)(1).  Likewise, Local Rule 1007-2(a) requires a debtor to file, together with its voluntary petition, a list containing the name and complete address of each creditor.  Del. Bankr. L.R. 1007-2(a).  Local Rule 2002-1(f)(v) further requires each debtor in jointly administered cases, or its duly retained claims and noticing agent, to maintain a separate creditor matrix for each debtor.  Del. Bankr. L.R. 2002-1(f)(v).

9.      Local Rule 1001-1(c), however, authorizes the Court to modify the application of the Local Rules "in the interest of justice."  Del. Bankr. L.R. 1001-1(c).  Section 105(a) of the Bankruptcy Code allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

10.     The Debtors submit that permitting them to maintain the Consolidated Creditor Matrix, in lieu of filing a separate creditor matrix for each Debtor, is warranted in these chapter 11 cases.  Requiring the Debtors to segregate and convert their computerized records to a Debtor-specific creditor matrix format would be an unnecessarily burdensome task and result in duplicate mailings.  Because the Debtors have thousands of creditors and other parties in interest, converting the Debtors' computerized information to a format compatible with the matrix requirements would also greatly increase the risk of error with respect to the information already on computerized systems.

11.     Furthermore, the Debtors have filed an application to retain and employ a claims and noticing agent contemporaneously with the filing of this Motion.  If such application is granted, the claims and noticing agent will assist with, among other tasks, mailing of notices to parties.   The Debtors believe that the Consolidated Creditor Matrix will be sufficient to allow their claims and noticing agent to provide notice to all creditors as well as applicable parties in interest during the chapter 11 cases, as required by Local Rule 1007-2.

## II.     THE USE OF A CONSOLIDATED TOP 30 CREDITORS LIST IS APPROPRIATE AND SHOULDBE APPROVED

12.     Pursuant to Bankruptcy Rule 1007(d), a debtor must file, together with its voluntary petition, a list setting forth the names, addresses, and claim amounts of the creditors, excluding insiders, who hold the 20 largest unsecured claims in the debtor's case.  Fed. R. Bankr. P. 1007(d).

13.     To provide the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") with a clear picture of the Debtors' creditor constituency, however, the Debtors have prepared the Consolidated Top 30 Creditors List as opposed to a list of the twenty (20) largest unsecured creditors for each Debtor.   One of the primary purposes of filing a list of a debtor's largest unsecured creditors is to facilitate the U.S. Trustee's evaluation of the types and amounts of unsecured claims asserted against a debtor so that the U.S. Trustee can make an informed decision when identifying potential candidates to serve on an official committee of unsecured creditors.  Because the Debtors' significant unsecured creditors are captured on the Consolidated Top 30 Creditors List, it will provide the U.S. Trustee with a sufficiently clear picture of the Debtors' unsecured creditor constituency.  Compiling separate top twenty (20) creditor lists for each individual Debtor would consume a substantial amount of the Debtors' time and resources.   On the other hand, the Consolidated Top 30 Creditors List will help alleviate administrative burdens, costs, and the possibility of duplicative service.  Accordingly, the Debtors

submit that filing a single consolidated list of the top thirty (30) largest unsecured creditors in these cases is appropriate.

14.    Courts in this jurisdiction have approved relief similar to the relief requested herein with respect to filing a single consolidated list of the largest unsecured creditors of a debtor and its debtor affiliates. *See, e.g., In re Never Slip Holdings, Inc.*, No. 24-10663 (LSS) (Bankr. D. Del. April 3, 2024) (authorizing a consolidated top fifty general unsecured creditors list); *In re FB Debt Fin. Guar., LLC,* No. 23-10025 (KBO) (Bankr. D. Del. Jan. 13, 2023) (same); *In re OSG Grp. Holdings, Inc.,* No. 22-10718 (JTD) (Bankr. D. Del. Aug. 9, 2022) (same); *In re Enjoy Tech., Inc.*, No. 22-10580 (JKS) (Bankr. D. Del. July 1, 2022) (authorizing a consolidated top thirty general unsecured creditors list); *In re TPC Grp. Inc.*, No. 22-10493 (CTG) (Bankr. D. Del. June 30, 2022) (same); *In re Nine Point Energy Holdings, Inc.*, No. 21-10570 (MFW) (Bankr. D. Del. Apr. 6, 2021) (same).[3]

### III.    CAUSE EXISTS TO REDACT CERTAIN PERSONAL IDENTIFICATION INFORMATION CONTAINED IN THE CONSOLIDATED CREDITOR MATRIX AND CONSOLIDATED TOP 30 CREDITORS LIST

15.    Section 107(c) of the Bankruptcy Code provides that the Court "for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual[:] . . . [a]ny means of identification . . . contained in a paper filed, or to be filed in a case under" the Bankruptcy Code.  11 U.S.C. § 107(c)(1)(A).

16.    In addition, privacy protection regulations are being enacted in key jurisdictions. For instance, in 2018, the state of California enacted the California Consumer Privacy Act of 2018

---

[3]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

(the "CCPA"), which provides individuals domiciled in California the right to request their collected personal information be deleted by entities subject to the regulation.[4]  Violators risk injunctions and civil penalties of up to $2,500 for *each* violation and up to $7,500 for *each intentional* violation.  Cal. Civ. Code § 1798.155.   The CCPA applies to all for-profit entities doing business in California (the "CCPA Entities") that collect and process consumers' personal data and satisfy one of the following criteria:  (a) annual gross revenue in excess of $25 million; (b) buys, shares, or sells the personal information of 100,000 or more consumers, households, or devices for commercial purposes; or (c) receives 50% or more of their annual revenues from selling or sharing consumers' personal information.  Cal. Civ. Code § 1798.140(d)(1).  The Debtors may qualify as CCPA Entities because the Debtors' products are sold in California and the Debtors' annual gross revenue for 2023 exceeded $25 million.

17.    Furthermore, privacy protection regulations have been enacted in other jurisdictions.  For example, the United Kingdom General Data Protection Regulation (the "UK GDPR"), the European General Data Protection Regulation (the "EU GDPR"), and similar laws in other countries impose significant constraints on the processing (which includes the transferring or disclosing of) information relating to identified or identifiable individuals (which includes names and home addresses of individuals) ("Personal Data").  The UK GDPR and EU GDPR apply to all organizations processing Personal Data in the context of an establishment in the United Kingdom or a European Economic Area member state (and, in some circumstances, organizations established in other countries when processing Personal Data relating to individuals located in the

---

[4]    In Pier 1 Imports, Judge Huennekens was aware that publishing certain unredacted documents on the docket could implicate serious CCPA issues:  "the State of California has adopted very extensive privacy provisions that would cover something like this.  And do we need -- I mean, and this does -- this company does business in California. I mean, they're going to be concerns there, are there not?" Hr'g Tr. 43:2–6, *In re Pier 1 Imports, Inc.*, No. 20-30805 (KRH) (Bankr. E.D. Va. Mar. 13, 2020) [Docket No. 359].

United Kingdom or European Economic Area, respectively).  In addition, to the extent a United Kingdom organization processed personal data of individuals located outside the United Kingdom during the post-Brexit transition period, the EU GDPR continues to apply to the processing of that Personal Data for the time being.

18.     The UK GDPR and EU GDPR require a legal basis for any processing (including disclosure) of Personal Data.  The only possible legal basis which may apply for disclosing the Personal Data in this instance would be the legitimate interests ground (Article 6(1)(f) UK GDPR and EU GDPR).  This ground, however, will not apply where the processing is not necessary for the relevant purpose, which includes where there is a less intrusive way of achieving that purpose. This ground will also not apply where the rights and freedoms of the relevant individuals override the legitimate interest in question when balanced against it.  In addition, processing (including disclosure) under the UK GDPR and EU GDPR must comply with the principle of data minimization, which also requires that any processing must be necessary in relation to its purpose. The disclosure of the unredacted home addresses of individual creditors is not necessary for the purpose of the relevant parties reviewing the amounts owed to those individuals as part of the chapter 11 process, and redaction would be a less intrusive way of achieving this purpose.  The right of individual creditors not to have their unredacted home addresses disclosed would also override the legitimate interest of disclosing them to assist with the chapter 11 cases.  Disclosure in an unredacted form therefore risks breaching the UK GDPR and EU GDPR on account of (i) having no legal basis and (ii) breaching the minimization principle.

19.     Violators of the UK GDPR and EU GDPR risk severe penalties.  If an organization is found to have processed information in breach of the UK GDPR, the organization may be fined up to the higher of £20,000,000 or 4% of worldwide annual turnover—i.e., total annual revenues—

of the preceding financial year.  *See* Data Protection Act 2018, section 157(5)(a) (as amended by Data Protection, Privacy and Electronic Communications (Amendments etc) (EU Exit) Regulations 2019).  Similarly, if an organization is found to have processed information in breach of the EU GDPR, the organization may be fined up to the higher of €20,000,000 or 4% of worldwide annual turnover—i.e., total annual revenues—of the preceding financial year.  *See* General Data Protection Regulation (EU) 2016/679, art. 83(5).  The processing of information includes transferring or disclosing it to others.  The UK GDPR and EU GDPR may apply to the Debtors, specifically as certain of the Debtors may be processing data relating to their creditors in the context of an establishment in the United Kingdom or in a member state of the European Economic Area.

20.     As a result of the foregoing, out of an abundance of caution, the Debtors respectfully submit that it is appropriate to authorize the Debtors to redact from any paper filed or to be filed with the Court in the chapter 11 cases the names (solely as required under the UK GDPR and the EU GDPR), email addresses, and home addresses of any of the Debtors' individual creditors, to the extent applicable, to ensure the Debtors are not exposed to potential civil liability and significant financial penalties.  For the avoidance of doubt, the relief requested herein with respect to the redaction of individual names to comply with UK GDPR and EU GDPR is subject to entry of the Supplemental Order.

21.     Further, given the potential for the unintentional disclosure of sensitive personal health information of certain of the Debtors' creditors, including any potential personal injury claimants, the Debtors are also requesting authority pursuant to this Motion and the *Debtors' Motion for Entry of an Order (I) Establishing Deadlines to File Proofs of Claim, Including Claims Under 11 U.S.C. § 503(B)(9), and Requests for Payment Procedures Related*

*Thereto, (II) Establishing an Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form and Manner for Filing Proofs of Claim, (IV) Approving Form and Manner of Notice Thereof, and (V) Granting Related Relief*, filed contemporaneously herewith, to remove such sensitive information from any paper filed or to be filed with the Court or made publicly available in these chapter 11 cases, including redacting such information from proof of claim forms before they are made publicly available on the Debtors' claims register.

22.     In addition, disclosing personally identifiable or sensitive information could be used by third parties to, among other things, perpetrate identity theft or locate survivors of domestic violence or stalking who have otherwise taken steps to conceal their whereabouts.  This risk is not merely speculative.     In at least one chapter 11 case, the abusive former partner of a debtor's employee exploited the publicly accessible creditor and employee information filed in  the chapter 11 case to track the employee to her new address, which had not been publicly available until then, forcing the employee to change addresses again for her safety.[5]  This also supports the argument that disclosure of this information would not satisfy a legitimate interests assessment and would not be compliant with the minimization principle under the UK GDPR and EU GDPR.  The Debtors propose to provide an unredacted version of the Consolidated Creditor Matrix, the Consolidated Top 30 Creditors List, the Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Schedules and Statements"),  and any other redacted, applicable filings to the Court, the U.S. Trustee, counsel to any statutory committee appointed in the chapter 11 cases, and other parties in interest upon reasonable request (email being sufficient) to the Debtors or the Court that is reasonably related to these chapter 11 cases.

---

[5]     The incident, which took place during the first Charming Charlie chapter 11 proceedings in 2017, is described in the "creditor matrix motion" filed in *In re Charming Charlie Holdings, Inc.*, No. 19-11534 (CSS) (Bankr. D. Del. Jul. 11, 2019) [Docket No. 4].

23.     Courts in this district have stressed the importance of authorizing debtors to redact individual creditors' personally identifiable information, including home addresses in particular. In overruling an objection by the U.S. Trustee in *Art Van Furniture* to relief similar to that which is being requested herein, Judge Sontchi noted that the proposed redaction is not a "burden of proof" issue so "much as a common sense issue." Hr'g Tr. at 25:6–7, *In re Art Van Furniture, LLC*, No. 20-10553 (CSS) (Bankr. D. Del. Mar. 10, 2020) [Docket No. 82].[6]   Judge Sontchi found that "at this point and given the risks associated with having any kind of private information out on the internet, [redaction] has really become routine [and] I think obvious relief." *Id.* at 25:13–16. Similarly, in *Clover Technologies*, Judge Owens overruled the U.S. Trustee's objection, noting that:

> [t]o me it is common sense. I don't need evidence that there is, at best, a risk of identity theft and worse a risk of personal injury from listing someone's name and address on the internet by way of the court's electronic case filing system and, of course, the claims agent's website . . . . The court can completely avoid contributing to the risk by redacting the addresses.   And while there is, of course, an important right of access we routinely redact sensitive and confidential information for corporate entities and redact individual's home addresses.

Hr'g Tr. at 24:21-25, 25:9-10, *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Jan. 22, 2020) [Docket No. 146].   And, in *Forever 21*, in overruling the U.S. Trustee's objection, Judge Gross found that "[w]e live in a new age in which the theft of personal

---

[6]     Similarly, Judge Sontchi previously overruled the U.S. Trustee's objection to the redaction of individuals' information and found that "it's just plain common sense in 2019—soon to be 2020—to put as little information out as possible about people's personal lives to present [sic] scams . . . [Identity theft] is a real-life issue, and, of course, the issue of domestic violence is extremely important." Hr'g Tr. at 48:20–22, 49:3–5, *In re Anna Holdings*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019) [Docket No. 112].

Notably, Judge Sontchi acknowledged that "the world is very different from [the 1980s] when you and I started practice with the problems of identity theft" and that his perspective had evolved in that he was not previously aware of "the dangers with this kind of information becoming public." *See* Hr'g Tr. at 45:25-46:2, 47:22–24. The Debtors reserve the right to supplement the record with respect to such risks insofar as they are not self- evident in this instance.

identification is a real risk, as is injury to persons who, for personal reasons, seek to have their addresses withheld." Hr'g Tr. at 60:22–25, *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Dec. 19, 2019) [Docket No. 605].

24.    For these reasons, the Debtors respectfully submit that cause exists to authorize the Debtors to seal, pursuant to 11 U.S.C. § 107(c)(1) and in compliance with the CCPA, UK GDPR, and EU GDPR, personally identifiable information—including email addresses and home addresses—where such information has been provided to, and is being processed by, an organization with an establishment in the United Kingdom or a member state of the European Economic Area (and, with respect to such information processed by an organization with an establishment located in the United Kingdom or a member state of the European Economic Area, the home addresses of any individual) listed on the Consolidated Creditor Matrix, Consolidated Top 30 Creditors List, the Schedules and Statements, or any other document filed with the Court. Absent such relief, the Debtors would unnecessarily render individuals more susceptible to identity theft and could jeopardize the safety of individuals by publishing their home addresses.

## IV.    THE COURT SHOULD AUTHORIZE THE IMPLEMENTATION OF PROCEDURES TO PROTECT CONFIDENTIAL INFORMATION OF PATIENTS

25.    As further described in the First Day Declaration, the Debtors are a global medical device company that designs, manufactures, and markets joint replacement implants and related surgical instruments, some of which were subject to Recalls. As a part of a reimbursement program related to the Recalls, the Debtors have access to, and receive, "protected health information" and data relating to the patients who received recalled devices (the "Patients"), which the Debtors are

required to maintain on a confidential basis pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

26.     As explained above, under section 521(a) of the Bankruptcy Code, a debtor is required to file a list of all of its creditors. *See* 11 U.S.C. § 521(a)(1)(A).  Additionally, Bankruptcy Rule 1007(a)(1) requires a debtor to file "a list containing the name and address of each entity included or to be included on Schedules D, E/F, G, and H." Fed. R. Bankr. P. 1007(a)(1).  Likewise, Local Rule 1007-1 requires a debtor to file "[r]equired lists, schedules, and statements of financial affairs[,]" and Local Rule 1007-2 requires a debtor to file, together with its voluntary petition, a list containing "the name and complete address" of each of its creditors. Del. Bankr. L.R. 1007-2(a).  However, Local Rule 1001-1(c) authorizes the Court to modify the application of the Local Rules "in the interest of justice." Del. Bankr. L.R. 1001-(c). Additionally, section 105(a) of the Bankruptcy Code allows bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

27.     In an effort to comply with HIPAA and bankruptcy reporting requirements, the Debtors propose the following procedures to maintain the Patients' confidentiality during the pendency of the chapter 11 cases (the "Privacy Procedures"):

   a.   The Debtors shall omit any reference to any Patients from the Consolidated Creditor Matrix and from any other documents filed in the chapter 11 cases, including certificates of service, subject to subsection (d), below;

   b.   The Debtors, with the assistance of their professionals, are authorized to prepare and maintain (i) a separate creditor matrix comprised of the Patients (the "Patient Matrix") and (ii) separate schedules of claims that may be asserted against and by the Patients (the "Patient Schedules") and shall make the confidential Patient Matrix and Patient Schedules, or any portion thereof, available to any party in interest only after the Court has entered an order authorizing the Debtors to do so;

   c.   The Debtors are not required to file the Patient Matrix or the Patient Schedules in the format required by the Local Rules, but are permitted to file a redacted version of the Patient Schedules that redacts the name and address of the Patients and

assigns a unique identification number to each of the Patients, *provided, however*, that the Patient Matrix and the Patient Schedules may be reviewed by (i) the Court; (ii) the U.S. Trustee; and (iii) any other party in interest that obtains an order directing the Debtors to disclose the Patient Matrix and/or Patient Schedules to such party;

d.  If the claims and noticing agent serves any document upon any person listed on the Patient Matrix, the claims and noticing agent is authorized to note in the applicable certificate of service that the parties included in such service included individuals listed on the Patient Matrix; and

e.  To the extent that any Patient discloses his or her own health information in any pleading, proof of claim, notice, or other publicly available document, the Debtors and their professionals shall, to the extent required by the Bankruptcy Code, Bankruptcy Rules, Local Rules, or any other applicable law, rule, or court other, include protected health information about the Patient in any subsequent pleading, notice, document, list, or other public disclosure made in connection with the chapter 11 cases, and such disclosure shall not be deemed to be an "impermissible disclosure" within the meaning of HIPAA or any regulation promulgated thereunder; provided, however, such disclosure by the Debtors shall be only the information disclosed by the respective Patient.

28.    HIPAA and its implementing regulations (the "HIPAA Rules") impose stringent standards on health care providers and establish significant penalties for any HIPAA covered health care provider that impermissibly uses or discloses protected health information. *See* 42 U.S.C. § 1302d, et. seq. and 45 C.F.R. § 164.502.

29.    In the event that the Debtors qualify as health care providers that transmit health information with a covered transaction, they are considered to be "covered entities" under 45 C.F.R. § 160.103. The HIPAA Rules prohibit the Debtors from using or disclosing, except in limited circumstances, protected health information. 45 C.F.R. § 164.502. The HIPAA Rules define "protected health information" as "individually identifiable health information" transmitted or maintained by HIPAA covered entities. 45 C.F.R. § 160.103. Further, the HIPAA Rules define "individually identifiable information" as any information relating to the individual's "past, present or future physical or mental health or condition, the provision of health care to the

individual, or the past, present, or future payment for the provision of health care to the individual" that also "identifies the individual or for which there is a reasonable basis to believe that the information can be used to identify the individual." 42 U.S.C. § 1302d(6) and 45 C.F.R. § 160.103.

30.    The Debtors could be subjected to significant monetary penalties for the unauthorized or impermissible use or disclosure of protected health information. 45 C.F.R. § 160.402.5 Such penalties can be imposed even if a person "did not know and, by exercising reasonable diligence, would not have known" that a violation occurred. 45 C.F.R. § 160.404(b)(2)(i).

31.    Under the HIPAA Rules, the Debtors must obtain the authorization of the individuals who are the subject of any protected health information or a court order to disclose information under the Bankruptcy Code, specifically with respect to the Debtors' obligation to file a list of all creditors under section 521(a)(1)(A) of the Bankruptcy Code, Bankruptcy Rule 1007(a)(1), and Local Rule 1007-2, and the duty to file schedules of all assets and liabilities under section 521(a)(1)(B)(i) of the Bankruptcy Code, Bankruptcy Rule 1007(b), and Local Rule 1007-1. The Debtors, therefore, respectfully request that such protected health information be protected through the Privacy Procedures proposed herein pursuant to section 107(c) of the Bankruptcy Code, which allows the Court, for cause, to protect an individual if disclosure would create an undue risk of unlawful injury. *See* 11 U.S.C. § 107(c); *see also* Bankruptcy Rule 9018 (allowing a bankruptcy court to protect governmental matters that are made confidential by statute or regulation).

32.    The Court may also approve the Privacy Procedures under section 105(a) of the Bankruptcy Code, which authorizes a bankruptcy court to "issue any order, process, or judgment

that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

33.     The Debtors respectfully submit that the Debtors, their estates, and the Patients will suffer immediate and irreparable harm if the relief requested herein is not granted. As described herein, the Debtors' obligation to maintain patient confidentiality under HIPAA conflicts with the disclosure requirements otherwise required under the Bankruptcy Code and the Bankruptcy Rules. Absent the relief requested in this Motion, the Debtors may be required to disclose the Patients' confidential information in violation of HIPAA—which may also subject the Patients to threats of identity theft and other predatory actions—and may be subjected to significant monetary penalties as a result thereof.

34.     The Debtors believe that the relief requested herein appropriately balances the need to maintain confidential information under the HIPAA Rules with the need for adequate disclosure in the Chapter 11 Cases. Given the nature of any information that may reveal even the identity of the Patients, confidentiality in this context is of paramount importance.  Moreover, similar relief has been granted by courts in this jurisdiction and others. *See, e.g., In re SC Healthcare Holding, LLC*, Case No. 24-10433 (TMH) (Bankr. D. Del. Mar. 22, 2024); *In re Gulf Coast Health Care, LLC*, Case No. 21-11336 (KBO) (Bankr. D. Del. Nov. 10, 2021); *In re Promise Healthcare Grp., LLC*, Case No. 18-12491 (CSS) (Bankr. D. Del. Nov. 6, 2018); *In re EBH TOPCO, LLC*, Case No.

18-11212 (BLS) (Bankr. D. Del. May 24, 2018); *see also In re Amsterdam House Continuing Care Retirement Community, Inc.*, Case No. 21-71095 (AST) (Bankr. E.D.N.Y. June 17, 2021).

## COMPLIANCE WITH LOCAL RULE 9018-1(d)(iv)

35.     Under the circumstances, and given the nature of the relief requested herein, the Debtors have not been able to confer with the individuals whose information is requested to be sealed and, accordingly, the Debtors submit that there is cause to excuse the Debtors from the meet and confer obligations under Local Rule 9018-1(d).

## NOTICE

36.     The Debtors will provide notice of this Motion to:  (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (c) the United States Attorney's Office for the District of Delaware; (d) the state attorneys general for all states in which the Debtors conduct business; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the Prepetition First Lien Agent and counsel thereto; (h) the DIP Agent and counsel thereto; (i) the Ad Hoc Group, the DIP Lenders, and the Stalking Horse Purchaser and counsel thereto; (j) the Sponsor and counsel thereto; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013 1(m).  The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.


*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

WHEREFORE the Debtors respectfully request entry of the Order substantially in the form annexed hereto as **Exhibit A** granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: October 29, 2024
      Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Elizabeth S. Justison*
Ryan M. Bartley (No. 4985)
Elizabeth S. Justison (No. 5911)
Andrew A. Mark (No. 6861)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801
Tel.: (302) 571-6600
Facsimile: (302) 571-1253
Email: rbartley@ycst.com
       ejustison@ycst.com
       amark@ycst.com


**ROPES & GRAY LLP**
Ryan Preston Dahl (*pro hac vice* admission pending)
Benjamin M. Rhode (*pro hac vice* admission pending)
Luke Smith (*pro hac vice* admission pending)
191 N. Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5500
E-mail: ryan.dahl@ropesgray.com
       benjamin.rhode@ropesgray.com
       luke.smith@ropesgray.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## EXHIBIT A

**Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Exactech, Inc., *et al.*,[1] | Case No. 24-12441 ([___]) |
| | (Jointly Administered) |
| Debtors. | **Re: Docket No. ___** |

**ORDER (I) AUTHORIZING
DEBTORS TO FILE A CONSOLIDATED
(A) CREDITOR MATRIX AND (B) TOP 30 CREDITORS LIST,
(II) AUTHORIZING REDACTION OF CERTAIN PERSONAL
IDENTIFICATION INFORMATION, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (i) authorizing the Debtors to file (a) the Consolidated Creditor Matrix and (b) the Consolidated Top 30 Creditors List, (ii) authorizing the Debtors to redact certain personal identification information, and (iii) granting related relief, all as more fully set forth in the Motion; and this Court having reviewed the Motion and the First Day Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  Osteon Holdings, Inc. (7042); Osteon Intermediate Holdings I, Inc. (7778); Osteon Intermediate Holdings II, Inc. (1292); Exactech, Inc. (3930); and XpandOrtho, Inc. (4250).  The Debtors' service address is 2320 NW 66th Court, Gainesville, Florida 32653.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and this Court having determined that there is good and sufficient cause for the relief granted in this Order, therefore,

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted, as set forth herein.

2.      All objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

3.      The Debtors are authorized to submit the Consolidated Creditor Matrix.  The requirements of section 521(a)(1)(A) of the Bankruptcy Code, Bankruptcy Rule 1007(a)(1), and Local Rules 1007-2(a) and 2002-1(f)(v) that separate mailing matrices and lists of creditors be submitted for each Debtor are waived.

4.      The Debtors are authorized to file the Consolidated Top 30 Creditors List in lieu of each Debtor filing a list of its twenty (20) largest unsecured creditors.

5.      The Debtors are authorized to redact the home addresses and email addresses of natural persons, including the Debtors' employees, directors, creditors, and equity holders, from the Consolidated Creditor Matrix, the Consolidated Top 30 Creditors List, the Debtors' Schedules and Statements, any other applicable filings, and affidavits of service filed with the Court in these chapter 11 cases; *provided, that* the Debtors shall provide an unredacted version of the Consolidated Creditor Matrix, the Consolidated Top 30 Creditors List, the Schedules and Statements, any other applicable filings, and (if requested) affidavits of service to this Court, the U.S. Trustee, any official committee of unsecured creditors appointed in these chapter 11 cases,

the Debtors' claims and noticing agent, and any party in interest upon reasonable request related to these chapter 11 cases.

6.      All pleadings required to be served on employees will be served at their residential address.

7.      The Debtors, through their claims and noticing agent, are authorized to serve all pleadings and papers on all parties listed on the Consolidated Creditor Matrix (including via email if available).

8.      The Debtors, with the assistance of their professionals, are authorized to prepare and maintain the Patient Matrix and the Patient Schedules and shall make the confidential Patient Matrix and Patient Schedules, or any portion thereof, available to any party in interest only after this Court has entered an order authorizing the Debtors to do so.

9.      The Debtors are not required to file the Patient Matrix and the Patient Schedules in the format required by the Local Rules, but are permitted to file a redacted version of the Patient Schedules that redacts the name and address of the Patient and assigns a unique identification number to each of the Patients, *provided, however*, that the Patient Matrix and the Patient Schedules may be reviewed by (a) this Court; (b) the U.S. Trustee; (c) counsel to the official committee of unsecured creditors appointed in the chapter 11 cases (if any), and (d) any other party in interest that obtains an order directing the Debtors to disclose the Patient Matrix and Patient Schedules to such party.

10.     If the claims and noticing agent serves any document upon any person listed on the Patient Matrix, the claims and noticing agent is authorized to note in the applicable certificate of service that the parties included in such service include the individuals listed on the Patient Matrix.

11.     To the extent that any Patient discloses his or her health information in any pleading, proof of claim, notice, or other publicly available document, the Debtors or their professionals shall, to the extent required by the Bankruptcy Code, Bankruptcy Rules, or any other applicable law, rule, or court order, include protected health information about the Patient in any subsequent pleading, notice, document, list, or other public disclosure made in connection with the chapter 11 cases, and such use or disclosure shall not be deemed to be an "impermissible disclosure" within the meaning of the HIPAA Rules.

12.     Nothing in this Order shall waive or otherwise limit the service of any document upon or the provision of any notice to any individual solely because such individual's personally identifiable information is sealed or redacted pursuant to this Order.  Service of all documents and notices upon individuals whose personally identifiable information is sealed or redacted pursuant to this Order shall be confirmed in the corresponding certificate of service.  The Debtors shall provide the personally identifiable information to any party in interest either (i) with the Debtors' consent or (ii) after the party in interest files a motion that indicates the reason such information is needed and that, after notice and a hearing, is granted by this Court.  Alternatively, the Debtors are authorized to facilitate service of process through the Debtors' claims and noticing agent for any party in interest required to serve a creditor whose information has been redacted pursuant to this Order and arrange for reimbursement of expenses on account of such service with said party in interest.

13.     The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

14.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## **EXHIBIT B**

### **Supplemental Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Exactech, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12441 ([___])<br><br>(Jointly Administered)<br><br>**Re: Docket No. ___** |

**SUPPLEMENTAL ORDER AUTHORIZING REDACTION OF CERTAIN**
**ADDITIONAL PERSONAL IDENTIFICATION INFORMATION**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of ( a ) an order (i) authorizing the Debtors to file

(a) the Consolidated Creditor Matrix and (b) the Consolidated Top 30 Creditors List,

(ii) authorizing the Debtors to redact certain personal identification information, and (iii) granting

related relief, and (b) a supplemental order (this "Supplemental Order") authorizing the Debtors

to redact the names and other Personal Data of any natural person to the extent they are processed

subject to the UK GDPR or EU GDPR, all as more fully set forth in the Motion; and this Court

having reviewed the Motion and the First Day Declaration; and this Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334

and the *Amended Standing Order of Reference* from the United States District Court for the District

of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  Osteon Holdings, Inc. (7042); Osteon Intermediate Holdings I, Inc. (7778); Osteon Intermediate Holdings II, Inc. (1292); Exactech, Inc. (3930); and XpandOrtho, Inc. (4250).  The Debtors' service address is 2320 NW 66th Court, Gainesville, Florida 32653.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequatenotice of the Motion has been given and that no other or further notice is necessary; and this Court having entered that certain *Debtors' Motion for Entry of (A) an Order (I) Authorizing Debtors to File a Consolidated (A) Creditor Matrix and (B) Top 30 Creditors List, (II) Authorizing Redaction of Certain Personal Identification Information, and (III) Granting Related Relief; and (B) a Supplemental Order Authorizing Redaction of Certain Additional Personal Identification Information* [Docket No. __]; and upon the record herein; and after due deliberation thereon; and this Court having determined that there is good and sufficient cause for the relief granted in this Order, therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted, as set forth herein.

2.      All objections to the entry of this Supplemental Order, to the extent not withdrawn or settled, are overruled.

3.      The Debtors are authorized to redact the names, home and email addresses, and other Personal Data of any natural person to the extent they are processed subject to the UK GDPR or EU GDPR; *provided, that* the Debtors shall provide an unredacted version of the Consolidated Creditor Matrix, the Consolidated Top 30 Creditors List, the Schedules and Statements, any other applicable filings, and (if requested) affidavits of service to this Court, the U.S. Trustee, any official committee of unsecured creditors appointed in these chapter 11 cases, the Debtors' claims and noticing agent, and any party in interest upon reasonable request related to these chapter 11 cases.

4.      Nothing in this Supplemental Order shall waive or otherwise limit the service of any document upon or the provision of any notice to any individual solely because such individual's personally identifiable information is sealed or redacted pursuant to this Supplemental Order.  Service of all documents and notices upon individuals whose personally identifiable information is sealed or redacted pursuant to this Supplemental Order shall be confirmed in the corresponding certificate of service.  The Debtors shall provide the personally identifiable information to any party in interest either (i) with the Debtors' consent or (ii) after the party in interest files a motion that indicates the reason such information is needed and that, after notice and a hearing, is granted by this Court.  Alternatively, the Debtors are authorized to facilitate service of process through the Debtors' claims and noticing agent for any party in interest required to serve a creditor whose information has been redacted pursuant to this Supplemental Order and arrange for reimbursement of expenses on account of such service with said party in interest.

5.      The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Supplemental Order.

6.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Supplemental Order.