**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| EXACTECH, INC., et al.,[1] | Case No. 24-12441 (LSS) |
| Debtors. | (Jointly Administered) |
|  | **Ref: Docket Nos. 1059, 1195** |

**AD HOC GROUP'S
RESPONSE TO THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS' OBJECTION
AND RESERVATION OF RIGHTS TO THE DEBTORS'
MOTION FOR ENTRY OF AN ORDER (I) APPROVING
SETTLEMENT AGREEMENT RELATED TO QUI TAM
LITIGATION AMONG EXACTECH, INC., THE UNITED STATES
OF AMERICA, AND CERTAIN RELATORS, (II) AUTHORIZING
THE DEBTORS TO TAKE ANY AND ALL ACTIONS NECESSARY TO
EFFECTUATE THE TERMS THERETO, AND (III) GRANTING RELATED RELIEF**

The Ad Hoc Group of Prepetition First Lien Lenders (the "Ad Hoc Group") hereby submits this response to *The Official Committee of Unsecured Creditors' Objection and Reservation of Rights to the Debtors' Motion for Entry of an Order (I) Approving Settlement Agreement Related to Qui Tam Litigation Among Exactech, Inc., the United States of America, and Certain Relators, (II) Authorizing the Debtors to Take Any and All Actions Necessary to Effectuate the Terms Thereto, and (III) Granting Related Relief* [Docket No. 1195] (the "Qui Tam Settlement Objection") and in support of the *Debtors' Motion for Entry of an Order (I) Approving Settlement Agreement Related to Qui Tam Litigation Among Exactech, Inc., the United States of America, and Certain Relators, (II) Authorizing the Debtors to Take Any and All Actions Necessary to*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Osteon Holdings, Inc. (7042); Osteon Intermediate Holdings I, Inc. (7778); Osteon Intermediate Holdings II, Inc. (1292); Exactech, Inc. (3930); and XpandOrtho, Inc. (4250). The Debtors' service address is 2320 NW 66th Court, Gainesville, Florida 32653.

*Effectuate the Terms Thereto, and (III) Granting Related Relief* [Docket No. 1059] (the "Qui Tam

Settlement Motion").[2]

### RESPONSE

1.     When the Debtors commenced these Cases, they made clear that they were engaged in

efforts to reach a comprehensive settlement of significant FCA Liabilities.[3]  Following extensive,

good faith, and arms-length negotiations with the U.S. Department of Justice, the Relators, and the

Stalking Horse Purchaser, the Debtors have achieved that goal.  The settlement embodied in the

Settlement Agreement is axiomatically in the best interests of the Debtors' estates.  It achieves,

among other things, a resolution and release of the FCA Liabilities in exchange for the Settlement

Amount, which Settlement Amount is being assumed by the Stalking Horse Purchaser and,

accordingly, *would result in no costs to the Debtors' estates*.

2.     The Qui Tam Settlement Objection is yet another example of the Committee's

scorched-earth litigation strategy.  It has become evident that the Committee will stop at nothing

in its attempt to derail the Debtors' value maximizing Plan and Sale Transaction, even if it leaves

the estates saddled with needless administrative expenses in the process of so doing.  Perplexingly,

the Qui Tam Settlement Objection would, if it prevailed, significantly decrease the Committee's

constituents' recoveries.  In the absence of the Settlement Agreement, the United States and the

Relators would assert significant general unsecured claims against the Debtors' estates,

substantially increasing the General Unsecured Claims pool and diluting the recovery for all

---

[2]     Capitalized terms used but not defined herein have the meaning provided in Qui Tam Settlement Objection or the Qui Tam Settlement Motion, as applicable.

[3]     *See Declaration of Jesse York, Chief Restructuring Officer of Exactech, Inc., In Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 18] ¶ 9 ("Recognizing the need for a comprehensive long-term solution, the Company proactively engaged in good-faith negotiations with its prepetition lenders, certain Products Liability Claims representatives, and the United States Department of Justice . . . in connection with the Qui Tam Claims with the goal of achieving comprehensive settlements and implementing strategic transactions that would achieve three key, interrelated goals: (1) enhance liquidity and extend maturities; (2) resolve all Qui Tam Claims; and (3) resolve the Products Liability Claims").

holders of General Unsecured Claims.  As shown in the Qui Tam Settlement Motion and as the evidence will show, the Settlement Agreement is clearly beneficial to the Debtors' estates and should be approved.

3.     The Committee primarily bases its Qui Tam Settlement Objection on two assertions, both of which are without merit: (i) the relief requested is somehow premature because the Court should defer consideration of the Qui Tam Settlement Motion until after it decides whether to confirm the Plan and (ii) the Committee needs more time to conduct diligence.

4.     *First*, there is no basis, – legal or otherwise – for why the Court should defer consideration of the Qui Tam Settlement.  Like many settlements reached in chapter 11 cases, the Settlement Agreement is conditioned on the effective date of the Plan occurring and the closing of the Sale Transaction.  Despite the Committee's objection to "any implication that the Debtors' [Plan] is the only plan that could satisfy the 'plan' precondition or that the Stalking Horse Purchaser under the Debtors' [Plan] is the only sale that could satisfy the 'sale' precondition" (*see* Qui Tam Settlement Objection ¶¶ 1–2), the Plan *is* the only option that can satisfy the plan effectiveness precondition.  There is no alternative plan.  More importantly the Qui Tam Settlement contemplates the Stalking Horse Purchaser's assumption of the settlement amounts contemplated therein, and the Debtors' Plan is the only plan with the Stalking Horse Purchaser's support.

5.     In fact, the Court previously overruled the Committee's objection to the Debtors' exclusivity extension motion and entered an order extending the Debtors' exclusive periods to file and solicit a plan.[4]  This is yet another attempt by the Committee to – in addition to its recently filed motion for appointment of a chapter 11 trustee, or to terminate exclusivity in the alternative

---

[4]     *See Order, Pursuant to Section 1121(D) of the Bankruptcy Code, Extending the Exclusive Periods Within Which the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 828].

[Docket No. 1058]) – petition the Court for relief that it already denied.  Further, suggestions that there is a confirmable alternative to the Plan, which does not have the support from any other constituency in these cases, are improper and speculative at best.

6.    ***Second***, the Committee has had ample time to investigate the Qui Tam Settlement.  It has been known since the inception of these Chapter 11 Cases that the Debtors were pursuing a settlement of the FCA Liabilities, and the fact that discussions were ongoing was disclosed in the Disclosure Statement over a month ago.[5]  Further, the Qui Tam Settlement Motion was filed with the appropriate notice required under the Bankruptcy Rules.  Any assertion that the Committee was not provided with sufficient notice of the settlement is meritless.

7.    Instead of allowing the Qui Tam Settlement Motion to be considered at the appropriate time, the Committee instead would prefer to risk the substantial benefits afforded under the Settlement Agreement and continue on its war path of unmeritorious objections and discovery, all at great cost to the Debtors' estates and the Committee's own constituency.  The Court should not countenance such a strategy and should overrule the Qui Tam Settlement Objection.

## <u>CONCLUSION</u>

For the reasons set forth above, the Ad Hoc Group respectfully requests that the Court (i) overrule the Qui Tam Settlement Objection, (ii) approve the Qui Tam Settlement Motion, and (iii) grant such other relief as is just and proper.

---

[5]    *See Disclosure Statement Related to the Joint Chapter 11 Plan of Exactech, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 391] ("The Debtors and their advisors intend to continue working diligently during these Chapter 11 Cases to achieve, if possible, a full, fair, and consensual resolution to the Qui Tam Claims. However, in the event the Debtors are not able to consensually resolve the Qui Tam Claims, the Qui Tam Claims will be treated as General Unsecured Claims pursuant to the Plan.").

Dated: May 23, 2025
Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**

*/s/ Zachary I. Shapiro*
Mark D. Collins (No. 2981)
Zachary I. Shapiro (No. 5103)
Robert C. Maddox (No. 5356)
David T. Queroli (No. 6318)
Zachary J. Javorsky (No. 7069)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
E-mail: collins@rlf.com
   shapiro@rlf.com
   maddox@rlf.com.
   queroli@rlf.com
   javorsky@rlf.com

**MILBANK  LLP**
Evan R. Fleck, Esq. (admitted *pro hac vice*)
Nelly Almeida, Esq. (admitted *pro hac vice*)
Alexander B. Lees, Esq. (admitted *pro hac vice*)
55 Hudson Yards
New York, New York 10001-2163
Telephone: (212) 530-5000
E-mail: efleck@milbank.com
   nalmeida@milbank.com
   alees@milbank.com

*Counsel for the Ad Hoc Group*