### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Exactech, Inc., *et al.*,[1] | Case No. 24-12441 (LSS) |
| | (Jointly Administered) |
| Debtors. | Re: Docket Nos. 390, 391, 534, 535, 731, 732, 763, 764, 817, 829, 1061, 1225, 1237, 1490, 1501 & 1513 |

**NOTICE OF FILING OF AMENDMENT TO PLAN SUPPLEMENT FOR THE FIFTH AMENDED JOINT CHAPTER 11 PLAN OF EXACTECH, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (A) IDENTIFYING (I) THE SETTLEMENT TRUSTEE, (II) THE COMMERCIAL GUC TRUSTEE AND WIND-DOWN OFFICER, AND (III) THE MEMBERS OF THE TRUST ADVISORY COMMITTEE AND (B) REVISING (I) THE COOPERATION AGREEMENT AND (II) THE SETTLEMENT TRUST AGREEMENT**

**PLEASE TAKE NOTICE** that, on December 31, 2024, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Joint Chapter 11 Plan of Exactech, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 390] (as amended, the "Plan") and the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Exactech, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 391] (as amended, the "Disclosure Statement") with the United States Bankruptcy Court for the District of Delaware (the "Court"). The Plan and Disclosure Statement were subsequently amended on February 3, 2025 (*see* Docket Nos. 534 & 535), March 20, 2025 (*see* Docket Nos. 731 & 732), March 24, 2025 (*see* Docket No. 763 & 764), April 1, 2025 (Disclosure Statement only, *see* Docket No. 817), April 3, 2025 (Plan only, *see* Docket No. 830), May 22, 2025 (Plan only, *see* Docket No. 1225), July 22, 2025 (Plan only, *see* Docket No. 1490), July 24, 2025 (Plan only, *see* Docket No. 1501, such Plan, the "Modified Plan"), and July 28, 2025 (Disclosure Statement only, *see* Docket No. 1513).[2]

**PLEASE TAKE FURTHER NOTICE** that, on July 22, 2025, the Debtors filed the *Notice of Filing of Plan Supplement for the Fifth Amended Joint Chapter 11 Plan of Exactech, Inc. and*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  Osteon Holdings, Inc. (7042); Osteon Intermediate Holdings I, Inc. (7778); Osteon Intermediate Holdings II, Inc. (1292); Exactech, Inc. (3930); and XpandOrtho, Inc. (4250).  The Debtors' service address is 2320 NW 66th Court, Gainesville, Florida 32653.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Modified Plan filed on July 24, 2025.

*Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1492] (as amended, the "Plan Supplement").

**PLEASE TAKE FURTHER NOTICE** that, on July 28, 2025, the Court entered the *Order (I) Conditionally Approving Supplemental Disclosure, (II) Amending and Scheduling Certain Supplemental Dates and Deadlines in Connection with Confirmation of the Debtors' Fifth Amended Plan, and (III) Approving a Limited Supplemental Voting Deadline for Holders of Claims in the Voting Classes* [Docket No. 1513] (the "Supplemental Disclosure Order"), which established the following dates:

| Event | Date |
|---|---|
| Plan Supplement Filing Deadline | August 26, 2025 |
| Voting Deadline | September 2, 2025 at 4:00 p.m. (ET) |
| Confirmation Objection Deadline | September 2, 2025 at 4:00 p.m. (ET) |
| Deadline to File Voting Report, Confirmation Order, Declarations, and any Replies in Support of Confirmation | September 11, 2025 prior to noon (ET) |
| Confirmation Hearing | September 15, 2025 at 10:00 a.m. (ET) |

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Supplemental Disclosure Order and the Modified Plan, the Unsecured Creditors' Committee has selected Ellen K. Reisman to serve as the Settlement Trustee and Alan D. Halperin to serve as both the Commercial GUC Trustee and the Wind-Down Officer.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Supplemental Disclosure Order and the Modified Plan, the following individuals have been selected to serve as members of the Trust Advisory Committee: Ellen Relkin, N. Kirkland Pope, Rayna E. Kessler, Jason S. Goldstein, Kevin M. Fitzgerald, C. Calvin Warriner, Joseph H. Saunders, David Harman, David Landever, Ashleigh Raso, and George Williamson.

**PLEASE TAKE FURTHER NOTICE** that, subsequent to the filing of the Plan Supplement, the Debtors made certain revisions to the Cooperation Agreement, which was attached as Exhibit E to the Plan Supplement. The revised Cooperation Agreement (the "Revised Cooperation Agreement") is attached hereto as **Exhibit 1** and a blackline comparing the Cooperation Agreement to the Revised Cooperation Agreement is attached hereto as **Exhibit 2**.

**PLEASE TAKE FURTHER NOTICE** that, subsequent to the filing of the Plan Supplement, the Debtors made certain revisions to the Settlement Trust Agreement, which was attached as Exhibit F to the Plan Supplement. The revised Settlement Trust Agreement (the "Revised Settlement Trust Agreement") is attached hereto as **Exhibit 3** and a blackline comparing the Settlement Trust Agreement to the Revised Settlement Trust Agreement is attached hereto as **Exhibit 4**.

**PLEASE TAKE FURTHER NOTICE** that certain documents, or portions thereof, contained in the Plan Supplement remain subject to continuing negotiations among the Debtors,

the Unsecured Creditors' Committee, the proposed Trustees, the Stalking Horse Purchaser, and other interested parties. Subject to the terms and conditions of the Modified Plan, the Debtors reserve all rights to amend, revise, or supplement the Plan Supplement, and any of the documents and designations contained herein, at any time before the Effective Date of the Modified Plan, or any such other date as may be provided for by the Modified Plan or by Court order.

Dated: August 26, 2025
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Ryan M. Bartley*
Ryan M. Bartley (No. 4985)
Elizabeth S. Justison (No. 5911)
Andrew M. Lee (No. 7078)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801
Tel.: (302) 571-6600
Facsimile: (302) 571-1253
Email: rbartley@ycst.com
ejustison@ycst.com
alee@ycst.com

- and -

**ROPES & GRAY LLP**
Ryan Preston Dahl (admitted *pro hac vice*)
Benjamin M. Rhode (admitted *pro hac vice*)
Luke Smith (admitted *pro hac vice*)
191 N. Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5500
E-mail:   ryan.dahl@ropesgray.com
              benjamin.rhode@ropesgray.com
              luke.smith@ropesgray.com

- and -

Gregg M. Galardi (No. 2991)
Lindsay Barca (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036
Telephone:   (212) 596-9000
Facsimile:   (646) 728-1652
Email:   gregg.galardi@ropesgray.com
              lindsay.barca@ropesgray.com

*Co-counsel to the Debtors and Debtors in Possession*

# <u>EXHIBIT 1</u>

**Revised Cooperation Agreement**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Exactech, Inc., *et al.*,[1] | Case No. 24-12441 (LSS) |
| Debtors. | (Jointly Administered) |

## SETTLEMENT TRUST COOPERATION AGREEMENT

In connection with the *Fifth Amended Joint Chapter 11 Plan of Exactech Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1490], including all exhibits and schedules thereto, and as the same may from time to time be amended or modified and as confirmed (the "**Plan**") by order of the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") in the above-captioned cases (the "**Chapter 11 Cases**"), this agreement (the "**Agreement**") is made, effective as of the Effective Date,[2] by and among (i) the Settlement Trustee and the Commercial GUC Trustee (together, the "**Trustees**") of the Settlement Trust and the Commercial GUC Trust (together, the "**Trusts**"), acting in their respective capacities on behalf of the respective Trusts,[3] (ii) the Debtors (defined herein), and (iii) Exactech Newco ("**Newco**") (each, a "**Party**" and, collectively, the "**Parties**").

## RECITALS

**WHEREAS**, on July 22, 2025, the Debtors filed the Plan, which provides for the establishment of the Trusts and the appointment of the Trustees;

**WHEREAS**, the Trusts are responsible for carrying out the provisions of the Plan relating to the Trusts, including commencing, prosecuting, and settling all Retained Causes of Action and liquidating General Unsecured Claims, as described in more detail in the Trust Documents and the Plan;

**WHEREAS**, the Parties recognize that the Trusts will require access to documents maintained in the Debtors' files, including Privileged Information, to pursue the Retained Causes of Action and liquidate General Unsecured Claims;

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  Osteon Holdings, Inc. (7042); Osteon Intermediate Holdings I, Inc. (7778); Osteon Intermediate Holdings II, Inc. (1292); Exactech, Inc. (3930); and XpandOrtho, Inc. (4250).  The Debtors' service address is 2320 NW 66th Court, Gainesville, Florida 32653.

[2]  Capitalized terms used herein but not otherwise defined shall have the same meanings as in the Plan.

[3]  For the avoidance of doubt, any reference to an obligation of the Trusts includes a reference to the Trustees, and any reference to an obligation of the Trustees includes a reference to the Trusts.

1

**WHEREAS**, the Parties recognize that Newco will operate a business that will require access to and the maintenance of confidentiality of documents maintained in the Debtors' files, including (in some cases) documents to which the Trusts require access and the ability to use in litigation and in their performance of their obligations under the Plan;

**WHEREAS**, the Parties desire to establish a framework for the Trusts' access to documents, including Privileged Information, that may be used in connection with pursuing Retained Causes of Action and liquidating General Unsecured Claims and for Newco's access to documents, including Privileged Information, in connection with its business operations; and

**WHEREAS**, the Confirmation Order provides that pursuant to, *inter alia*, Federal Rule of Evidence 502(d), no privileges shall be waived by the transfer and assignment of any privileges or the production of any Privileged Information to the Trusts and Newco or any of their respective employees, professionals or representatives, or by disclosure of such Privileged Information to the Trusts and Newco or any of their employees, professionals or representatives.

**NOW THEREFORE**, in light of the above-stated premises, the mutual covenants contained herein, and for good and valuable consideration, the Parties agree as follows:

## ARTICLE I
## DOCUMENT ACCESS AND TRANSFER

**Section 1.1.**    <u>Previously Produced Materials</u>.

a.    All documents previously produced to the Official Committee of Unsecured Creditors (the "**Committee**") by the Debtors ("**Previously Produced Materials**") may be provided by the Committee to the Trusts for purposes of and subject to this Agreement.

b.    The existing protective order in the Chapter 11 Cases (Dkt. 564) (the "**Existing Protective Order**") shall continue to govern the Previously Produced Materials, notwithstanding the closing of the Chapter 11 Cases, including all confidentiality designations applied thereto and all rights to seek redesignation thereof, with the following modifications:

   i.    The Trustees may use Previously Produced Materials in performing their respective functions and obligations under the Plan and the Trust Agreements, including for the purpose of prosecuting Retained Causes of Action and liquidating General Unsecured Claims, but in no event for the purpose of pursuing Causes of Action or facilitating another in pursuing Causes of Action against any Released Parties.

   ii.   Members of the Committee no longer may have access to Previously Produced Materials designated Confidential, and any such Previously Produced Materials still in their possession shall be returned or destroyed in accordance with paragraph 28 of the Existing Protective Order.

      iii.    Newco shall have the rights and obligations of a producing party under the Existing Protective Order and the Trusts shall have the rights and obligations of a receiving party under the Existing Protective Order, in each case with respect to Previously Produced Materials.

      iv.    Documents designated as restructuring professionals' eyes only under the Existing Protective Order shall be treated as attorneys' eyes only.

c.    Any other protective order or confidentiality restriction applicable to Previously Produced Materials besides the Existing Protective Order shall continue to apply.

**Section 1.2.**   <u>Supplemental Data Transfer</u>.

a.    The Trusts shall have the right to receive copies of additional Debtor documents to the extent they are not Previously Produced Materials and they contain information relevant to the liquidation of General Unsecured Claims or the Retained Causes of Action, from the following sources (collectively, the "**Data Transfer Documents**"):

      i.    The Debtors shall apply the search parameters in **Exhibit A** and produce the results to the Trusts.

      ii.    All documents previously redacted or logged on any privilege log of the Debtors in the Chapter 11 Cases, including but not limited to the Debtors' latest common interest privilege log in the Chapter 11 Cases (collectively, "**Privilege Log Documents**"), shall be provided by the Debtors' counsel to the Trusts in unredacted form.

      iii.    All communications between or among, on the one hand, any Debtor, including any Debtors' in-house counsel, whether or not identified as a Custodian herein, and, on the other hand, any counsel representing Debtors in the MDL or with respect to U.S. personal injury litigation related to the MDL between January 1, 2021 and June 1, 2025 ("**Prior Litigation Counsel**"), shall be provided by the Debtors' counsel to the Trusts regardless of whether such communications are within the search parameters in **Exhibit A**.  For the avoidance of doubt, Prior Litigation Counsel shall include, but not be limited to, the following attorneys: Susan Sharko, Mike Kanute, Ruben Gonzalez, Sean Powell, Steve Bennett, Mark Premo-Hopkins, Christa Cottrell, Jey Lefkowitz, and Cameron Ginder.

      iv.    The Trusts may receive documents that belong to the Debtors that are in the possession of the Debtors' Prior Litigation Counsel ("**Prior Counsel Documents**") by sending a written request in substantially the form of **Exhibit B**.  Newco shall have no obligation with respect to the Trusts' efforts to obtain Prior Counsel Documents, and shall bear no responsibility for any response, or lack thereof, the Trusts receive from Prior Litigation Counsel to a request.

b.   The Data Transfer Documents shall be categorized, for purposes of this Agreement, as follows:

    i.   Documents that relate solely to the Trust Assets (including the Retained Causes of Action) and General Unsecured Claims and not to Newco's business operations ("**Category 1**").

    ii.   Documents that relate to both the Trust Assets (including the Retained Causes of Action) and General Unsecured Claims and Newco's business ("**Category 2**").

    iii.   Documents that relate solely to Newco's business operations and not to the Trust Assets and General Unsecured Claims (including, for example, documents that relate to products that have not been manufactured or sold before the Effective Date) ("**Category 3**").

c.   All Data Transfer Documents shall presumptively be in Category 2, but may be recategorized as follows:

    i.   The Trustees may make a request to Newco to designate a Data Transfer Document as a Category 1 Data Transfer Document, and Newco shall consider such request in good faith. If any Data Transfer Documents are redesignated as Category 1 Data Transfer Documents, Newco no longer shall have any rights with respect to those documents, except as set forth in section 2.1(d).

    ii.   Newco may make a request to the Trustees to designate a Data Transfer Document as a Category 3 Data Transfer Document, and the Trustees shall consider such request in good faith. If any Data Transfer Documents are redesignated as Category 3 Data Transfer Documents, the Trusts no longer shall have any rights with respect to them, and if Newco so requests, the Trusts shall return or destroy all copies of such documents.

d.   All privileges belonging to the Debtors applicable to Data Transfer Documents shall continue to apply (including the attorney-client privilege, the work-product doctrine, and any other similar protection). The Trusts shall be the successors of the Debtors with respect to any privilege applicable to Category 1 Data Transfer Documents. Newco shall be the successor of the Debtors with respect to any privilege applicable to Category 3 Data Transfer Documents and any documents acquired from the Debtors that are not Data Transfer Documents. The Trusts and Newco shall share any Debtor privilege applicable to Category 2 Data Transfer Documents, subject to the other provisions of this Agreement.

e.   The Parties' rights with respect to privileged Data Transfer Documents shall remain subject to the rights of third parties under applicable law, including any rights arising from the common-interest doctrine, the joint-defense doctrine, joint attorney-client representation, or any agreement. Before taking any action that

arguably could affect any privilege in which a third party may have rights, the Parties shall provide such third party with reasonable written notice.

f.   If the Trusts determine that they have received Data Transfer Documents belonging in Category 3, they shall promptly notify Newco, provide such documents to Newco, and delete all copies of such documents.  If Newco determines that Previously Produced Materials contained inadvertently produced privileged Category 3 Data Transfer Documents, it may make a claw back request with respect to such documents in accordance with the Existing Protective Order, and the provisions for challenging any assertion of privilege in connection with such a claw back request in the Existing Protective Order shall apply.

**Section 1.3.**    Limitations on Obligations to Disclose Documents.  Neither Newco nor the Debtors shall be required by this Agreement to transfer to the Trusts any document that was produced to or is in the possession of the Committee or the Trusts as of the Effective Date, or the transfer of which is restricted or limited by the terms of the Plan or the Confirmation Order.

**Section 1.4.**    Newco's Rights to Debtor Documents.  Subject to this Agreement, and notwithstanding anything to the contrary in the Sale Transaction Documents, the Parties agree that Newco shall acquire all documents of the Debtors, including Previously Produced Materials.

**Section 1.5.**    Reservation of Discovery Rights.  Nothing herein shall abridge or affect the rights of the Parties in connection with discovery in any proceeding or litigation brought by the Trusts or the Trustees.

## ARTICLE II
## DOCUMENT USE RESTRICTIONS AND NEW PROTECTIVE ORDERS

**Section 2.1.**    Document Use Generally.

a.   The Trusts may use Data Transfer Documents, Previously Produced Materials, and the contents of the foregoing in performing their respective functions and obligations under the Plan and the Trust Agreements, including for the purpose of prosecuting Retained Causes of Action and liquidating General Unsecured Claims, but in no event for the purpose of pursuing Causes of Action or facilitating another in pursuing Causes of Action against any Released Party.

b.   The Trusts may disclose a Data Transfer Document or its contents only (i) to the Trusts' hired professionals (and only if such professionals have been made aware of and agree to abide by the use and confidentiality restrictions applicable to such documents) and any person who, based on the face of such document, was an author, sender, or recipient of such document, or (ii) in the context of litigation of a Retained Cause of Action in accordance with the terms a new protective order entered by the applicable court governing disclosure in such litigation (a "**New Protective Order**").

c.  The Trusts shall not disclose any Data Transfer Document or its contents to members or former members of the Committee in their capacity as such, regardless of whether the Committee continues to exist after the Effective Date.

d.  Following the conclusion of all litigation of the Retained Causes of Action and the winding up of the Trusts, the Trusts shall return to Newco all copies of Previously Produced Materials and Data Transfer Documents in their possession, custody, or control (including those in the possession of their hired professionals) or, if Newco so requests, confirm that such documents have been deleted or destroyed.  At such time, Newco may, in its sole discretion, take possession of any Data Transfer Documents or Previously Produced Materials in the possession of the Trusts and obtain all rights of the Trusts with respect to such Data Transfer Documents or Previously Produced Materials, including any applicable privileges.

**Section 2.2.**    New Protective Orders and Limits on Use in Litigation.

a.  The Trusts and Newco shall confer in good faith on the terms of any New Protective Order before submission to the applicable court.  The Trusts shall implement Newco's comments to the New Protective Order unless such comments are unreasonable, proposed in bad faith, or would prevent or have the effect of preventing the Trusts from being able to make use of Data Transfer Documents for purposes of prosecuting a Retained Cause of Action (including in court proceedings).

b.  Subject to Section 2.2(g), any New Protective Order shall contain the following terms (the "**Required Protective Order Terms**"):

　　1.  The receiving party shall be prohibited from using Data Transfer Documents and their contents other than for purposes of the litigation of a Retained Cause of Action, and in no event for the purpose of pursuing Causes of Action or facilitating another in pursuing Causes of Action against any Released Party.

　　2.  The receiving party shall not be permitted to disclose a Data Transfer Document or its contents except to (a) such party's hired professionals in the litigation, (b) the applicable court and its personnel, and (c) any person who, based on the face of such document, was an author, sender, or recipient of such document.

　　3.  A Data Transfer Document shall not be filed (and its contents shall not be disclosed) on the docket in litigation of a Retained Cause of Action by any person except under seal.

　　4.  The receiving party must return to the Trusts or destroy all copies of Data Transfer Documents at the conclusion of the litigation of the applicable Retained Cause of Action.

c.     The Trustees shall use best efforts to obtain approval by the applicable court of the Required Protective Order Terms.  The Trustees shall promptly notify Newco if the applicable court (upon motion of a party to the litigation or otherwise) declines to approve or makes modifications to any of the Required Protective Order Terms (or indicates that it may do so).  If Newco notifies the Trustees of its intent to challenge any such decision by the applicable court, the Trustees shall assist Newco in bringing any challenge or seeking any relief that Newco, in its sole discretion, determines to pursue in respect of such decision.  In such circumstance, the Trustee shall use best efforts to obtain approval of as many of the Required Protective Order Terms as is reasonably practicable.  If, after the exhaustion of the Trustees' efforts and provision of assistance to Newco in accordance with this Agreement, the applicable court still declines to approve the Required Protective Order Terms, the Trustees may assent to entry of a New Protective Order with different terms, provided that it shall use best efforts to maximize the confidentiality protections afforded to Category 2 Data Transfer Documents.

d.     To the extent the Trustees seek to use privileged information in or derived from a Category 2 Data Transfer Document in litigation of a Retained Cause of Action, they shall first attempt to determine whether that information is in or can be derived from a non-privileged source and, if so, avoid using the privileged Category 2 Data Transfer Document.

e.     The Trustees shall use best efforts to maintain the sealing and confidentiality of any Category 2 Data Transfer Documents at all stages of litigation of a Retained Cause of Action, including trial of a Retained Cause of Action.

f.     The Trustees shall promptly notify Newco if (i) any person seeks to lift the seal or otherwise modify confidentiality restrictions applicable to Category 2 Data Transfer Documents under the New Protective Order, or (ii) the applicable court orders the unsealing or public disclosure of any Category 2 Data Transfer Document.  If Newco notifies the Trusts of its intent to challenge any such request, modification, or unsealing or public disclosure, as the case may be, then the Trustees shall assist Newco in bringing any applicable challenge or seeking any applicable relief, including by joining any objection, motion, or other request by Newco in relation thereto.

g.     For the avoidance of doubt, if, following the Trustees' use of best efforts to maintain the sealing and confidentiality of any Data Transfer Documents pursuant to a New Protective Order, the applicable court is unwilling to maintain the sealing and confidentiality of any Data Transfer Documents, whether at trial or otherwise, the Trusts are not prohibited from making use of any such Data Transfer Documents for purposes of pursuing Retained Causes of Action and liquidating General Unsecured Claims.

**Section 2.3.**    <u>Waiver of Privilege</u>.

a.    Newco, on one hand, and the Trustees, on the other hand, hereby provide advance consent to the other that it or they may waive any Debtor privilege applicable to a Category 2 Data Transfer Document, without the need to seek any further consent from the other, *provided that*:

   i.    Before effectuating a waiver, the Party desiring to waive privilege shall provide advance notice to the other with an explanation of which specific Category 2 Data Transfer Documents will be subject to waiver and an explanation of why waiver is being pursued and to what use the Category 2 Data Transfer Documents are expected to be put and the other Party shall be afforded the opportunity to exercise its recategorization rights under section 1.2(c); and

   ii.    All terms of this Agreement shall apply and continue to bind the Parties with respect to such Category 2 Data Transfer Document.

b.    The Trustees shall not require Newco's consent to waive any Debtor privilege applicable to a Category 1 Data Transfer Document.

c.    Newco shall not require the Trustees' consent to waive any Debtor privilege applicable to a Category 3 Data Transfer Document or any Debtor document that is not a Data Transfer Document.

**Section 2.4.**    <u>Acquisition of Third-Party Claims</u>.    If the Trustees acquire any Causes of Action held by a non-debtor against TPG, such acquisition shall not affect the Trustees' rights or obligations with respect to Data Transfer Documents or Previously Produced Materials under this Agreement.

## ARTICLE III
## MISCELLANEOUS

**Section 3.1.**    <u>Costs</u>.    The costs incurred by the Debtors prior to the Effective Date in implementing the supplemental data transfer described in section 1.2(a)(i) – (iii) of this Agreement shall be paid by the Debtors. The costs incurred by the Trusts after the Effective Date in implementing the supplemental data transfer described in section 1.2(a)(iv) of this Agreement and in storing Data Transfer Documents provided to the Trusts shall be borne entirely by the Trusts.

**Section 3.2.**    <u>Limitations on Litigation</u>.    The Trustees shall not acquire, commence, or pursue, or assist another in commencing or pursuing, any Causes of Action, whether directly or indirectly, against any Released Party.

**Section 3.3.**    <u>Preservation of Rights</u>.    To the extent any document within the Data Transfer Documents is subject to the privilege or protection of a third party (including a joint-client privilege, a shared privilege, a common interest protection, or otherwise), such third party's rights are fully preserved.

**Section 3.4.**    <u>Notices</u>.    All notices, requests, or other communications required or permitted to be made in accordance with this Agreement shall be in writing and shall be effective when received by hand delivery, electronic mail, electronic facsimile transmission, express overnight courier service, or by registered or certified mail, return receipt requested, addressed to the Parties at addresses to be specified after the Effective Date ("**Notice Addresses**").    Until a Party's Notice Addresses are specified, notice in accordance with this section may be sent to the respective addresses set forth below ("**Counsel Addresses**").    After the specification of a Notice Address, delivery to a Counsel Address shall not constitute notice but such Counsel Address shall be copied on any notice sent to a Notice Address:

    a.      For the Trusts:

         [ADD]

    b.      For Newco:

         [ADD]

**Section 3.5.**    <u>Effectiveness</u>.    This Agreement shall become effective upon, and concurrently with, the occurrence of the Effective Date.

**Section 3.6.**    <u>Remedies</u>.  The Trusts acknowledge and agree to the confidential nature of the Data Transfer Documents and Previously Produced Materials and that irreparable damage would result to Newco if such materials or information contained therein or derived therefrom is disclosed to any third party except as expressly permitted by this Agreement.    The Trusts understand and agree that money damages may not be a sufficient remedy for any breach or threatened breach of this Agreement and that Newco shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach or threatened breach.  Such equitable remedy or remedies shall not, however, be deemed to be the exclusive remedy or remedies for breach or threatened breach of this Agreement but shall be in addition to all other remedies available at law or equity.  The Trusts agree not to resist such application for relief on the basis that Newco has an adequate remedy at law.  The Trusts hereby (a) waive any requirement for the security or posting of any bond in connection with such remedies and (b) agree not to contest any request for the granting of injunctive relief relating to this Agreement on the basis that Newco has not proven actual damages.

**Section 3.7.**    <u>Counterparts</u>.    This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement.

**Section 3.8.**    <u>Governing Law</u>.  This Agreement shall be construed in accordance with the laws of the State of Delaware, without regard to any Delaware conflict of law principles that would result in the application of laws of any other jurisdiction.

**Section 3.9.**    <u>Jury Waiver</u>.  Each Party hereby irrevocably waives it's right to trial by jury in any proceeding arising out of or relating to this Agreement.

**Section 3.10.** <u>Severability; Validity</u>.   Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but to the extent that any provision of this Agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless doing so would alter the fundamental agreements expressed in this Agreement.  To such end, the provisions of this Agreement are agreed to be severable.

**Section 3.11.** <u>No Partnership Agreement</u>.  Nothing contained in this Agreement shall create or be deemed to create an employment, agency, fiduciary, joint venture, or partnership relationship between any of the Parties.

**Section 3.12.** <u>No Conflicts Agreement</u>.  Nothing contained in this Agreement shall create or be deemed to create any attorney-client relationship for purposes of the determination of conflicts of interest.  Neither the existence of this Agreement, nor its terms, nor information obtained hereunder, shall be asserted by any Party as grounds for a motion to disqualify any Party to this Agreement or its attorneys in any proceeding that may occur.

**Section 3.13.** <u>No Waiver</u>.  The Parties agree that no failure or delay by any Party in exercising any right, power, or privilege hereunder will operate as a waiver thereof, and that no single or partial exercise thereof will preclude any other or further exercise thereof or the exercise of any right, power, and privilege hereunder.

**Section 3.14.** <u>Entire Agreement</u>.  This Agreement, the Plan, and the Existing Protective Order contain the entire agreement of the Parties concerning Newco's and the Trustees' respective rights and obligations with respect to the Data Transfer Documents and Previously Produced Materials and supersede all other prior representations and agreements between or among the Parties as to such subject matter.

**Section 3.15.** <u>Authorization</u>.  Each of the undersigned individuals represents and warrants that he/she has the power and authority to enter into this Agreement and bind their respective Party as its authorized representatives.

**Section 3.16.** <u>Titles</u>.  The section titles used herein are for convenience only and shall not be considered in construing or interpreting any of the provisions of this Agreement.

**Section 3.17.** <u>No Third-Party Beneficiaries</u>.  This Agreement is not intended to benefit or create rights in any other person or entity other than Newco and the Trusts.

**Section 3.18.** <u>Binding Effect</u>.  The Parties agree that this Agreement is for the benefit of and shall be binding upon the Parties and their respective representatives, transferees, successors, and assigns.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective representatives thereunto duly authorized as of the Effective Date.

[SIGNATURES ON FOLLOWING PAGE]

10

## **EXHIBIT A**

SEARCH PROTOCOL

## SEARCH PROTOCOL

1.  **Custodians**.  To the extent the Debtors are in possession of the following custodians' emails, such custodians' emails shall be subject to this Search Protocol (with the requirement to restore backup tapes):

    a.  **Released Party Custodians Under Art. I(A)(183) of the Plan**
        - Elizabeth Abrams
        - Travis Autrey
        - Gwen Bingham
        - Matthew Brzozowski
        - Matt Collins
        - Tony W. Collins
        - Brian Danahy
        - Donna Edwards
        - Stacey Fedorka
        - Karen Golz
        - Adam Hayden
        - Darin Johnson
        - Jessica Livingston
        - Cassy Morgan
        - Diana Nole
        - Timothy Pohl
        - Chris Roche
        - Dale Wolf
        - Jesse York
        - Andrew Zeltwanger
        - Luis Alvarez
        - Laurent Angibaud
    b.  **Additional Custodians**
        - Robert Alford
        - Robin Barney
        - Jeffrey Binder
        - Kerem Bolukbasi
        - Michael Crader
        - Kendall Garrison
        - Daniel P. Hann
        - Stuart Kleopfer
        - Sharat Kusuma
        - Gary Miller
        - Betty Petty
        - David Petty
        - William Petty
        - Joel C. Phillips

- John Schilling
- Todd Sisitsky
- Michael Tepatti
- Laura Williams
- Bennett Yasskin

2.   **Search Terms**.  The following search terms shall be applied to the custodians identified in 1(a) and 1(b) above.

**(a) Any of Group 1:**
- Binder
- Board
- Director
- Independent
- Liabilit*
- Majority
- Manag*
- Member*
- Minority
- Officer
- Recall
- Releas*
- Settl*
- "Term Sheet"
- Toll*

**WITHIN 10 OF ANY OF:**

- Allocat*
- Authori*
- Bag*
- Cement
- Conflict*
- Control*
- Damag*
- Defect*
- Debond*
- De-bond*
- Delam*
- Design*
- "false claims"
- FCA
- "fiduciary duty"
- "fiduciary duties"
- Fraud

- ○ Indemn*
- ○ "Hospital for Special Surgery"
- ○ HSS
- ○ Impair*
- ○ Loose*
- ○ Packag*
- ○ Poly*
- ○ Oxid*
- ○ Recall*
- ○ Supplier*
- ○ vendor*

**(b) Any of Group 2:**
- Bag*
- Cement
- Complain*
- Damag*
- Debond*
- De-bond*
- Defect*
- Delam*
- Design*
- "Hospital for Special Surgery"
- HSS
- Impair*
- Loose*
- Oxid*
- Packag*
- Poly*
- Recall*
- Revis*
- supplier*
- vendor*

**AND ANY OF:**

- ○ AcuMatch OR Acumatch
- ○ Alteon
- ○ ankle
- ○ Equinoxe
- ○ ExactechGPS
- ○ Gibralt
- ○ hip
- ○ knee
- ○ implant

14

- MCS
- Novation
- Octane
- Optecure
- Optetrak
- shoulder
- Truliant
- Vantage

**(c) Any of Group 3:**
- "Alter Ego"
- Bankrupt*
- BOFD*
- Breach* w/10 fiduciary
- Broadspire
- CID
- "Civil Investigative Demand"
- "Department of Justice"
- Dismiss*
- DOJ
- Domination
- Dominion
- (FDA OR "Food and Drug Administration") AND (communicat* OR correspond*)
- Foodtown OR Emoral
- Lemak
- MDL
- MTD
- Over-Reaching OR overreaching
- Petrera
- "Qui Tam"
- Relator
- Veil w/5 Pierc*

3.    **Date Ranges**.  The date range for custodial searches shall be from January 1, 2014, to June 1, 2025.

## **EXHIBIT B**

PRIOR COUNSEL DOCUMENT REQUEST LETTER

[SETTLEMENT TRUST COUNSEL LETTERHEAD]

[DATE]

**BY OVERNIGHT DELIVERY AND EMAIL**

[ADDRESS]

**RE:   Settlement Trust Request for Client Files**

Dear Sir or Madam:

We write on behalf of the Settlement Trustee of the Settlement Trust, a Delaware trust established pursuant to the *Fifth Amended Joint Chapter 11 Plan of Exactech, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan"), which was confirmed by the United States Bankruptcy Court for the District of Delaware on [DATE].  *See* [Confirmation Order cite]. Capitalized terms used herein not otherwise defined have the meanings ascribed to them in the Plan.

We understand that [DEBTORS' PRIOR REPRESENTATIVE FIRM] (the "Firm") represents or represented one or more of the Debtors: Osteon Holdings, Inc.; Osteon Intermediate Holdings I, Inc.; Osteon Intermediate Holdings II, Inc.; Exactech, Inc.; and XpandOrtho, Inc.

Pursuant to Article IV.D. of the Plan, the Settlement Trust has succeeded to all rights, privileges, and powers of the Debtors and their Estates with respect to the Trust Assets, including the Settlement Trust Causes of Action.  As of Effective Date, namely [DATE], pursuant to Article IV.H. of the Plan, any attorney-client privilege, work-product privilege, common-interest communications with Insurance Companies, protection or privilege granted by joint defense, common interest, and/or other privilege or immunity of the Debtor relating, in whole or in part, to the PI/WD Claims, the Settlement Trust Assets (including the Settlement Trust Causes of Action), or the Insurance Actions was irrevocably transferred to and vested in the Settlement Trust.  As such, the Settlement Trust has the same rights as the Debtors in Privileged Information relating to the General Unsecured Claims and the Trust Assets.

As such, on behalf of the Settlement Trustee and the Settlement Trust, we request that the Firm provide to us all documents and communications in the Firm's client file for the Debtors.  Subject to applicable law, the Debtors' client file shall include, without limitation, all pleadings, correspondence (including, without limitation, electronic communications with co-defendants' counsel in any litigation, whether or not such communications constitute common-interest communications), general work product, and opinion work product.  To the extent that the Firm intends to withhold any such document, whether on the basis that any such document is not a part of the Debtors' client file under applicable law or otherwise, please advise and provide the basis under applicable law for withholding any such document.

Thank you in advance for your prompt attention to this request.  Please contact us any time if you have any questions.

Sincerely,

[SETTLEMENT TRUST ATTORNEY SIGNATURE]

# **EXHIBIT 2**

**Cooperation Agreement Blackline**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Exactech, Inc., *et al*.,[1] | Case No. 24-12441 (LSS) |
| Debtors. | (Jointly Administered) |

## SETTLEMENT TRUST COOPERATION AGREEMENT

In connection with the *[Fifth Amended Joint Chapter 11 Plan of Exactech Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code]* [Docket No. ——1490], including all exhibits and schedules thereto, and as the same may from time to time be amended or modified and as confirmed (the "**Plan**") by order of the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") in the above-captioned cases (the "**Chapter 11 Cases**"), this agreement (the "**Agreement**") is made, effective as of the Effective Date,[2] by and among (i) the Settlement Trustee and the Commercial GUC Trustee (together, the "**Trustees**") of the Settlement Trust and the Commercial GUC Trust (together, the "**Trusts**"), acting in their respective capacities on behalf of the respective Trusts,[3] (ii) the Debtors (defined herein), and (iii) Exactech Newco ("**Newco**") (each, a "**Party**" and, collectively, the "**Parties**").

## RECITALS

**WHEREAS**, on [DATE]July 22, 2025, the Debtors filed the Plan, which provides for the establishment of the Trusts and the appointment of the Trustees;

**WHEREAS**, the Trusts are responsible for carrying out the provisions of the Plan relating to the Trusts, including commencing, prosecuting, and settling all Retained Causes of Action and liquidating General Unsecured Claims, as described in more detail in the Trust Documents and the Plan;

**WHEREAS**, the Parties recognize that the Trusts will require access to documents maintained in the Debtors' files, including Privileged Information, to pursue the Retained Causes of Action and liquidate General Unsecured Claims;

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  Osteon Holdings, Inc. (7042); Osteon Intermediate Holdings I, Inc. (7778); Osteon Intermediate Holdings II, Inc. (1292); Exactech, Inc. (3930); and XpandOrtho, Inc. (4250).  The Debtors' service address is 2320 NW 66th Court, Gainesville, Florida 32653.

[2]   Capitalized terms used herein but not otherwise defined shall have the same meanings as in the Plan.

[3]   For the avoidance of doubt, any reference to an obligation of the Trusts includes a reference to the Trustees, and any reference to an obligation of the Trustees includes a reference to the Trusts.

1

**WHEREAS**, the Parties recognize that Newco will operate a business that will require access to and the maintenance of confidentiality of documents maintained in the Debtors' files, including (in some cases) documents to which the Trusts require access and the ability to use in litigation and in their performance of their obligations under the Plan;

**WHEREAS**, the Parties desire to establish a framework for the Trusts' access to documents, including Privileged Information, that may be used in connection with pursuing Retained Causes of Action and liquidating General Unsecured Claims and for Newco's access to documents, including Privileged Information, in connection with its business operations; and

**WHEREAS**, the Confirmation Order provides that pursuant to, *inter alia*, Federal Rule of Evidence 502(d), no privileges shall be waived by the transfer and assignment of any privileges or the production of any Privileged Information to the Trusts and Newco or any of their respective employees, professionals or representatives, or by disclosure of such Privileged Information to the Trusts and Newco or any of their employees, professionals or representatives.

**NOW THEREFORE**, in light of the above-stated premises, the mutual covenants contained herein, and for good and valuable consideration, the Parties agree as follows:

## ARTICLE I
## DOCUMENT ACCESS AND TRANSFER

**Section 1.1.** <u>Previously Produced Materials</u>.

a.    All documents previously produced to the Official Committee of Unsecured Creditors (the "**Committee**") by the Debtors ("**Previously Produced Materials**") may be provided by the Committee to the Trusts for purposes of and subject to this Agreement.

b.    The existing protective order in the Chapter 11 Cases (Dkt. 564) (the "**Existing Protective Order**") shall continue to govern the Previously Produced Materials, notwithstanding the closing of the Chapter 11 Cases, including all confidentiality designations applied thereto and all rights to seek redesignation thereof, with the following modifications:

   i.    The Trustees may use Previously Produced Materials in performing their respective functions and obligations under the Plan and the Trust Agreements, including for the purpose of prosecuting Retained Causes of Action and liquidating General Unsecured Claims, but in no event for the purpose of pursuing Causes of Action or facilitating another in pursuing Causes of Action against any Released Parties.

   ii.   Members of the Committee no longer may have access to Previously Produced Materials designated Confidential, and any such Previously Produced Materials still in their possession shall be returned or destroyed in accordance with paragraph 28 of the Existing Protective Order.

iii.   Newco shall have the rights and obligations of a producing party under the Existing Protective Order and the Trusts shall have the rights and obligations of a receiving party under the Existing Protective Order, in each case with respect to Previously Produced Materials.

iv.   Documents designated as restructuring professionals' eyes only under the Existing Protective Order shall be treated as attorneys' eyes only.

c.   Any other protective order or confidentiality restriction applicable to Previously Produced Materials besides the Existing Protective Order shall continue to apply.

**Section 1.2.** Supplemental Data Transfer.

a.   The Trusts shall have the right to receive copies of additional Debtor documents to the extent they are not Previously Produced Materials and they contain information relevant to the liquidation of General Unsecured Claims or the Retained Causes of Action, from the following sources (collectively, the "**Data Transfer Documents**"):

i.   The Debtors shall apply the search parameters in **Exhibit A** and produce the results to the Trusts.

ii.   All documents previously redacted or logged on any privilege log of the Debtors in the Chapter 11 Cases, including but not limited to the Debtors' latest common interest privilege log in the Chapter 11 Cases (collectively, "**Privilege Log Documents**"), shall be provided by the Debtors' counsel to the Trusts in unredacted form.

iii.   All communications between or among, on the one hand, any Debtor, including any Debtors' in-house counsel, whether or not identified as a Custodian herein, and, on the other hand, any counsel representing Debtors in the MDL or with respect to U.S. personal injury litigation related to the MDL between January 1, 2021 and June 1, 2025 ("**Prior Litigation Counsel**"), shall be provided by the Debtors' counsel to the Trusts regardless of whether such communications are within the search parameters in **Exhibit A**.  For the avoidance of doubt, Prior Litigation Counsel shall include, but not be limited to, the following attorneys: Susan Sharko, Mike Kanute, Ruben Gonzalez, Sean Powell, Steve Bennett, Mark Premo-Hopkins, Christa Cottrell, Jey Lefkowitz, and Cameron Ginder.

iv.   The Trusts may receive documents that belong to the Debtors that are in the possession of the Debtors' Prior Litigation Counsel ("**Prior Counsel Documents**") by sending a written request in substantially the form of **Exhibit B**.  Newco shall have no obligation with respect to the Trusts' efforts to obtain Prior Counsel Documents, and shall bear no responsibility for any response, or lack thereof, the Trusts receive from Prior Litigation Counsel to a request.

3

b.    The Data Transfer Documents shall be categorized, for purposes of this Agreement, as follows:

    i.    Documents that relate solely to the Trust Assets (including the Retained Causes of Action) and General Unsecured Claims and not to Newco's business operations ("**Category 1**").

    ii.    Documents that relate to both the Trust Assets (including the Retained Causes of Action) and General Unsecured Claims and Newco's business ("**Category 2**").

    iii.    Documents that relate solely to Newco's business operations and not to the Trust Assets and General Unsecured Claims (including, for example, documents that relate to products that have not been manufactured or sold before the Effective Date) ("**Category 3**").

c.    All Data Transfer Documents shall presumptively be in Category 2, but may be recategorized as follows:

    i.    The Trustees may make a request to Newco to designate a Data Transfer Document as a Category 1 Data Transfer Document, and Newco shall consider such request in good faith. If any Data Transfer Documents are redesignated as Category 1 Data Transfer Documents, Newco no longer shall have any rights with respect to those documents, except as set forth in section 2.1(d).

    ii.    Newco may make a request to the Trustees to designate a Data Transfer Document as a Category 3 Data Transfer Document, and the Trustees shall consider such request in good faith. If any Data Transfer Documents are redesignated as Category 3 Data Transfer Documents, the Trusts no longer shall have any rights with respect to them, and if Newco so requests, the Trusts shall return or destroy all copies of such documents.

d.    All privileges belonging to the Debtors applicable to Data Transfer Documents shall continue to apply (including the attorney-client privilege, the work-product doctrine, and any other similar protection). The Trusts shall be the successors of the Debtors with respect to any privilege applicable to Category 1 Data Transfer Documents. Newco shall be the successor of the Debtors with respect to any privilege applicable to Category 3 Data Transfer Documents and any documents acquired from the Debtors that are not Data Transfer Documents. The Trusts and Newco shall share any Debtor privilege applicable to Category 2 Data Transfer Documents, subject to the other provisions of this Agreement.

e.    The Parties' rights with respect to privileged Data Transfer Documents shall remain subject to the rights of third parties under applicable law, including any rights arising from the common-interest doctrine, the joint-defense doctrine, joint attorney-client representation, or any agreement. Before taking any action that

arguably could affect any privilege in which a third party may have rights, the Parties shall provide such third party with reasonable written notice.

f.    If the Trusts determine that they have received Data Transfer Documents belonging in Category 3, they shall promptly notify Newco, provide such documents to Newco, and delete all copies of such documents. If Newco determines that Previously Produced Materials contained inadvertently produced privileged Category 3 Data Transfer Documents, it may make a claw back request with respect to such documents in accordance with the Existing Protective Order, and the provisions for challenging any assertion of privilege in connection with such a claw back request in the Existing Protective Order shall apply.

**Section 1.3.** <u>Limitations on Obligations to Disclose Documents</u>. Neither Newco nor the Debtors shall be required by this Agreement to transfer to the Trusts any document that was produced to or is in the possession of the Committee or the Trusts as of the Effective Date, or the transfer of which is restricted or limited by the terms of the Plan or the Confirmation Order.

**Section 1.4.** <u>Newco's Rights to Debtor Documents</u>. Subject to this Agreement, and notwithstanding anything to the contrary in the Sale Transaction Documents, the Parties agree that Newco shall acquire all documents of the Debtors, including Previously Produced Materials.

**Section 1.5.** <u>Reservation of Discovery Rights</u>. Nothing herein shall abridge or affect the rights of the Parties in connection with discovery in any proceeding or litigation brought by the Trusts or the Trustees.

**ARTICLE II**
**DOCUMENT USE RESTRICTIONS AND NEW PROTECTIVE ORDERS**

**Section 2.1.** <u>Document Use Generally</u>.

a.    The Trusts may use Data Transfer Documents, Previously Produced Materials, and the contents of the foregoing in performing their respective functions and obligations under the Plan and the Trust Agreements, including for the purpose of prosecuting Retained Causes of Action and liquidating General Unsecured Claims, but in no event for the purpose of pursuing Causes of Action or facilitating another in pursuing Causes of Action against any Released Party.

b.    The Trusts may disclose a Data Transfer Document or its contents only (i) to the Trusts' hired professionals (and only if such professionals have been made aware of and agree to abide by the use and confidentiality restrictions applicable to such documents) and any person who, based on the face of such document, was an author, sender, or recipient of such document, or (ii) in the context of litigation of a Retained Cause of Action in accordance with the terms a new protective order entered by the applicable court governing disclosure in such litigation (a "**New Protective Order**").

c.      The Trusts shall not disclose any Data Transfer Document or its contents to members or former members of the Committee in their capacity as such, regardless of whether the Committee continues to exist after the Effective Date.

d.      Following the conclusion of all litigation of the Retained Causes of Action and the winding up of the Trusts, the Trusts shall return to Newco all copies of Previously Produced Materials and Data Transfer Documents in their possession, custody, or control (including those in the possession of their hired professionals) or, if Newco so requests, confirm that such documents have been deleted or destroyed. At such time, Newco may, in its sole discretion, take possession of any Data Transfer Documents or Previously Produced Materials in the possession of the Trusts and obtain all rights of the Trusts with respect to such Data Transfer Documents or Previously Produced Materials, including any applicable privileges.

**Section 2.2.**  <u>New Protective Orders and Limits on Use in Litigation</u>.

a.      The Trusts and Newco shall confer in good faith on the terms of any New Protective Order before submission to the applicable court. The Trusts shall implement Newco's comments to the New Protective Order unless such comments are unreasonable, proposed in bad faith, or would prevent or have the effect of preventing the Trusts from being able to make use of Data Transfer Documents for purposes of prosecuting a Retained Cause of Action (including in court proceedings).

b.      Subject to Section 2.2(g), any New Protective Order shall contain the following terms (the "**Required Protective Order Terms**"):

       1.      The receiving party shall be prohibited from using Data Transfer Documents and their contents other than for purposes of the litigation of a Retained Cause of Action, and in no event for the purpose of pursuing Causes of Action or facilitating another in pursuing Causes of Action against any Released Party.

       2.      The receiving party shall not be permitted to disclose a Data Transfer Document or its contents except to (a) such party's hired professionals in the litigation, (b) the applicable court and its personnel, and (c) any person who, based on the face of such document, was an author, sender, or recipient of such document.

       3.      A Data Transfer Document shall not be filed (and its contents shall not be disclosed) on the docket in litigation of a Retained Cause of Action by any person except under seal.

       4.      The receiving party must return to the Trusts or destroy all copies of Data Transfer Documents at the conclusion of the litigation of the applicable Retained Cause of Action.

c.    The Trustees shall use best efforts to obtain approval by the applicable court of the Required Protective Order Terms.  The Trustees shall promptly notify Newco if the applicable court (upon motion of a party to the litigation or otherwise) declines to approve or makes modifications to any of the Required Protective Order Terms (or indicates that it may do so).  If Newco notifies the Trustees of its intent to challenge any such decision by the applicable court, the Trustees shall assist Newco in bringing any challenge or seeking any relief that Newco, in its sole discretion, determines to pursue in respect of such decision.   In such circumstance, the Trustee shall use best efforts to obtain approval of as many of the Required Protective Order Terms as is reasonably practicable.  If, after the exhaustion of the Trustees' efforts and provision of assistance to Newco in accordance with this Agreement, the applicable court still declines to approve the Required Protective Order Terms, the Trustees may assent to entry of a New Protective Order with different terms, provided that it shall use best efforts to maximize the confidentiality protections afforded to Category 2 Data Transfer Documents.

d.    To the extent the Trustees seek to use privileged information in or derived from a Category 2 Data Transfer Document in litigation of a Retained Cause of Action, they shall first attempt to determine whether that information is in or can be derived from a non-privileged source and, if so, avoid using the privileged Category 2 Data Transfer Document.

e.    The Trustees shall use best efforts to maintain the sealing and confidentiality of any Category 2 Data Transfer Documents at all stages of litigation of a Retained Cause of Action, including trial of a Retained Cause of Action.

f.    The Trustees shall promptly notify Newco if (i) any person seeks to lift the seal or otherwise modify confidentiality restrictions applicable to Category 2 Data Transfer Documents under the New Protective Order, or (ii) the applicable court orders the unsealing or public disclosure of any Category 2 Data Transfer Document.  If Newco notifies the Trusts of its intent to challenge any such request, modification, or unsealing or public disclosure, as the case may be, then the Trustees shall assist Newco in bringing any applicable challenge or seeking any applicable relief, including by joining any objection, motion, or other request by Newco in relation thereto.

g.    For the avoidance of doubt, if, following the Trustees' use of best efforts to maintain the sealing and confidentiality of any Data Transfer Documents pursuant to a New Protective Order, the applicable court is unwilling to maintain the sealing and confidentiality of any Data Transfer Documents, whether at trial or otherwise, the Trusts are not prohibited from making use of any such Data Transfer Documents for purposes of pursuing Retained Causes of Action and liquidating General Unsecured Claims.

**Section 2.3.** <u>Waiver of Privilege</u>.

a.  Newco, on one hand, and the Trustees, on the other hand, hereby provide advance consent to the other that it or they may waive any Debtor privilege applicable to a Category 2 Data Transfer Document, without the need to seek any further consent from the other, *provided that*:

    i.  Before effectuating a waiver, the Party desiring to waive privilege shall provide advance notice to the other with an explanation of which specific Category 2 Data Transfer Documents will be subject to waiver and an explanation of why waiver is being pursued and to what use the Category 2 Data Transfer Documents are expected to be put and the other Party shall be afforded the opportunity to exercise its recategorization rights under section 1.2(c); and

    ii.  All terms of this Agreement shall apply and continue to bind the Parties with respect to such Category 2 Data Transfer Document.

b.  The Trustees shall not require Newco's consent to waive any Debtor privilege applicable to a Category 1 Data Transfer Document.

c.  Newco shall not require the Trustees' consent to waive any Debtor privilege applicable to a Category 3 Data Transfer Document or any Debtor document that is not a Data Transfer Document.

**Section 2.4.** <u>Acquisition of Third-Party Claims</u>.  If the Trustees acquire any Causes of Action held by a non-debtor against TPG, such acquisition shall not affect the Trustees' rights or obligations with respect to Data Transfer Documents or Previously Produced Materials under this Agreement.

## ARTICLE III
## MISCELLANEOUS

**Section 3.1.** <u>Costs</u>.  The costs incurred by the Debtors prior to the Effective Date in implementing the supplemental data transfer described in section 1.2(a)(i) – (iii) of this Agreement shall be paid by the Debtors. The costs incurred by the Trusts after the Effective Date in implementing the supplemental data transfer described in section 1.2(a)(iv) of this Agreement and in storing Data Transfer Documents provided to the Trusts shall be borne entirely by the Trusts.

**Section 3.2.** <u>Limitations on Litigation</u>.  The Trustees shall not acquire, commence, or pursue, or assist another in commencing or pursuing, any Causes of Action, whether directly or indirectly, against any Released Party.

**Section 3.3.** <u>Preservation of Rights</u>.  To the extent any document within the Data Transfer Documents is subject to the privilege or protection of a third party (including a

joint-client privilege, a shared privilege, a common interest protection, or otherwise), such third party's rights are fully preserved.

**Section 3.4.** <u>Notices</u>.    All notices, requests, or other communications required or permitted to be made in accordance with this Agreement shall be in writing and shall be effective when received by hand delivery, electronic mail, electronic facsimile transmission, express overnight courier service, or by registered or certified mail, return receipt requested, addressed to the Parties at addresses to be specified after the Effective Date ("**Notice Addresses**").    Until a Party's Notice Addresses are specified, notice in accordance with this section may be sent to the respective addresses set forth below ("**Counsel Addresses**").    After the specification of a Notice Address, delivery to a Counsel Address shall not constitute notice but such Counsel Address shall be copied on any notice sent to a Notice Address:

a.    For the Trusts:

[ADD]

b.    For Newco:

[ADD]

**Section 3.5.** <u>Effectiveness</u>.    This Agreement shall become effective upon, and concurrently with, the occurrence of the Effective Date.

**Section 3.6.** <u>Remedies</u>.    The Trusts acknowledge and agree to the confidential nature of the Data Transfer Documents and Previously Produced Materials and that irreparable damage would result to Newco if such materials or information contained therein or derived therefrom is disclosed to any third party except as expressly permitted by this Agreement.    The Trusts understand and agree that money damages may not be a sufficient remedy for any breach or threatened breach of this Agreement and that Newco shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach or threatened breach.    Such equitable remedy or remedies shall not, however, be deemed to be the exclusive remedy or remedies for breach or threatened breach of this Agreement but shall be in addition to all other remedies available at law or equity.    The Trusts agree not to resist such application for relief on the basis that Newco has an adequate remedy at law.    The Trusts hereby (a) waive any requirement for the security or posting of any bond in connection with such remedies and (b) agree not to contest any request for the granting of injunctive relief relating to this Agreement on the basis that Newco has not proven actual damages.

**Section 3.7.** <u>Counterparts</u>.    This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement.

**Section 3.8.** <u>Governing Law</u>.    This Agreement shall be construed in accordance with the laws of the State of Delaware, without regard to any Delaware conflict of law principles that would result in the application of laws of any other jurisdiction.

**Section 3.9.** Jury Waiver.  Each Party hereby irrevocably waives it's right to trial by jury in any proceeding arising out of or relating to this Agreement.

**Section 3.10.**    Severability; Validity.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but to the extent that any provision of this Agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless doing so would alter the fundamental agreements expressed in this Agreement. To such end, the provisions of this Agreement are agreed to be severable.

**Section 3.11.**    No Partnership Agreement.  Nothing contained in this Agreement shall create or be deemed to create an employment, agency, fiduciary, joint venture, or partnership relationship between any of the Parties.

**Section 3.12.**    No Conflicts Agreement.  Nothing contained in this Agreement shall create or be deemed to create any attorney-client relationship for purposes of the determination of conflicts of interest.  Neither the existence of this Agreement, nor its terms, nor information obtained hereunder, shall be asserted by any Party as grounds for a motion to disqualify any Party to this Agreement or its attorneys in any proceeding that may occur.

**Section 3.13.**    No Waiver.  The Parties agree that no failure or delay by any Party in exercising any right, power, or privilege hereunder will operate as a waiver thereof, and that no single or partial exercise thereof will preclude any other or further exercise thereof or the exercise of any right, power, and privilege hereunder.

**Section 3.14.**    Entire Agreement.  This Agreement, the Plan, and the Existing Protective Order contain the entire agreement of the Parties concerning Newco's and the Trustees' respective rights and obligations with respect to the Data Transfer Documents and Previously Produced Materials and supersede all other prior representations and agreements between or among the Parties as to such subject matter.

**Section 3.15.**    Authorization.  Each of the undersigned individuals represents and warrants that he/she has the power and authority to enter into this Agreement and bind their respective Party as its authorized representatives.

**Section 3.16.**    Titles.  The section titles used herein are for convenience only and shall not be considered in construing or interpreting any of the provisions of this Agreement.

**Section 3.17.**    No Third-Party Beneficiaries.  This Agreement is not intended to benefit or create rights in any other person or entity other than Newco and the Trusts.

**Section 3.18.**    Binding Effect.  The Parties agree that this Agreement is for the benefit of and shall be binding upon the Parties and their respective representatives, transferees, successors, and assigns.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective representatives thereunto duly authorized as of the Effective Date.

[SIGNATURES ON FOLLOWING PAGE]

**EXHIBIT A**

SEARCH PROTOCOL

## SEARCH PROTOCOL

1.  **Custodians**.  To the extent the Debtors are in possession of the following custodians' emails, such custodians' emails shall be subject to this Search Protocol (with the requirement to restore backup tapes):

    a.  **Released Party Custodians Under Art. I(A)(183) of the Plan**
        - Elizabeth Abrams
        - Travis Autrey
        - Gwen Bingham
        - Matthew Brzozowski
        - Matt Collins
        - Tony W. Collins
        - Brian Danahy
        - Donna Edwards
        - Stacey Fedorka
        - Karen Golz
        - Adam Hayden
        - Darin Johnson
        - Jessica Livingston
        - Cassy Morgan
        - Diana Nole
        - Timothy Pohl
        - Chris Roche
        - Dale Wolf
        - Jesse York
        - Andrew Zeltwanger
        - Luis Alvarez
        - Laurent Angibaud

    b.  **Additional Custodians**
        - Robert Alford
        - ~~Luis Alvarez~~
        - ~~Laurent Angibaud~~
        - Robin Barney
        - Jeffrey Binder
        - Kerem Bolukbasi
        - Michael Crader
        - Kendall Garrison
        - Daniel P. Hann
        - Stuart Kleopfer
        - Sharat Kusuma
        - Gary Miller
        - Betty Petty

- David Petty
- William Petty
- Joel C. Phillips
- John Schilling
- Todd Sisitsky
- Michael Tepatti
- Laura Williams
- Bennett Yasskin

2. **Search Terms**.  The following search terms shall be applied to the custodians identified in 1(a) and 1(b) above.

**(a) Any of Group 1:**
- Binder
- Board
- Director
- Independent
- Liabilit*
- Majority
- Manag*
- Member*
- Minority
- Officer
- Recall
- Releas*
- Settl*
- "Term Sheet"
- Toll*

**WITHIN 10 OF ANY OF:**

  o Allocat*
  o Authori*
  o Bag*
  o Cement
  o Conflict*
  o Control*
  o Damag*
  o Defect*
  o Debond*
  o De-bond*
  o Delam*
  o Design*
  o "false claims"

14

- o FCA
- o "fiduciary duty"
- o "fiduciary duties"
- o Fraud
- o Indemn*
- o "Hospital for Special Surgery"
- o HSS
- o Impair*
- o Loose*
- o Packag*
- o Poly*
- o Oxid*
- o Recall*
- o Supplier*
- o vendor*

**(b) Any of Group 2:**
- Bag*
- Cement
- Complain*
- Damag*
- Debond*
- De-bond*
- Defect*
- Delam*
- Design*
- "Hospital for Special Surgery"
- HSS
- Impair*
- Loose*
- Oxid*
- Packag*
- Poly*
- Recall*
- Revis*
- supplier*
- vendor*

**<u>AND ANY OF:</u>**

- o AcuMatch OR Acumatch
- o Alteon
- o ankle
- o Equinoxe

15

- o ExactechGPS
- o Gibralt
- o hip
- o knee
- o implant
- o MCS
- o Novation
- o Octane
- o Optecure
- o Optetrak
- o shoulder
- o Truliant
- o Vantage

**(c) Any of Group 3:**
- "Alter Ego"
- Bankrupt*
- BOFD*
- Breach* w/10 fiduciary
- Broadspire
- CID
- "Civil Investigative Demand"
- "Department of Justice"
- Dismiss*
- DOJ
- Domination
- Dominion
- (FDA OR "Food and Drug Administration") AND (communicat* OR correspond*)
- Foodtown OR Emoral
- Lemak
- MDL
- MTD
- Over-Reaching OR overreaching
- Petrera
- "Qui Tam"
- Relator
- Veil w/5 Pierc*

3.   **Date Ranges**.  The date range for custodial searches shall be from January 1, 2014, to June 1, 2025.

# **EXHIBIT B**

PRIOR COUNSEL DOCUMENT REQUEST LETTER

[SETTLEMENT TRUST COUNSEL LETTERHEAD]

[DATE]

**BY OVERNIGHT DELIVERY AND EMAIL**

[ADDRESS]

**RE:    Settlement Trust Request for Client Files**

Dear Sir or Madam:

We write on behalf of the Settlement Trustee of the Settlement Trust, a Delaware trust established pursuant to the *Fifth Amended Joint Chapter 11 Plan of Exactech, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan"), which was confirmed by the United States Bankruptcy Court for the District of Delaware on [DATE]. *See* [Confirmation Order cite]. Capitalized terms used herein not otherwise defined have the meanings ascribed to them in the Plan.

We understand that [DEBTORS' PRIOR REPRESENTATIVE FIRM] (the "Firm") represents or represented one or more of the Debtors: Osteon Holdings, Inc.; Osteon Intermediate Holdings I, Inc.; Osteon Intermediate Holdings II, Inc.; Exactech, Inc.; and XpandOrtho, Inc.

Pursuant to Article IV.D. of the Plan, the Settlement Trust has succeeded to all rights, privileges, and powers of the Debtors and their Estates with respect to the Trust Assets, including the Settlement Trust Causes of Action. As of Effective Date, namely [DATE], pursuant to Article IV.H. of the Plan, any attorney-client privilege, work-product privilege, common-interest communications with Insurance Companies, protection or privilege granted by joint defense, common interest, and/or other privilege or immunity of the Debtor relating, in whole or in part, to the PI/WD Claims, the Settlement Trust Assets (including the Settlement Trust Causes of Action), or the Insurance Actions was irrevocably transferred to and vested in the Settlement Trust. As such, the Settlement Trust has the same rights as the Debtors in Privileged Information relating to the General Unsecured Claims and the Trust Assets.

As such, on behalf of the Settlement Trustee and the Settlement Trust, we request that the Firm provide to us all documents and communications in the Firm's client file for the Debtors. Subject to applicable law, the Debtors' client file shall include, without limitation, all pleadings, correspondence (including, without limitation, electronic communications with co-defendants' counsel in any litigation, whether or not such communications constitute common-interest communications), general work product, and opinion work product. To the extent that the Firm intends to withhold any such document, whether on the basis that any such document is not a part of the Debtors' client file under applicable law or otherwise, please advise and provide the basis under applicable law for withholding any such document.

Thank you in advance for your prompt attention to this request. Please contact us any time if you have any questions.

Sincerely,

[SETTLEMENT TRUST ATTORNEY SIGNATURE]

## **EXHIBIT 3**

**Settlement Trust Agreement**

**EXACTECH SETTLEMENT TRUST AGREEMENT**

**DATED AS OF [ ], 2025**

**PURSUANT TO THE FIFTH AMENDED JOINT CHAPTER 11**

**PLAN OF EXACTECH, INC. AND ITS DEBTOR AFFILIATES**

**PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

# TABLE OF CONTENTS

**Page**

ARTICLE I AGREEMENT OF TRUST .................................................................................. 2

    1.1     Creation and Name ..................................................................................... 2

    1.2     Purposes ....................................................................................................... 3

    1.3     Transfer of Assets ..................................................................................... 3

    1.4     Acceptance of Assets and Assumption of Liabilities ................... 4

    1.5     Jurisdiction ................................................................................................. 5

ARTICLE II POWERS AND TRUST ADMINISTRATION ............................................. 5

    2.1     Powers ......................................................................................................... 5

    2.2     General Administration ........................................................................... 8

    2.3     Medicare Reporting Obligations ........................................................ 11

ARTICLE III ACCOUNTS, INVESTMENTS, AND PAYMENTS ................................ 11

    3.1     Accounts. .................................................................................................. 11

    3.2     Investment Guidelines. ......................................................................... 12

    3.3     Payment of Operating Expenses. ....................................................... 13

    3.4     Payment of PI/WD Claims. .................................................................. 13

ARTICLE IV TRUSTEE; DELAWARE TRUSTEE .......................................................... 13

    4.1     Number. ...................................................................................................... 13

    4.2     Term of Service. ...................................................................................... 13

    4.3     Compensation and Expenses of the Trustee. ................................... 15

    4.4     Standard of Care; Exculpation. .......................................................... 15

    4.5     Protective Provisions. ............................................................................ 17

    4.6     Indemnification. ...................................................................................... 18

    4.7     Trustee Independence. ........................................................................... 19

    4.8     No Bond. .................................................................................................... 20

    4.9     Delaware Trustee. ................................................................................... 20

ARTICLE V TRUST ADVISORY COMMITTEE .............................................................. 24

i

5.1  Members.  24

5.2  Duties.  24

5.3  Term of Office.  25

5.4  Appointment of Successors.  26

5.5  Compensation and Expenses of the TAC.  26

5.6  No Bond.  26

5.7  Procedures for Obtaining Consent of the TAC.  26

ARTICLE VI GENERAL PROVISIONS  28

6.1  Irrevocability.  28

6.2  Term; Termination.  28

6.3  Amendments.  29

6.4  Severability.  30

6.5  Notices.  30

6.6  Successors and Assigns.  31

6.7  Limitation on PI/WD Claims Interests for Securities Laws Purposes.  31

6.8  Exemption from Registration.  32

6.9  Entire Agreement; No Waiver.  32

6.10  Headings.  32

6.11  Governing Law.  32

6.12  Dispute Resolution.  33

6.13  Effectiveness.  35

6.14  Counterpart Signatures.  35

EXHIBIT 1  TRUST DISTRIBUTION PROCEDURES  1

EXHIBIT 2  CERTIFICATE OF TRUST  1

EXHIBIT 3 INVESTMENT GUIDELINES  1

# EXACTECH SETTLEMENT TRUST AGREEMENT

This Exactech Settlement Trust Agreement (this "**Trust Agreement**"), dated the date set forth on the signature page hereof and effective as of the Effective Date, is entered into pursuant to the *Fifth Amended Joint Chapter 11 Plan of Exactech, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. *] (as may be further amended or modified, the "**Plan**"),[1] in Case No. 24-12441 (LSS) in the United States Bankruptcy Court for the District of Delaware ("**Bankruptcy Court**") by [Wilmington Trust, National Association] (the "**Delaware Trustee**"), the Settlement Trustee identified on the signature pages hereof (the "**Trustee**"), and the members of the Trust Advisory Committee identified on the signature pages hereof (the "**TAC**" and, together with the Delaware Trustee and the Trustee, the "**Parties**").[2]

## RECITALS

**WHEREAS**, the Plan contemplates the creation of the Settlement Trust (as provided for and referred to in the Plan as the Settlement Trust) (the "**Trust**");

**WHEREAS**, the Confirmation Order has been entered by the Bankruptcy Court;

**WHEREAS**, pursuant to the Plan, the Trust is established to carry out the provisions of the Plan relating to the Trust, including commencing, prosecuting, and settling the Settlement Trust Causes of Action;

---

[1]    All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference.  All capitalized terms not defined herein or in the Plan, but defined in the Bankruptcy Code or Bankruptcy Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Bankruptcy Rules, and such definitions are incorporated herein by reference.

[2]    The initial Trustee shall be Ellen K. Reisman.  The initial members of the TAC shall be Ellen Relkin, N. Kirkland Pope, Rayna E. Kessler, Jason S. Goldstein, Kevin M. Fitzgerald, C. Calvin Warriner, Joseph H. Saunders, David Harman, David Landever, Ashleigh Raso, and George Williamson.

**WHEREAS**, pursuant to the Plan, the Trust is also established to liquidate Direct PI/WD Claims and Indirect PI/WD Claims (the "**PI/WD Claims**") and administer distributions to Holders of PI/WD Claims in accordance with the Plan, the Confirmation Order and this Trust Agreement;

**WHEREAS**, the Trustee shall administer the Trust in accordance with the terms of the Plan, this Trust Agreement and the Trust Distribution Procedures including (as the same may be amended, modified or supplemented as provided herein, the "**TDP**"), attached hereto as **Exhibit 1**; and

**WHEREAS**, pursuant to the Plan, the Trust is intended to qualify as a "qualified settlement fund" (a "**Qualified Settlement Fund**") within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the Internal Revenue Code ("**IRC**") (the "**QSF Regulations**").

**NOW**, **THEREFORE**, it is hereby agreed as follows:

## ARTICLE I

## AGREEMENT OF TRUST

1.1    **Creation and Name**.  There is hereby created a trust known as the "Exactech Settlement Trust."  The Trustee of the Trust may transact the business and affairs of the Trust in the name of the Trust, and references herein to the Trust shall include the Trustee acting on behalf of the Trust.  It is the intention of the Parties that the Trust constitutes a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del. C. section 3801 *et seq.* (the "Act") and that this Trust Agreement constitute the governing instrument of the Trust.  The Trustee and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as Exhibit 2.

2

1.2    **Purposes**.  The purposes of the Trust are to:

(a)    initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment the Settlement Trust Causes of Action;

(b)    receive the Settlement Trust Assets (the "**Consideration**") pursuant to the terms of the Plan and the Confirmation Order;

(c)    hold, manage, protect and invest the Consideration, together with any income or gain earned thereon and proceeds derived therefrom (collectively, the "**Trust Assets**") in accordance with the terms of the Plan, the Confirmation Order, this Trust Agreement and the TDP (including as each of the foregoing may be amended, modified or supplemented, the "**Trust Documents**") for the benefit of the Beneficial Owners (as defined herein);

(d)    administer, process and resolve PI/WD Claims pursuant to the TDP;

(e)    qualify at all times as a Qualified Settlement Fund within the meaning of QSF Regulations;

(f)    engage in any lawful activity that is appropriate and in furtherance of the purposes of the Trust to the extent consistent with the Trust Documents; and

(g)    make distributions of Trust Assets to eligible holders of Allowed PI/WD Claims in accordance with and subject to the terms of the Trust Documents, including the TDP with the objective of treating all holders of Allowed PI/WD Claims fairly, equitably, and reasonably in light of the Trust Assets available to resolve such PI/WD Claims.

1.3 **Transfer of Assets**. Pursuant to, and in accordance with Article IV.G of the Plan, the Trust shall receive the Consideration to fund the Trust. The Consideration and any other assets to be transferred to the Trust under the Plan is and will be transferred to the Trust free and clear of any liens or other claims by the Debtors, any creditor, or other entity.

1.4 **Acceptance of Assets and Assumption of Liabilities**.

(a) In furtherance of the purposes of the Trust, except as otherwise provided in this Trust Agreement and the TDP, the Trust shall have and retain any and all rights and defenses the Debtors had with respect to any PI/WD Claim immediately before the Effective Date to the extent necessary to administer such PI/WD Claims in accordance with the Trust Documents.

(b) Notwithstanding anything to the contrary herein, no provision herein or in the TDP shall be construed or implemented in a manner that would cause the Trust to fail to qualify as a Qualified Settlement Fund under the QSF Regulations.

(c) In this Trust Agreement and the TDP, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

(d) To the extent required by the Act, the beneficial owners (within the meaning of the Act) of the Trust (the "**Beneficial Owners**") shall be deemed to be the holders of Allowed PI/WD Claims; provided that:

(i) the holders of Allowed PI/WD Claims, as such Beneficial Owners, shall have only such rights with respect to the Trust and its assets as are set forth in the TDP; and

(ii) no greater or other rights, including upon dissolution, liquidation, or winding up of the Trust, shall be deemed to apply to the holders of Allowed PI/WD Claims in their capacity as Beneficial Owners.

4

1.5    **Jurisdiction**.  The Bankruptcy Court shall have continuing jurisdiction over the Trust, provided, however, that the courts of the State of Delaware, including any federal court located therein, shall also have jurisdiction over the Trust.

## POWERS AND TRUST ADMINISTRATION

2.1    **Powers**.

(a)    The Trustee is and shall act as a fiduciary to the Trust in accordance with the provisions of the Trust Documents.  The Trustee shall, at all times, administer the Trust in accordance with the purposes set forth in Section 1.2 above.  Subject to the limitations set forth in this Trust Agreement and the Plan, the Trustee shall have the power to take any and all actions that, in the judgment of the Trustee, are necessary or proper to fulfill the purposes of the Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and not inconsistent with the requirements of Section 2.2, and any trust power now or hereafter permitted under applicable laws.

(b)    Except as required by applicable law or as otherwise specified herein or in the Plan or the Confirmation Order, the Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c)    Without limiting the generality of Section 2.1(a) above, and except as limited below or by the Plan, the Trustee shall have the power to:

(i)    receive and hold the Consideration and exercise all rights with respect thereto;

(ii)    commence, prosecute, and settle all Settlement Trust Causes of Action and Insurance Actions, including retaining and compensating legal counsel, experts, and other

professionals to assist the Trust with litigation involving the Settlement Trust Causes of Action and the Insurance Actions;

(iii)    borrow funds or obtain financing from third parties sufficient to commence, prosecute, and settle the Settlement Trust Causes of Action and Insurance Actions and enter into related pledge and security agreements and other loan documents;

(iv)    determine, in consultation with the TAC, that there are or will be sufficient Trust Assets to permit a distribution (a "**Distributable Asset Decision**"), at which time the Trustee may determine to commence claims processing;

(v)    control and manage the Data Records, Privileged Information, and Data Transfers concerning the PI/WD Claims and the Settlement Trust Causes of Action in accordance with the terms and conditions of the Plan and the Cooperation Agreement;

(vi)    following a Distributable Asset Decision, establish, in consultation with the TAC, an Initial Payment Percentage and any Supplemental Payment Percentage(s);

(vii)    following a Distributable Asset Decision, determine, in consultation with the TAC, to allow, alter, adjust or eliminate an option to elect an Expedited Distribution under the TDP;

(viii)    determine, in consultation with the TAC, that there are and will be insufficient Trust Assets to make any distributions on PI/WD Claims under the TDP;

(ix)    invest the monies held from time to time by the Trust in accordance with the Investment Guidelines pursuant to Section 3.2 below;

(x)    establish such funds, reserves, and accounts within the Trust, as the Trustee deems useful in carrying out the purposes of the Trust;

(xi)    participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding, as required to reconcile, administer, or defend against the PI/WD Claims;

(xii)    establish, supervise, and administer the Trust and the TDP, and make distributions to all holders of Allowed PI/WD Claims pursuant to the terms of this Trust Agreement, the Plan and the TDP;

(xiii)    appoint such officers and retain such employees, consultants, advisors, attorneys, independent contractors, experts and agents and engage in such legal, financial, administrative, accounting, investment, auditing, forecasting, and alternative dispute resolution services and activities as the Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this Trust Agreement;

(xiv)    make payment from the Trust Assets for the reasonable compensation to any of the Trust's employees, consultants, advisors, independent contractors, experts, and agents for legal, financial, administrative, accounting, investment, auditing, forecasting, and alternative dispute resolution services and activities as the Trust requires;

(xv)    make payment from the Trust Assets to compensate the Trustee, the Delaware Trustee, and their employees, consultants, advisors, independent contractors, experts and agents, and reimburse the Trustee and the Delaware Trustee for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

(xvi)    record all expenses (including taxes) incurred by the Trust on the books and records (and report on all applicable tax returns) as expenses of the Trust;

7

(xvii)   enter into such other arrangements with third parties as the Trustee deems useful in carrying out the purposes of the Trust, provided such arrangements do not conflict with any other provision of this Trust Agreement or the Plan;

(xviii) in accordance with Section 4.4 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) the Trust Indemnified Parties (as defined in Section 4.4 below), to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to defend, indemnify, hold harmless, and/or insure its directors, trustees, officers, employees, consultants, advisors, agents, and representatives.  No party shall be indemnified in any way for any liability, expense, claim, damage, or loss for which he or she is liable under Section 4.4 below;

(xix)   obtain the consent of the TAC with respect to the matters set forth in Section 2.2(e) below; and

(xx)    exercise any and all other rights, and take any and all other actions as are permitted, of the Trustee in accordance with the terms of this Trust Agreement and the Plan.

(d)     The Trustee shall not have the power to guarantee any debt of other persons.

(e)     The Trustee shall endeavor to make timely distributions and not unduly prolong the duration of the Trust.

2.2     **General Administration**.

(a)     The Trustee shall act in accordance with the Trust Documents and shall implement the TDP in accordance with its terms.  In the event of a conflict between the terms of this Trust Agreement and the TDP, the terms of this Trust Agreement shall control.  In the event of a conflict between the terms or provisions of the (i) Plan, (ii) this Trust Agreement or (iii) the TDP, the terms of the Plan shall have first priority, followed in priority by the Trust Agreement,

and lastly by the TDP.  For the avoidance of doubt, this Trust Agreement shall be construed and implemented in accordance with the Plan, regardless of whether any provision herein explicitly references the Plan.

(b)     The Trustee shall:

(i)     timely file such income tax and other returns and statements required to be filed and shall cause to be paid timely from the Trust Assets all taxes required to be paid by the Trust;

(ii)     comply with all applicable reporting and withholding obligations;

(iii)     satisfy all requirements necessary to qualify and maintain qualification of the Trust as a Qualified Settlement Fund within the meaning of the QSF Regulations;

(iv)     take no action that could cause the Trust to fail to qualify as a Qualified Settlement Fund within the meaning of the QSF Regulations; and

(v)     be treated as the "administrator" of the Trust within the meaning under Section 1.468B-2(k)(3) of the Treasury Regulations.

(c)     The Trustee shall timely account to the Bankruptcy Court as follows:

(i)     The Trustee shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event no later than one hundred and twenty (120) days following the end of each fiscal year, an annual report (the "**Annual Report**") containing special-purpose financial statements of the Trust (including, without limitation, a special-purpose statement of assets, liabilities and net claimants' equity, a special-purpose statement of changes in net claimants' equity and a special-purpose statement of cash flows).  The Trustee shall not be required to obtain an audit of the Annual Report by a firm of independent certified public

accountants.  The Trustee shall provide a copy of such Annual Report to the TAC when such report is filed with the Bankruptcy Court.

(ii)     Simultaneously with the filing of the Annual Report, the Trustee shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of PI/WD Claims resolved during the period covered by the Annual Report (the "**Claims Report**").  The Trustee shall provide a copy of such Claims Report to the TAC when such report is filed with the Bankruptcy Court.

(d)     The Trustee shall consult with the TAC on the matters set forth in Section 2.1(c)(ii), (iii), (iv), (vi) and (vii) and, as the Trustee determines, such other matters that could have a material impact on Trust Assets or the administration of the Trust.

(e)     The Trustee shall be required to obtain the consent of the TAC, pursuant to the consent process set forth in Section 5.7 below:

(i)     to make any amendments to the TDP or adopt, amend or modify any TDP Supplement (as such term is defined in the TDP);

(ii)     to change the forms of Acceptance and Release under the TDP;

(iii)     to commence and/or participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding;

(iv)     to settle any Settlement Trust Causes of Action;

(v)     to borrow funds or obtain financing from third parties sufficient to commence, prosecute, and settle the Settlement Trust Causes of Action and Insurance Actions and enter into related pledge and security agreements and other loan documents;

(vi)     to modify the compensation of the Trustee;

10

(vii)    to acquire an interest in and/or merge with and/or contract with another settlement trust;

(viii)    to effectuate any material amendment of this Trust Agreement, or any amendment of the TDP, which in each case shall be in accordance with Section 6.3; provided that no such amendment shall be in contravention of the Plan.

(f)    The Trustee shall meet with the TAC no less often than quarterly.  The Trustee shall meet in the interim with the TAC when so requested by the TAC.  Meetings may be held in person, by telephone or video conference, or by a combination of the foregoing.

2.3    **Medicare Reporting Obligations**.

(a)    The Trust shall register as a Responsible Reporting Entity ("**RRE**") under the reporting provisions of section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (Pub. L. 110-173) ("**MMSEA**").

(b)    The Trust shall timely submit all reports that are required under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated by the Trust or with respect to contributions to the Trust.  The Trust, in its role as an RRE, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA (collectively, "**CMS**") to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

## ARTICLE III

## ACCOUNTS, INVESTMENTS, AND PAYMENTS

3.1    **Accounts**.

(a)    The Trustee shall maintain one or more accounts (the "**Trust Accounts**") on behalf of the Trust with one or more financial depository institutions (each a "**Financial Institution**").  Candidates for the positions of Financial Institution shall fully disclose to the Trustee any interest in or relationship with the Debtors or their affiliated persons.  Any such interest or relationship shall not be an automatic disqualification for the position, but the Trustee shall take any such interest or relationship into account in selecting a Financial Institution.

(b)    The Trustee may replace any retained Financial Institution with a successor Financial Institution at any time, and such successor shall be subject to the considerations set forth in Section 3.1(a).

(c)    The Trustee may, from time to time, create such accounts and reasonable reserves within the Trust Accounts as authorized in this Section 3.1 and as he or she may deem necessary, prudent or useful in order to provide for distributions to the Beneficial Owners and the payment of Trust operating expenses and may, with respect to any such account or reserve, restrict the use of money therein for a specified purpose (the "**Trust Subaccounts**"). Any such Trust Subaccounts established by the Trustee shall be held as Trust Assets and are not intended to be subject to separate entity tax treatment as a "disputed claims reserve" or a "disputed ownership fund" within the meaning of the IRC or Treasury Regulations.

3.2    **Investment Guidelines**.

(a)    The Trustee may invest the Trust Assets in accordance with the Investment Guidelines, attached hereto as **Exhibit 3** (the "**Investment Guidelines**").

12

(b)      In the event the Trust holds any non-liquid assets, the Trustee shall own, protect, oversee, and monetize such non-liquid assets in accordance with the Trust Documents.  This Section 3.2(b) is intended to modify the application to the Trust of the "prudent person" rule, "prudent investor" rule and any other rule of law that would require the Trustee to diversify the Trust Assets.

(c)      Cash proceeds received by the Trust in connection with its monetization of the non-liquid Trust Assets shall be invested in accordance with the Investment Guidelines until needed for the purposes of the Trust as set forth in Section 1.2 above.

3.3      **Payment of Operating Expenses**.

All operating expenses of the Trust shall be paid by the Trust solely from Trust Assets. None of the Trustee, Delaware Trustee, the TAC, the Beneficial Owners nor any of their officers, agents, advisors, professionals or employees shall be personally liable for the payment of any operating expense or other liability of the Trust.

3.4      **Payment of PI/WD Claims**.

The Trustee will make distributions to the Beneficial Owners in a fair, consistent and equitable manner in accordance with this Trust Agreement, the TDP, the Plan and the Confirmation Order.  All payments with respect to PI/WD Claims shall be made by the Trust solely out of the Trust Assets.  If the Trustee determines immediately prior to the Dissolution Date, in his or her discretion, that all PI/WD Claims have been paid in full, or that making further payments with respect to PI/WD Claims is not cost-effective with respect to the final amounts to be paid to Beneficial Owners, and that adequate provision has been made for all final obligations of the Trust, the Trustee shall have the authority to direct the remaining Trust Assets to a tax-exempt organization, as selected by the Trustee in his or her discretion.

## ARTICLE IV

## TRUSTEE; DELAWARE TRUSTEE

4.1    **Number**.  In addition to the Delaware Trustee appointed pursuant to Section 4.9, there shall be one (1) Trustee who shall be the person named on the signature pages hereof.

4.2    **Term of Service**.

(a)    The Trustee shall serve from the Effective Date until the earliest of (i) his or her death; (ii) his or her resignation pursuant to Section 4.2(b) below; (iii) his or her removal pursuant to Section 4.2(c) below; or (iv) the termination of the Trust pursuant to Section 6.2 below.

(b)    The Trustee may resign at any time upon written notice to the TAC with such notice filed with the Bankruptcy Court. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)    The Trustee may be removed by the unanimous consent of the TAC in the event the Trustee becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence or for other good cause, provided the Trustee has received reasonable notice and an opportunity to be heard. Other good cause shall mean fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony in each case whether or not connected to the Trust, or a consistent pattern of neglect and failure to perform or participate in performing the duties of Trustee hereunder.  For the avoidance of doubt, any removal of a Trustee by the TAC pursuant to this Section 4.2(c) shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

14

(d)     In the event of any vacancy in the office of the Trustee, including the death, resignation or removal of any Trustee, such vacancy shall be filled by the unanimous consent of the TAC, subject to the approval of the Bankruptcy Court. In the event the TAC cannot agree on a successor Trustee, the provisions of Section 6.12 below shall apply.

(e)     Immediately upon the appointment of any successor Trustee pursuant to Section 4.2(d) above, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in and undertaken by the successor Trustee without any further act.  No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee.  No predecessor Trustee shall be liable personally for any act or omission of his or her successor Trustee.  No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

(f)     Each successor Trustee shall serve until the earliest of (i) his or her death; (ii) his or her resignation pursuant to Section 4.2(b) above; (iii) his or her removal pursuant to Section 4.2(c) above; and (iv) the termination of the Trust pursuant to Section 6.2 below.

4.3     **Compensation and Expenses of the Trustee**.

(a)     The Trustee shall receive compensation for his or her services as Trustee on matters related to the operation of the Trust in the amount of [*].  The compensation payable to the Trustee hereunder shall be reviewed every year by the TAC and may be appropriately adjusted for changes in the cost of living.

(b)     The Trust will promptly reimburse the Trustee for all reasonable and documented out-of-pocket costs and expenses incurred by the Trustee in connection with the performance of his or her duties hereunder.

(c)     The Trust shall include in the Annual Report a description of the amounts paid under this Section 4.3.

4.4     **Standard of Care; Exculpation**.

(a)     As used herein, the term "**Trust Indemnified Party**" shall mean each of (i) the Trustee; (ii) the Delaware Trustee; (iii) the TAC and its members; and (iv) the officers, employees, consultants, advisors, and agents of each of the Trust, the Trustee, and the TAC.

(b)     To the maximum extent permitted by applicable law, the Trust Indemnified Parties shall not have or incur any liability for actions taken or omitted in their capacities as Trust Indemnified Parties, or on behalf of the Trust, except those acts found by a final order of a court of competent jurisdiction (in each instance, a "**Final Order**") to be arising out of their willful misconduct, bad faith or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of their actions or inactions in their capacity as Trust Indemnified Parties, or on behalf of the Trust, and for any other liabilities, losses, damages, claims, costs and expenses arising out of or due to the implementation or administration of the Plan or the Trust Agreement (other than taxes in the nature of income taxes imposed on compensation paid to such persons), in each case except for any actions or inactions found by Final Order to be arising out of their willful misconduct, bad faith or fraud.  Any valid indemnification claim of any of the Trust Indemnified Parties shall be satisfied from the Trust.

(c)     To the extent that, at law or in equity, the Trust Indemnified Parties have duties (including fiduciary duties) or liability related thereto, to the Trust or the Beneficial Owners, it is hereby understood and agreed by the Parties that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly set

16

forth in this Trust Agreement with respect to the Trust Indemnified Parties; provided, however, that with respect to the Trust Indemnified Parties other than the Delaware Trustee the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to this Section 4.4 and its subparts.

(d)    The Trust may maintain appropriate insurance coverage for the protection of the Trust Indemnified Parties, as determined by the Trustee in his or her discretion.

4.5    **Protective Provisions**.

(a)    Every provision of this Trust Agreement relating to the conduct or affecting the liability of or affording protection to Trust Indemnified Parties shall be subject to the provisions of this Section 4.5.

(b)    In the event the Trustee retains counsel (including at the expense of the Trust), the Trustee shall be afforded the benefit of the attorney-client privilege with respect to all communications with such counsel, and in no event shall the Trustee be deemed to have waived any right or privilege including, without limitation, the attorney-client privilege even if the communications with counsel had the effect of guiding the Trustee in the performance of duties hereunder.  A successor Trustee shall succeed to and hold the same respective rights and benefits of the predecessor for purposes of privilege, including the attorney-client privilege.  No Party or other person may raise any exception to the attorney-client privilege described herein as any such exceptions are hereby waived by all Parties.

(c)    No Trust Indemnified Party shall be personally liable under any circumstances, except for his or her own willful misconduct, bad faith or fraud as determined by a Final Order.

(d)    No provision of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own personal funds or otherwise incur financial liability in the performance of their rights, duties and powers hereunder.

(e)    In the exercise or administration of the Trust hereunder, the Trust Indemnified Parties:

(i)    may act directly or through their respective agents or attorneys pursuant to agreements entered into with any of them, and shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys have been selected by the Trust Indemnified Parties in good faith and with due care; and

(ii)    may consult with counsel, accountants and other professionals to be selected by them in good faith and with due care and employed by them, and shall not be liable for anything done, suffered or omitted in good faith by them in accordance with the advice or opinion of any such counsel, accountants or other professionals.

4.6    **Indemnification**.

(a)    To the maximum extent permitted by applicable law, the Trust Indemnified Parties shall be entitled to indemnification and reimbursement for reasonable fees and expenses (including attorneys' fees and costs but excluding taxes in the nature of income taxes imposed on compensation paid to the Trust Indemnified Parties) in defending any and all of their actions or inactions in their capacity as Trust Indemnified Parties, or on behalf of the Trust, and for any other liabilities, losses, damages, claims, costs and expenses arising out of or due to the implementation or administration of the Plan or the Trust Agreement (other than taxes in the nature of income taxes imposed on compensation paid to such persons), in each case, except for any actions or inactions found by Final Order to be arising out of their willful misconduct, bad

18

faith or fraud.  Any valid indemnification claim of any of the Trust Indemnified Parties shall be satisfied from the Trust.

(b)        Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trust Indemnified Parties in connection with any action, suit or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the Trust shall be paid by the Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trust Indemnified Parties, to repay such amount in the event that it shall be determined ultimately by Final Order that the Trust Indemnified Parties or any other potential indemnitee are not entitled to be indemnified by the Trust.

(c)        The Trustee is authorized, but not required, to purchase and maintain appropriate amounts and types of insurance on behalf of the Trust Indemnified Parties, as determined by the Trustee, which may include insurance with respect to liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trust Indemnified Party, and/or as an employee, agent, lawyer, advisor or consultant of any such person.

(d)        The indemnification provisions of this Trust Agreement with respect to any Trust Indemnified Party shall survive the termination of such Trust Indemnified Party from the capacity for which such Trust Indemnified Party is indemnified.  Modification of this Trust Agreement shall not affect any indemnification rights or obligations in existence at such time.  In making a determination with respect to entitlement to indemnification of any Trust Indemnified Party hereunder, the person, persons or entity making such determination shall presume that such Trust Indemnified Party is entitled to indemnification under this Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome the presumption.

19

(e)    The rights to indemnification hereunder are not exclusive of other rights which any Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.

4.7    **Trustee Independence**.  The Trustee shall not act as an attorney, agent, or other professional for any person who holds a PI/WD Claim.  For the avoidance of doubt, this Section 4.7 shall not be applicable to the Delaware Trustee.

4.8    **No Bond**.  Neither the Trustee nor the Delaware Trustee shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

4.9    **Delaware Trustee**.

(a)    There shall at all times be a Delaware Trustee to serve in accordance with the requirements of the Act.  The Delaware Trustee shall either be (i) a natural person who is at least twenty-one (21) years of age and a resident of the State of Delaware; or (ii) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law to be eligible to serve as the Delaware Trustee, and shall act through one or more persons authorized to bind such entity.  If at any time the Delaware Trustee shall cease to be eligible to serve as Delaware Trustee in accordance with the provisions of this Section 4.9, it shall resign immediately in the manner and with the effect hereinafter specified in Section 4.9(c) below.  For the avoidance of doubt, the Delaware Trustee will only have such rights, duties and obligations as expressly provided by reference to the Delaware Trustee hereunder.  The Trustee shall have no liability for the acts or omissions of any Delaware Trustee.

(b)    The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities of the Trustee set forth herein.  The Delaware Trustee shall be a trustee of the Trust for the sole and limited purpose of fulfilling the

requirements of section 3807(a) of the Act and for taking such actions as are required to be taken by a Delaware Trustee under the Act.  The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to accepting legal process served on the Trust in the State of Delaware and the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under section 3811 of the Act.  There shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee.  To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating to the Trust or the Beneficial Owners, such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Trust Agreement.  The Delaware Trustee shall have no liability for the acts or omissions of any Trustee.  Any permissive rights of the Delaware Trustee to do things enumerated in this Trust Agreement shall not be construed as a duty and, with respect to any such permissive rights, the Delaware Trustee shall not be answerable for other than its willful misconduct, bad faith or fraud.  The Delaware Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Trust Agreement at the request or direction of the Trustee or any other person pursuant to the provisions of this Trust Agreement unless the Trustee or such other person shall have offered to the Delaware Trustee security or indemnity (satisfactory to the Delaware Trustee in its discretion) against the costs, expenses and liabilities that may be incurred by it in compliance with such request or direction.  The Delaware Trustee shall be entitled to request and receive written instructions from the Trustee and shall have no responsibility or liability for any losses or damages of any nature that may arise from any action taken or not taken by the Delaware Trustee in accordance with the written direction of the Trustee.  The Delaware Trustee may, at the

expense of the Trust, request, rely on and act in accordance with officer's certificates and/or opinions of counsel, and shall incur no liability and shall be fully protected in acting or refraining from acting in accordance with such officer's certificates and opinions of counsel.

(c)     The Delaware Trustee shall serve until such time as either the Trustee removes the Delaware Trustee or the Delaware Trustee resigns, and a successor Delaware Trustee is appointed by the Trustee in accordance with the terms of Section 4.9(d) below.  The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Trustee; provided that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustee in accordance with Section 4.9(d) below; provided further that if any amounts due and owing to the Delaware Trustee hereunder remain unpaid for more than ninety (90) days, the Delaware Trustee shall be entitled to resign immediately by giving written notice to the Trustee.  If the Trustee does not act within such sixty (60) day period, the Delaware Trustee, at the expense of the Trust, may apply to the Court of Chancery of the State of Delaware or any other court of competent jurisdiction for the appointment of a successor Delaware Trustee.

(d)     Upon the resignation or removal of the Delaware Trustee, the Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of section 3807 of the Act.  Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustee, and any fees and expenses due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully

vested with all the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of his or her duties and obligations under this Trust Agreement.  The successor Delaware Trustee shall make any related filings required under the Act, including filing a Certificate of Amendment to the Certificate of Trust of the Trust in accordance with section 3810 of the Act.

(e)     Notwithstanding anything herein to the contrary, any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated or any entity resulting from any merger, conversion or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the Parties hereto.

(f)     The Delaware Trustee shall be entitled to compensation for its services as agreed pursuant to a separate fee agreement between the Trust and the Delaware Trustee, which compensation shall be paid by the Trust.  Such compensation is intended for the Delaware Trustee's services as contemplated by this Trust Agreement.  The terms of this paragraph shall survive termination of this Trust Agreement and/or the earlier resignation or removal of the Delaware Trustee.

(g)     The Delaware Trustee shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document, other than this Trust Agreement, whether or not, an original or a copy of such agreement has been provided to the Delaware Trustee.  The Delaware Trustee shall have no duty to know or inquire as to the performance or non-performance of any provision of any other agreement, instrument or

document, other than this Trust Agreement.  Neither the Delaware Trustee nor any of its directors, officers, employees, agents or affiliates shall be responsible for nor have any duty to monitor the performance or any action of the Trust, the Trustee or any other person, or any of their directors, members, officers, agents, affiliates or employee, nor shall it have any liability in connection with the malfeasance or nonfeasance by such party.  The Delaware Trustee may assume performance by all such persons of their respective obligations.  The Delaware Trustee shall have no enforcement or notification obligations relating to breaches of representations or warranties of any other person.  The Delaware Trustee shall have no responsibilities (except as expressly set forth herein) as to the validity, sufficiency, value, genuineness, ownership or transferability of any Trust Asset, written instructions, or any other documents in connection therewith, and will not be regarded as making, nor be required to make, any representations thereto.

(h)    The Delaware Trustee shall not be responsible or liable for any failure or delay in the performance of its obligations under this Trust Agreement arising out of, or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority; acts of God; earthquakes; fires; floods; wars; terrorism; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.

## ARTICLE V

## TRUST ADVISORY COMMITTEE

5.1    **Members**.  The TAC shall consist of eleven (11) members.  To the extent that a member of the TAC elects to resign from the TAC in accordance with Section 5.3(b) below or is removed pursuant to Section 5.3(c) below, a successor shall be appointed pursuant to Section 5.4(a).

5.2    **Duties**.  The members of the TAC shall serve in a fiduciary capacity, representing the interests of all holders of PI/WD Claims.  The TAC shall have no fiduciary obligations or duties to any party other than the holders of PI/WD Claims.  The Trustee must obtain the consent of the TAC on matters identified in Section 2.2(e) above.  Where provided in the TDP, certain other actions by the Trustee are also subject to the consent of the TAC.  Except for the duties and obligations expressed in this Trust Agreement and the TDP, there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the TAC. To the extent that, at law or in equity, the TAC has duties (including fiduciary duties) and liabilities relating thereto to the Trust, the other Parties hereto or any Beneficial Owner of the Trust, it is hereby understood and agreed by the other Parties hereto that such duties and liabilities are replaced by the duties and liabilities of the TAC expressly set forth in the Trust Documents.

5.3    **Term of Office**.

(a)    Each member of the TAC shall serve until the earlier of (i) his or her death; (ii) his or her resignation pursuant to Section 5.3(b) below; (iii) his or her removal pursuant to Section 5.3(c) below; or (iv) the termination of the Trust pursuant to Section 6.2 below.

(b)     A member of the TAC may resign at any time by written notice to the other member of the TAC and the Trustee.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than thirty (30) days after the date such notice is given, where practicable.

(c)     A member of the TAC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause.  Such removal may be made by the vote of the majority of the remaining members of the TAC with the approval of the Trustee.

5.4    **Appointment of Successors**.

(a)     If a member of the TAC dies or resigns pursuant to Section 5.3(b) above, or is removed pursuant to Section 5.3(c) above, the vacancy shall be filled with an individual selected by a vote of the majority of the remaining TAC members with the approval of the Trustee, provided, however, that if the majority of the remaining TAC members and the Trustee cannot agree on the successor the matter shall be resolved pursuant to Section 6.12 below.

(b)     Each successor TAC member shall serve until the earlier of (i) his or her death; (ii) his or her resignation pursuant to Section 5.3(b) above; (iii) his or her removal pursuant to Section 5.3(c) above; or (iv) the termination of the Trust pursuant to Section 6.2 below.

(c)     No successor TAC member shall be liable personally for any act or omission of his or her predecessor TAC member.  No successor TAC member shall have any duty to investigate the acts or omissions of his or her predecessor TAC member.

26

5.5    **Compensation and Expenses of the TAC**.  The members of the TAC shall not receive compensation from the Trust for their services as TAC members but shall be reimbursed for all reasonable out-of-pocket costs or expenses incurred in connection with the performance of such member's duties hereunder.  A description of the amounts paid under this Section 5.5 shall be included in the Annual Report.

5.6    **No Bond**.  The members of the TAC shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

5.7    **Procedures for Obtaining Consent of the TAC**.

(a)    Where the Trustee is required to obtain the consent of the TAC pursuant to Section 2.2(e) above, the TDP or otherwise, the Trustee shall provide the TAC with a written notice stating that its consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons why the Trustee desires to take such action.  The Trustee shall provide the TAC as much relevant information concerning the proposed action as is reasonably practicable under the circumstances. The Trustee shall also provide the TAC with reasonable access to the professionals or experts retained by the Trust and its staff (if any) as the TAC may reasonably request during the time that the Trustee is considering such action, and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

(b)    The TAC must consider in good faith and in a timely fashion any request for its consent by the Trustee and must in any event advise the Trustee in writing of its consent or objection to the proposed action within five (5) business days of receiving the original request for consent from the Trustee.  The TAC may not withhold its consent unreasonably.  If the TAC

27

decides to withhold consent, it must explain in detail its objections to the proposed action.  If the TAC does not advise the Trustee in writing of its consent or objections to the proposed action within five (5) days of receiving notice regarding such request, then consent of the TAC to the proposed action shall be deemed to have been affirmatively granted.

(c)     If, after following the procedures specified in this Section 5.7, the TAC continues to object to the proposed action and to withhold its consent to the proposed action, the Trustee and the TAC shall resolve their dispute pursuant to Section 6.12.  The TAC shall bear the burden of proving that it reasonably withheld its consent.  If the TAC meets that burden, the Trust shall then bear the burden of showing why it should be permitted to take the proposed action notwithstanding the TAC's reasonable objection.

(d)     Action by the TAC shall require the affirmative vote of the majority of the TAC members then in office, except where the Trust Documents expressly require the unanimous consent of the TAC.

## ARTICLE VI

## GENERAL PROVISIONS

6.1     **Irrevocability**.  To the fullest extent permitted by applicable law, the Trust is irrevocable.

6.2     **Term; Termination**.

(a)     The term for which the Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the provisions of this Section 6.2.

(b)     The Trust shall automatically dissolve as soon as practicable but no later than ninety (90) days after the date on which the Bankruptcy Court approves the dissolution upon the satisfaction of the purposes of the Trust, wherein (i) all reasonably expected assets have been

collected; (ii) all payments with respect to PI/WD Claims under Section 3.4 above have been made; (iii) necessary arrangements and reserves have been made to discharge all anticipated remaining obligations and operating expenses in a manner consistent with Trust Documents; and (iv) a final accounting has been filed and approved by the Bankruptcy Court (the "**Dissolution Date**").

(c)     On the Dissolution Date or as soon as reasonably practicable thereafter, after the wind-up of the affairs of the Trust by the Trustee and payment of all of the Trust's liabilities have been provided for as required by applicable law including section 3808 of the Act, all monies remaining in the Trust shall be distributed or disbursed in accordance with Section 3.4.

(d)     Following the dissolution and distribution of the assets of the Trust, the Trust shall terminate, and the Trustee shall execute and cause a Certificate of Cancellation of the Certificate of Trust of the Trust to be filed in accordance with the Act.   Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.  A certified copy of the Certificate of Cancellation shall be given to the Delaware Trustee for its records promptly following such filing.

6.3     **Amendments**.  Any amendment to or modification of this Trust Agreement must be made in writing.  The Trustee may amend this Trust Agreement with the unanimous consent of the TAC from time to time, without the consent, approval or other authorization of but with notice to the Bankruptcy Court, to make:  (i) minor modifications or clarifying amendments necessary to enable the Trustee to effectuate the provisions of this Trust Agreement including Exhibits hereto; (ii) amendments to the TDP or any TDP Supplements; or (iii) modifications to satisfy any requirements, conditions or guidelines contained in any opinion, directive, order,

statute, ruling or regulation of any federal, state or other applicable governmental entity. Notwithstanding the foregoing, the TDP or any TDP Supplement may be amended in writing by the Trustee with the unanimous consent of the TAC without an order of the Bankruptcy Court, provided, however, the amended TDP or TDP Supplement shall be filed with the Bankruptcy Court within thirty (30) days following the effective date of such amended TDP or TDP Supplement.  Notwithstanding the foregoing, (i) no amendment or modification of this Trust Agreement shall modify this Trust Agreement in a manner that is inconsistent with the Plan or the Confirmation Order without the approval of the Bankruptcy Court, other than to make minor modifications or clarifying amendments as necessary to enable the Trustee to effectuate the provisions of this Trust Agreement; (ii) neither this Trust Agreement, the TDP, any TDP Supplement, nor any other Exhibit to this Trust Agreement or the TDP shall be modified or amended in any way that could jeopardize, impair, or modify the Trust's Qualified Settlement Fund status under the QSF Regulations; and (iii) any amendment or modification of this Trust Agreement, or Exhibit hereto, or the TDP, or schedule thereto, affecting the rights, duties, immunities or liabilities of the Delaware Trustee shall require the Delaware Trustee's written consent. **<u>Severability</u>**.  Should any provision in this Trust Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement.

6.5    **<u>Notices</u>**.

(a)    Notices to persons asserting PI/WD Claims shall be given in accordance with such person's claims form submitted to the Trust with respect to his, her or its PI/WD Claim.

(b)    Any notices or other communications required or permitted hereunder to the following Parties shall be in writing and delivered to the addresses or e-mail addresses

designated below, or to such other addresses or e-mail addresses as may hereafter be furnished in writing to each of the other Parties listed below in compliance with the terms hereof.

To the Trust:

[_____]

With a copy to:

[_____]

To the Delaware Trustee;

[_____]

With a copy to:

[_____]

To the TAC:

[_____]

[_____]

[_____]

With a copy to:

[_____]

[_____]

[_____]

(c)     All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses.

6.6     **Successors and Assigns**.   The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Trust, the TAC, the Trustee, and their respective

successors and assigns, except that neither the Trust, the TAC, nor the Trustee, may assign or otherwise transfer any of their rights or obligations, if any, under this Trust Agreement except in the case of the Trustee in accordance with Section 4.2(a) above, and in the case of the TAC members in accordance with Section 5.4(b) above.

6.7    **Limitation on PI/WD Claims Interests for Securities Laws Purposes**.  PI/WD Claims, and any interests therein, shall not:  (a) be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will, under the laws of descent and distribution or otherwise by operation of law; (b) be evidenced by a certificate or other instrument; (c) possess any voting rights; and (d) be entitled to receive any dividends or interest.

6.8    **Exemption from Registration**.  The Parties hereto intend that the interests of the Beneficial Owners under this Trust Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws.  If it should be determined that any such interests constitute "securities," the Parties hereto intend that the exemption provisions of section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of the beneficial interests in the Trust will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

6.9    **Entire Agreement; No Waiver**.  The entire agreement of the Parties relating to the subject matter of this Trust Agreement is contained herein (including the TDP), and in the documents referred to herein (including the Plan), and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof.  No failure

to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof or of any other right, power, or privilege.  The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

6.10  **Headings**.   The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

6.11  **Governing Law**.  The validity and construction of this Trust Agreement and all amendments hereto and thereto shall be governed by the laws of the State of Delaware, and the rights of all Parties hereto and the effect of every provision hereof shall be subject to and construed according to the laws of the State of Delaware without regard to the conflicts of law provisions thereof that would purport to apply the law of any other jurisdiction; provided, however, that the Parties hereto intend that the provisions hereof shall control and there shall not be applicable to the Trust, the Trustee, the Delaware Trustee, the TAC, or this Trust Agreement, any provision of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to or regulate in a manner inconsistent with the terms hereof:  (a) the filing with any court or governmental body or agency of Trustee accounts or schedules of Trustee fees and charges; (b) affirmative requirements to post bonds for the Trustee, officers, agents, or employees of a trust; (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property; (d) fees or other sums payable to the Trustee, officers, agents, or employees of a trust; (e) the allocation of receipts and expenditures to income or principal; (f) restrictions or limitations on the permissible nature, amount, or concentration of trust investments or requirements relating to the titling, storage, or

other manner of holding of trust assets; (g) the existence of rights or interests (beneficial or otherwise) in trust assets; (h) the ability of beneficial owners or other persons to terminate or dissolve a trust; or (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of the Trustee or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee, the Delaware Trustee, or the TAC, set forth or referenced in this Trust Agreement. section 3540 of the Act shall not apply to the Trust.

6.12    **Dispute Resolution**.  Unless otherwise expressly provided for herein, the dispute resolution procedures of this Section 6.12 shall be the exclusive mechanism to resolve any dispute arising under or with respect to this Trust Agreement. For the avoidance of doubt, this Section 6.12 shall not apply to any dispute with respect to the resolution of PI/WD Claims which shall be governed exclusively by the TDP.

(a)    **Informal Dispute Resolution**.  Any dispute under this Trust Agreement shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when a disputing party sends to the counterparty or counterparties a written notice of dispute ("**Notice of Dispute**").  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed thirty (30) days from the date the Notice of Dispute is received by the counterparty or counterparties, unless that period is modified by written agreement of the disputing party and counterparty or counterparties.  If the disputing party and the counterparty or counterparties cannot resolve the dispute by informal negotiations, then the disputing party may invoke the formal dispute resolution procedures as set forth below.

(b)    **Formal Dispute Resolution**.  The disputing party shall invoke formal dispute resolution procedures, within the time period provided in the preceding subparagraph, by serving

on the counterparty or counterparties a written statement of position regarding the matter in dispute ("**Statement of Position**").  The Statement of Position shall include, but need not be limited to, any factual data, analysis or opinion supporting the disputing party's position, and any supporting documentation and legal authorities relied upon by the disputing party.  Each counterparty shall serve its Statement of Position within thirty (30) days of receipt of the disputing party's Statement of Position, which shall also include, but need not be limited to, any factual data, analysis or opinion supporting the counterparty's position, and any supporting documentation and legal authorities relied upon by the counterparty.  If the disputing party and the counterparty or counterparties are unable to consensually resolve the dispute within thirty (30) days after the last of all counterparties have served its Statement of Position on the disputing party, the disputing party may file with the Bankruptcy Court a motion for judicial review of the dispute in accordance with Section 6.12(d).

(c) **Judicial Review**.  The disputing party may seek judicial review of the dispute by filing with the Bankruptcy Court (or, if the Bankruptcy Court shall not have jurisdiction over such dispute, such court as has jurisdiction pursuant to Section 1.5 above) and serving on the counterparty or counterparties and the Trustee, a motion requesting judicial resolution of the dispute.  The motion must be filed within forty-five (45) days of receipt of the last counterparty's Statement of Position pursuant to the preceding subparagraph.  The motion shall contain a written statement of the disputing party's position on the matter in dispute, including any supporting factual data, analysis, opinion, documentation and legal authorities, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly administration of the Trust.  Each counterparty shall respond to the motion within the time

period allowed by the rules of the court, and the disputing party may file a reply memorandum, to the extent permitted by the rules of the court.

6.13    **Effectiveness**.    This Trust Agreement shall become effective on the Effective Date.

6.14    **Counterpart Signatures**.    This Trust Agreement may be executed in any number of counterparts and by different Parties on separate counterparts (including by PDF transmitted by e-mail), and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties have executed this Trust Agreement this _____ day of _____, 2025.


**TRUSTEE**                                      **DELAWARE TRUSTEE**
**Ellen K. Reisman**                             **[_____]**

_____         By:_____
                                            Name:
                                            Title:


**TRUST ADVISORY COMMITTEE**

**N. Kirkland Pope**                             **C. Calvin Warriner**

_____         _____

**Ellen Relkin**                                 **Joseph H. Saunders**

_____         _____

**Rayna E. Kessler**                             **Kevin N. Fitzgerald**

_____         _____

**Jason S. Goldstein**                           **David Harman**

_____         _____

**David Landever**                               **Ashleigh Raso**

_____         _____

**George Williamson**

_____

## EXHIBIT 1

**TRUST DISTRIBUTION PROCEDURES**

**<u>EXHIBIT 2</u>**

**CERTIFICATE OF TRUST**

## EXHIBIT 3

### INVESTMENT GUIDELINES

**In General**.  Only the following investments will be permitted:

(i)      Demand and time deposits, such as certificates of deposit, in banks or other savings institutions whose deposits are federally insured;

(ii)      U.S. Treasury bills, bonds, and notes, including, but not limited to, long-term U.S. Treasury bills, bonds, notes, and other Government Securities as defined under Section 2(a)(16) of the Investment Company Act of 1940, 15 U.S.C. § 80a-2(a)(16), including, but not limited to, Fannie Mae, Freddie Mac, Federal Home Loan Bank, and Federal Farm Credit;

(iii)      Repurchase agreements for U.S. Treasury bills, bonds, and notes;

(iv)      AA or AAA corporate bonds (with the rating awarded by at least two of the three major rating agencies (Standard & Poor's, Moody's, or Fitch)); or

(v)      Open-ended mutual funds owning only assets described in subparts (i) through (iv) of this subsection.

The value of bonds of any single company and its affiliates owned by the Trust directly rather than through a mutual fund shall not exceed 10% of the investment portfolio at time of purchase; this restriction does not apply to any of the following:  Repurchase Agreements; Money Market Funds; U.S. Treasuries; and U.S. Government Agencies.

Any such investments shall be made consistently with the Uniform Prudent Investor Act. The determination of the rating of any investments shall be made by the Trust's financial advisor on the date of acquisition of any such investment or on the date of re-investment.  The Trust's financial advisor shall reconfirm that all investments of Trust Assets still meet the original rating requirement on a quarterly basis.  If the Trust's financial advisors determine that any particular investment no longer meets the rating requirement, there shall be a substitution of that investment with an investment that meets the ratings requirement as promptly as practicable, but in no event later than the next reporting period. Previously purchased securities downgraded below AA may be held for a reasonable and prudent period of time if the Trust's financial advisor believes it is in the interest of the Trust to do so.

The borrowing of funds or securities for the purpose of leveraging, shorting, or other investments is prohibited; provided this limitation shall not alter or impair in any respect the power granted to the Trustee under Section 2.1 of the Trust Agreement.  Investment in non-U.S. dollar denominated bonds is prohibited.  The standing default investment instruction for all cash in any account or subaccount that holds any Trust Assets in cash shall be invested in the [BlackRock Fed Fund (CUSIP 09248U809)].

See example fund-level requirements table on following page.

**Fund Level Requirements**

1. OTC Derivatives Counterparty Exposure – Not allowed
2. Non-U.S. dollar denominated bonds – Not allowed

| TYPE OF INVESTMENT | ELIGIBLE | PROHIBITED | COMMENTS |
|---|---|---|---|
| | | | |
| U.S. Treasury Securities | X | | |
| U.S. Agency Securities | X | | |
| Mortgage-Related Securities | | X | |
| Asset-Backed Securities | | X | |
| Corporate Securities (public) | X | | |
| Municipal bonds | X | | |
| | | | |
| **DERIVATIVES:** | No investment, including futures, options and other derivatives, may be purchased if its return is directly or indirectly determined by an investment prohibited elsewhere in these guidelines. | | |
| Futures | | X | |
| Options | | X | |
| Currency Forwards | | X | |
| Currency Futures | | X | |
| Currency Options | | X | |
| Currency Swaps | | X | |
| Interest Rate Swaps | | X | |
| Total Return Swaps | | X | |
| Structured Notes | | X | |
| Collateralized Debt Obligations | | X | |
| Credit Default Swaps | | X | |
| Mortgage-Related Derivatives | | X | |
| | | | |
| **FOREIGN / NON-U.S. DOLLAR:** | | | |
| Foreign CDs | | X | |
| Foreign U.S. Dollar Denominated Securities | | X | |
| Non-U.S. Dollar Denominated Bonds | | X | |
| Supranational U.S. Dollar Denominated Securities | | X | |
| | | | |
| **COMMINGLED VEHICLES (except STIF):** | | | |
| Collective Funds | | X | |
| Commingled Trust Funds (open ended mutual funds only) | | X | |
| Common Trust Funds | | X | |
| Registered Investment Companies | | X | |
| | | | |
| **MONEY MARKET SECURITIES:** | | | |
| Qualified STIF | | X | |
| Interest Bearing Bank Obligations Insured by a Federal or State Agency | X | | |
| Commercial Paper | | X | |
| Master Note Agreements and Demand Notes | | X | |
| Repurchase Agreements | | X | |
| | | | |
| **OTHER:** | | | |
| Bank Loans | | X | |
| Convertibles (e.g., Lyons) | | X | |
| Municipal Bonds | X | | |
| Preferred Stock | | X | |
| Private Placements (excluding 144A) | X | | |
| Rule 144A Issues | X | | |
| Zero Coupon Bonds | X | | |
| Commodities | | X | |
| Catastrophe Bonds | | X | |

## EXHIBIT 4

**Settlement Trust Agreement Blackline**

**EXACTECH SETTLEMENT TRUST AGREEMENT**

**DATED AS OF [ ], 2025**

**PURSUANT TO THE FIFTH AMENDED JOINT CHAPTER 11**

**PLAN OF EXACTECH, INC. AND ITS DEBTOR AFFILIATES**

**PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

# TABLE OF CONTENTS

**Page**

ARTICLE I AGREEMENT OF TRUST .......................................................................... 2

    1.1        Creation and Name ................................................................... 2

    1.2        Purposes ................................................................................. ~~2~~3

    1.3        Transfer of Assets .................................................................. 3

    1.4        Acceptance of Assets and Assumption of Liabilities ................ ~~3~~4

    1.5        Jurisdiction ............................................................................ ~~4~~5

ARTICLE II POWERS AND TRUST ADMINISTRATION ..................................... ~~4~~5

    2.1        Powers .................................................................................. ~~4~~5

    2.2        General Administration .......................................................... 8

    2.3        Medicare Reporting Obligations ............................................ ~~10~~11

ARTICLE III ACCOUNTS, INVESTMENTS, AND PAYMENTS ............................ 11

    3.1        Accounts. ............................................................................. 11

    3.2        Investment Guidelines. .......................................................... ~~11~~12

    3.3        Payment of Operating Expenses. ............................................ ~~12~~13

    3.4        Payment of PI/WD Claims. .................................................... ~~12~~13

ARTICLE IV TRUSTEE; DELAWARE TRUSTEE .............................................. 13

    4.1        Number. ................................................................................ 13

    4.2        Term of Service. ................................................................... 13

    4.3        Compensation and Expenses of the Trustee. .......................... ~~14~~15

    4.4        Standard of Care; Exculpation. .............................................. ~~14~~15

    4.5        Protective Provisions. ............................................................ ~~16~~17

    4.6        Indemnification. .................................................................... ~~17~~18

    4.7        Trustee Independence. ........................................................... ~~18~~19

    4.8        No Bond. ............................................................................... ~~18~~20

    4.9        Delaware Trustee. ................................................................. ~~19~~20

ARTICLE V TRUST ADVISORY COMMITTEE ................................................. ~~23~~24

i

| 5.1 | Members. | ~~23~~24 |
| 5.2 | Duties. | ~~23~~24 |
| 5.3 | Term of Office. | ~~24~~25 |
| 5.4 | Appointment of Successors. | ~~24~~26 |
| 5.5 | Compensation and Expenses of the TAC. | ~~25~~26 |
| 5.6 | No Bond. | ~~25~~26 |
| 5.7 | Procedures for Obtaining Consent of the TAC. | ~~25~~26 |

ARTICLE VI GENERAL PROVISIONS ~~27~~28

| 6.1 | Irrevocability. | ~~27~~28 |
| 6.2 | Term; Termination. | ~~27~~28 |
| 6.3 | Amendments. | ~~28~~29 |
| 6.4 | Severability. | ~~29~~30 |
| 6.5 | Notices. | ~~29~~30 |
| 6.6 | Successors and Assigns. | ~~30~~31 |
| 6.7 | Limitation on PI/WD Claims Interests for Securities Laws Purposes. | ~~30~~31 |
| 6.8 | Exemption from Registration. | ~~30~~32 |
| 6.9 | Entire Agreement; No Waiver. | ~~31~~32 |
| 6.10 | Headings. | ~~31~~32 |
| 6.11 | Governing Law. | ~~31~~32 |
| 6.12 | Dispute Resolution. | ~~32~~33 |
| 6.13 | Effectiveness. | ~~34~~35 |
| 6.14 | Counterpart Signatures. | ~~34~~35 |

EXHIBIT 1  TRUST DISTRIBUTION PROCEDURES ........................ 1

EXHIBIT 2  CERTIFICATE OF TRUST ........................ 1

EXHIBIT 3 INVESTMENT GUIDELINES ........................ 1

# EXACTECH SETTLEMENT TRUST AGREEMENT

This Exactech Settlement Trust Agreement (this "**Trust Agreement**"), dated the date set forth on the signature page hereof and effective as of the Effective Date, is entered into pursuant to the *Fifth Amended Joint Chapter 11 Plan of Exactech, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. *] (as may be further amended or modified, the "**Plan**"),[1] in Case No. 24-12441 (LSS) in the United States Bankruptcy Court for the District of Delaware ("**Bankruptcy Court**") by [Wilmington Trust, National Association] (the "**Delaware Trustee**"), the Settlement Trustee identified on the signature pages hereof (the "**Trustee**"), and the members of the Trust Advisory Committee identified on the signature pages hereof (the "**TAC**" and, together with the Delaware Trustee and the Trustee, the "**Parties**").[2]

## RECITALS

**WHEREAS**, the Plan contemplates the creation of the Settlement Trust (as provided for and referred to in the Plan as the Settlement Trust) (the "**Trust**");

**WHEREAS**, the Confirmation Order has been entered by the Bankruptcy Court;

**WHEREAS**, pursuant to the Plan, the Trust is established to carry out the provisions of the Plan relating to the Trust, including commencing, prosecuting, and settling the Settlement Trust Causes of Action;

---

[1] All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference.  All capitalized terms not defined herein or in the Plan, but defined in the Bankruptcy Code or Bankruptcy Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Bankruptcy Rules, and such definitions are incorporated herein by reference.

[2] The initial Trustee shall be [*]Ellen K. Reisman.  The initial members of the TAC shall be [*, *, *, *, *, * and *]Ellen Relkin, N. Kirkland Pope, Rayna E. Kessler, Jason S. Goldstein, Kevin M. Fitzgerald, C. Calvin Warriner, Joseph H. Saunders, David Harman, David Landever, Ashleigh Raso, and George Williamson.

**WHEREAS**, pursuant to the Plan, the Trust is also established to liquidate Direct PI/WD Claims and Indirect PI/WD Claims (the "**PI/WD Claims**") and administer distributions to Holders of PI/WD Claims in accordance with the Plan, the Confirmation Order and this Trust Agreement;

**WHEREAS**, the Trustee shall administer the Trust in accordance with the terms of the Plan, this Trust Agreement and the Trust Distribution Procedures including (as the same may be amended, modified or supplemented as provided herein, the "**TDP**"), attached hereto as **Exhibit 1**; and

**WHEREAS**, pursuant to the Plan, the Trust is intended to qualify as a "qualified settlement fund" (a "**Qualified Settlement Fund**") within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the Internal Revenue Code ("**IRC**") (the "**QSF Regulations**").

**NOW**, **THEREFORE**, it is hereby agreed as follows:

## ARTICLE I

## AGREEMENT OF TRUST

1.1     **Creation and Name**.  There is hereby created a trust known as the "Exactech Settlement Trust."  The Trustee of the Trust may transact the business and affairs of the Trust in the name of the Trust, and references herein to the Trust shall include the Trustee acting on behalf of the Trust.  It is the intention of the Parties that the Trust constitutes a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del. C. section 3801 *et seq.* (the "Act") and that this Trust Agreement constitute the governing instrument of the Trust.  The Trustee and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as Exhibit 2.

2

1.2    **Purposes**.  The purposes of the Trust are to:

(a)     initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment the Settlement Trust Causes of Action;

(b)    receive the Settlement Trust Assets (the "**Consideration**") pursuant to the terms of the Plan and the Confirmation Order;

(c)    hold, manage, protect and invest the Consideration, together with any income or gain earned thereon and proceeds derived therefrom (collectively, the "**Trust Assets**") in accordance with the terms of the Plan, the Confirmation Order, this Trust Agreement and the TDP (including as each of the foregoing may be amended, modified or supplemented, the "**Trust Documents**") for the benefit of the Beneficial Owners (as defined herein);

(d)    administer, process and resolve PI/WD Claims pursuant to the TDP;

(e)    qualify at all times as a Qualified Settlement Fund within the meaning of QSF Regulations;

(f)    engage in any lawful activity that is appropriate and in furtherance of the purposes of the Trust to the extent consistent with the Trust Documents; and

(g)    make distributions of Trust Assets to eligible holders of Allowed PI/WD Claims in accordance with and subject to the terms of the Trust Documents, including the TDP with the objective of treating all holders of Allowed PI/WD Claims fairly, equitably, and reasonably in light of the Trust Assets available to resolve such PI/WD Claims.

1.3    **Transfer of Assets**.  Pursuant to, and in accordance with Article IV.G of the Plan, the Trust shall receive the Consideration to fund the Trust.  The Consideration and any other assets to be transferred to the Trust under the Plan is and will be transferred to the Trust free and clear of any liens or other claims by the Debtors, any creditor, or other entity.

1.4    **Acceptance of Assets and Assumption of Liabilities**.

(a)    In furtherance of the purposes of the Trust, except as otherwise provided in this Trust Agreement and the TDP, the Trust shall have and retain any and all rights and defenses the Debtors had with respect to any PI/WD Claim immediately before the Effective Date to the extent necessary to administer such PI/WD Claims in accordance with the Trust Documents.

(b)    Notwithstanding anything to the contrary herein, no provision herein or in the TDP shall be construed or implemented in a manner that would cause the Trust to fail to qualify as a Qualified Settlement Fund under the QSF Regulations.

(c)    In this Trust Agreement and the TDP, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

(d)    To the extent required by the Act, the beneficial owners (within the meaning of the Act) of the Trust (the "**Beneficial Owners**") shall be deemed to be the holders of Allowed PI/WD Claims; provided that:

(i)    the holders of Allowed PI/WD Claims, as such Beneficial Owners, shall have only such rights with respect to the Trust and its assets as are set forth in the TDP; and

(ii)    no greater or other rights, including upon dissolution, liquidation, or winding up of the Trust, shall be deemed to apply to the holders of Allowed PI/WD Claims in their capacity as Beneficial Owners.

4

1.5     **Jurisdiction**.  The Bankruptcy Court shall have continuing jurisdiction over the Trust, provided, however, that the courts of the State of Delaware, including any federal court located       therein,       shall       also       have       jurisdiction       over       the       Trust.

**POWERS AND TRUST ADMINISTRATION**

2.1     **Powers**.

(a)     The Trustee is and shall act as a fiduciary to the Trust in accordance with the provisions of the Trust Documents.  The Trustee shall, at all times, administer the Trust in accordance with the purposes set forth in Section 1.2 above.  Subject to the limitations set forth in this Trust Agreement and the Plan, the Trustee shall have the power to take any and all actions that, in the judgment of the Trustee, are necessary or proper to fulfill the purposes of the Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and not inconsistent with the requirements of Section 2.2, and any trust power now or hereafter permitted under applicable laws.

(b)     Except as required by applicable law or as otherwise specified herein or in the Plan or the Confirmation Order, the Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c)     Without limiting the generality of Section 2.1(a) above, and except as limited below or by the Plan, the Trustee shall have the power to:

(i)     receive and hold the Consideration and exercise all rights with respect thereto;

(ii)     commence, prosecute, and settle all Settlement Trust Causes of Action and Insurance Actions, including retaining and compensating legal counsel, experts, and other

professionals to assist the Trust with litigation involving the Settlement Trust Causes of Action and the Insurance Actions;

(iii)    borrow funds or obtain financing from third parties sufficient to commence, prosecute, and settle the Settlement Trust Causes of Action and Insurance Actions and enter into related pledge and security agreements and other loan documents;

(iv)    determine, in consultation with the TAC, that there are or will be sufficient Trust Assets to permit a distribution (a "**Distributable Asset Decision**"), at which time the Trustee may determine to commence claims processing;

(v)    control and manage the Data Records, Privileged Information, and Data Transfers concerning the PI/WD Claims and the Settlement Trust Causes of Action in accordance with the terms and conditions of the Plan and the Cooperation Agreement;

(vi)    following a Distributable Asset Decision, establish, in consultation with the TAC, an Initial Payment Percentage and any Supplemental Payment Percentage(s);

(vii)    following a Distributable Asset Decision, determine, in consultation with the TAC, to allow, alter, adjust or eliminate an option to elect an Expedited Distribution under the TDP;

(viii)    determine, in consultation with the TAC, that there are and will be insufficient Trust Assets to make any distributions on PI/WD Claims under the TDP;

(ix)    invest the monies held from time to time by the Trust in accordance with the Investment Guidelines pursuant to Section 3.2 below;

(x)    establish such funds, reserves, and accounts within the Trust, as the Trustee deems useful in carrying out the purposes of the Trust;

(xi)    participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding, as required to reconcile, administer, or defend against the PI/WD Claims;

(xii)    establish, supervise, and administer the Trust and the TDP, and make distributions to all holders of Allowed PI/WD Claims pursuant to the terms of this Trust Agreement, the Plan and the TDP;

(xiii)    appoint such officers and retain such employees, consultants, advisors, attorneys, independent contractors, experts and agents and engage in such legal, financial, administrative, accounting, investment, auditing, forecasting, and alternative dispute resolution services and activities as the Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this Trust Agreement;

(xiv)    make payment from the Trust Assets for the reasonable compensation to any of the Trust's employees, consultants, advisors, independent contractors, experts, and agents for legal, financial, administrative, accounting, investment, auditing, forecasting, and alternative dispute resolution services and activities as the Trust requires;

(xv)    make payment from the Trust Assets to compensate the Trustee, the Delaware Trustee, and their employees, consultants, advisors, independent contractors, experts and agents, and reimburse the Trustee and the Delaware Trustee for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

(xvi)    record all expenses (including taxes) incurred by the Trust on the books and records (and report on all applicable tax returns) as expenses of the Trust;

7

(xvii)   enter into such other arrangements with third parties as the Trustee deems useful in carrying out the purposes of the Trust, provided such arrangements do not conflict with any other provision of this Trust Agreement or the Plan;

(xviii) in accordance with Section 4.4 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) the Trust Indemnified Parties (as defined in Section 4.4 below), to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to defend, indemnify, hold harmless, and/or insure its directors, trustees, officers, employees, consultants, advisors, agents, and representatives.  No party shall be indemnified in any way for any liability, expense, claim, damage, or loss for which he or she is liable under Section 4.4 below;

(xix)   obtain the consent of the TAC with respect to the matters set forth in Section 2.2(e) below; and

(xx)   exercise any and all other rights, and take any and all other actions as are permitted, of the Trustee in accordance with the terms of this Trust Agreement and the Plan.

(d)      The Trustee shall not have the power to guarantee any debt of other persons.

(e)      The Trustee shall endeavor to make timely distributions and not unduly prolong the duration of the Trust.

2.2      **General Administration**.

(a)      The Trustee shall act in accordance with the Trust Documents and shall implement the TDP in accordance with its terms.  In the event of a conflict between the terms of this Trust Agreement and the TDP, the terms of this Trust Agreement shall control.  In the event of a conflict between the terms or provisions of the (i) Plan, (ii) this Trust Agreement or (iii) the TDP, the terms of the Plan shall have first priority, followed in priority by the Trust Agreement,

and lastly by the TDP.  For the avoidance of doubt, this Trust Agreement shall be construed and implemented in accordance with the Plan, regardless of whether any provision herein explicitly references the Plan.

(b)    The Trustee shall:

(i)    timely file such income tax and other returns and statements required to be filed and shall cause to be paid timely from the Trust Assets all taxes required to be paid by the Trust;

(ii)    comply with all applicable reporting and withholding obligations;

(iii)    satisfy all requirements necessary to qualify and maintain qualification of the Trust as a Qualified Settlement Fund within the meaning of the QSF Regulations;

(iv)    take no action that could cause the Trust to fail to qualify as a Qualified Settlement Fund within the meaning of the QSF Regulations; and

(v)    be treated as the "administrator" of the Trust within the meaning under Section 1.468B-2(k)(3) of the Treasury Regulations.

(c)    The Trustee shall timely account to the Bankruptcy Court as follows:

(i)    The Trustee shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event no later than one hundred and twenty (120) days following the end of each fiscal year, an annual report (the "**Annual Report**") containing special-purpose financial statements of the Trust (including, without limitation, a special-purpose statement of assets, liabilities and net claimants' equity, a special-purpose statement of changes in net claimants' equity and a special-purpose statement of cash flows).  The Trustee shall not be required to obtain an audit of the Annual Report by a firm of independent certified public

accountants.  The Trustee shall provide a copy of such Annual Report to the TAC when such report is filed with the Bankruptcy Court.

(ii)     Simultaneously with the filing of the Annual Report, the Trustee shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of PI/WD Claims resolved during the period covered by the Annual Report (the "**Claims Report**").  The Trustee shall provide a copy of such Claims Report to the TAC when such report is filed with the Bankruptcy Court.

(d)     The Trustee shall consult with the TAC on the matters set forth in Section 2.1(c)(ii), (iii), (iv), (vi) and (vii) and, as the Trustee determines, such other matters that could have a material impact on Trust Assets or the administration of the Trust.

(e)     The Trustee shall be required to obtain the consent of the TAC, pursuant to the consent process set forth in Section 5.7 below:

(i)     to make any amendments to the TDP or adopt, amend or modify any TDP Supplement (as such term is defined in the TDP);

(ii)     to change the forms of Acceptance and Release under the TDP;

(iii)     to commence and/or participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding;

(iv)     to settle any Settlement Trust Causes of Action;

(v)     to borrow funds or obtain financing from third parties sufficient to commence, prosecute, and settle the Settlement Trust Causes of Action and Insurance Actions and enter into related pledge and security agreements and other loan documents;

(vi)     to modify the compensation of the Trustee;

10

(vii)   to acquire an interest in and/or merge with and/or contract with another settlement trust;

(viii)   to effectuate any material amendment of this Trust Agreement, or any amendment of the TDP, which in each case shall be in accordance with Section 6.3; provided that no such amendment shall be in contravention of the Plan.

(f)   The Trustee shall meet with the TAC no less often than quarterly.  The Trustee shall meet in the interim with the TAC when so requested by the TAC.  Meetings may be held in person, by telephone or video conference, or by a combination of the foregoing.

2.3   **Medicare Reporting Obligations**.

(a)   The Trust shall register as a Responsible Reporting Entity ("**RRE**") under the reporting provisions of section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (Pub. L. 110-173) ("**MMSEA**").

(b)   The Trust shall timely submit all reports that are required under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated by the Trust or with respect to contributions to the Trust.  The Trust, in its role as an RRE, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA (collectively, "**CMS**") to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

## ARTICLE III

## ACCOUNTS, INVESTMENTS, AND PAYMENTS

3.1    **Accounts**.

(a)    The Trustee shall maintain one or more accounts (the "**Trust Accounts**") on behalf of the Trust with one or more financial depository institutions (each a "**Financial Institution**").  Candidates for the positions of Financial Institution shall fully disclose to the Trustee any interest in or relationship with the Debtors or their affiliated persons.  Any such interest or relationship shall not be an automatic disqualification for the position, but the Trustee shall take any such interest or relationship into account in selecting a Financial Institution.

(b)    The Trustee may replace any retained Financial Institution with a successor Financial Institution at any time, and such successor shall be subject to the considerations set forth in Section 3.1(a).

(c)    The Trustee may, from time to time, create such accounts and reasonable reserves within the Trust Accounts as authorized in this Section 3.1 and as he or she may deem necessary, prudent or useful in order to provide for distributions to the Beneficial Owners and the payment of Trust operating expenses and may, with respect to any such account or reserve, restrict the use of money therein for a specified purpose (the "**Trust Subaccounts**"). Any such Trust Subaccounts established by the Trustee shall be held as Trust Assets and are not intended to be subject to separate entity tax treatment as a "disputed claims reserve" or a "disputed ownership fund" within the meaning of the IRC or Treasury Regulations.

3.2    **Investment Guidelines**.

(a)    The Trustee may invest the Trust Assets in accordance with the Investment Guidelines, attached hereto as **Exhibit 3** (the "**Investment Guidelines**").

12

(b)     In the event the Trust holds any non-liquid assets, the Trustee shall own, protect, oversee, and monetize such non-liquid assets in accordance with the Trust Documents.  This Section 3.2(b) is intended to modify the application to the Trust of the "prudent person" rule, "prudent investor" rule and any other rule of law that would require the Trustee to diversify the Trust Assets.

(c)     Cash proceeds received by the Trust in connection with its monetization of the non-liquid Trust Assets shall be invested in accordance with the Investment Guidelines until needed for the purposes of the Trust as set forth in Section 1.2 above.

3.3     **Payment of Operating Expenses**.

All operating expenses of the Trust shall be paid by the Trust solely from Trust Assets. None of the Trustee, Delaware Trustee, the TAC, the Beneficial Owners nor any of their officers, agents, advisors, professionals or employees shall be personally liable for the payment of any operating expense or other liability of the Trust.

3.4     **Payment of PI/WD Claims**.

The Trustee will make distributions to the Beneficial Owners in a fair, consistent and equitable manner in accordance with this Trust Agreement, the TDP, the Plan and the Confirmation Order.  All payments with respect to PI/WD Claims shall be made by the Trust solely out of the Trust Assets.  If the Trustee determines immediately prior to the Dissolution Date, in his or her discretion, that all PI/WD Claims have been paid in full, or that making further payments with respect to PI/WD Claims is not cost-effective with respect to the final amounts to be paid to Beneficial Owners, and that adequate provision has been made for all final obligations of the Trust, the Trustee shall have the authority to direct the remaining Trust Assets to a tax-exempt organization, as selected by the Trustee in his or her discretion.

## ARTICLE IV

## TRUSTEE; DELAWARE TRUSTEE

4.1    **Number**.  In addition to the Delaware Trustee appointed pursuant to Section 4.9, there shall be one (1) Trustee who shall be the person named on the signature pages hereof.

4.2    **Term of Service**.

(a)    The Trustee shall serve from the Effective Date until the earliest of (i) his or her death; (ii) his or her resignation pursuant to Section 4.2(b) below; (iii) his or her removal pursuant to Section 4.2(c) below; or (iv) the termination of the Trust pursuant to Section 6.2 below.

(b)    The Trustee may resign at any time upon written notice to the TAC with such notice filed with the Bankruptcy Court. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)    The Trustee may be removed by the unanimous consent of the TAC in the event the Trustee becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence or for other good cause, provided the Trustee has received reasonable notice and an opportunity to be heard. Other good cause shall mean fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony in each case whether or not connected to the Trust, or a consistent pattern of neglect and failure to perform or participate in performing the duties of Trustee hereunder.  For the avoidance of doubt, any removal of a Trustee by the TAC pursuant to this Section 4.2(c) shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

14

(d)    In the event of any vacancy in the office of the Trustee, including the death, resignation or removal of any Trustee, such vacancy shall be filled by the unanimous consent of the TAC, subject to the approval of the Bankruptcy Court. In the event the TAC cannot agree on a successor Trustee, the provisions of Section 6.12 below shall apply.

(e)    Immediately upon the appointment of any successor Trustee pursuant to Section 4.2(d) above, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in and undertaken by the successor Trustee without any further act.  No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee.  No predecessor Trustee shall be liable personally for any act or omission of his or her successor Trustee.  No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

(f)    Each successor Trustee shall serve until the earliest of (i) his or her death; (ii) his or her resignation pursuant to Section 4.2(b) above; (iii) his or her removal pursuant to Section 4.2(c) above; and (iv) the termination of the Trust pursuant to Section 6.2 below.

4.3    **Compensation and Expenses of the Trustee**.

(a)    The Trustee shall receive compensation for his or her services as Trustee on matters related to the operation of the Trust in the amount of [*].  The compensation payable to the Trustee hereunder shall be reviewed every year by the TAC and may be appropriately adjusted for changes in the cost of living.

(b)    The Trust will promptly reimburse the Trustee for all reasonable and documented out-of-pocket costs and expenses incurred by the Trustee in connection with the performance of his or her duties hereunder.

(c)     The Trust shall include in the Annual Report a description of the amounts paid under this Section 4.3.

4.4    **Standard of Care; Exculpation**.

(a)     As used herein, the term "**Trust Indemnified Party**" shall mean each of (i) the Trustee; (ii) the Delaware Trustee; (iii) the TAC and its members; and (iv) the officers, employees, consultants, advisors, and agents of each of the Trust, the Trustee, and the TAC.

(b)     To the maximum extent permitted by applicable law, the Trust Indemnified Parties shall not have or incur any liability for actions taken or omitted in their capacities as Trust Indemnified Parties, or on behalf of the Trust, except those acts found by a final order of a court of competent jurisdiction (in each instance, a "**Final Order**") to be arising out of their willful misconduct, bad faith or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of their actions or inactions in their capacity as Trust Indemnified Parties, or on behalf of the Trust, and for any other liabilities, losses, damages, claims, costs and expenses arising out of or due to the implementation or administration of the Plan or the Trust Agreement (other than taxes in the nature of income taxes imposed on compensation paid to such persons), in each case except for any actions or inactions found by Final Order to be arising out of their willful misconduct, bad faith or fraud.  Any valid indemnification claim of any of the Trust Indemnified Parties shall be satisfied from the Trust.

(c)     To the extent that, at law or in equity, the Trust Indemnified Parties have duties (including fiduciary duties) or liability related thereto, to the Trust or the Beneficial Owners, it is hereby understood and agreed by the Parties that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly set

16

forth in this Trust Agreement with respect to the Trust Indemnified Parties; provided, however, that with respect to the Trust Indemnified Parties other than the Delaware Trustee the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to this Section 4.4 and its subparts.

(d)     The Trust may maintain appropriate insurance coverage for the protection of the Trust Indemnified Parties, as determined by the Trustee in his or her discretion.

4.5     **Protective Provisions**.

(a)     Every provision of this Trust Agreement relating to the conduct or affecting the liability of or affording protection to Trust Indemnified Parties shall be subject to the provisions of this Section 4.5.

(b)     In the event the Trustee retains counsel (including at the expense of the Trust), the Trustee shall be afforded the benefit of the attorney-client privilege with respect to all communications with such counsel, and in no event shall the Trustee be deemed to have waived any right or privilege including, without limitation, the attorney-client privilege even if the communications with counsel had the effect of guiding the Trustee in the performance of duties hereunder.  A successor Trustee shall succeed to and hold the same respective rights and benefits of the predecessor for purposes of privilege, including the attorney-client privilege.  No Party or other person may raise any exception to the attorney-client privilege described herein as any such exceptions are hereby waived by all Parties.

(c)     No Trust Indemnified Party shall be personally liable under any circumstances, except for his or her own willful misconduct, bad faith or fraud as determined by a Final Order.

(d)    No provision of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own personal funds or otherwise incur financial liability in the performance of their rights, duties and powers hereunder.

(e)    In the exercise or administration of the Trust hereunder, the Trust Indemnified Parties:

(i)    may act directly or through their respective agents or attorneys pursuant to agreements entered into with any of them, and shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys have been selected by the Trust Indemnified Parties in good faith and with due care; and

(ii)    may consult with counsel, accountants and other professionals to be selected by them in good faith and with due care and employed by them, and shall not be liable for anything done, suffered or omitted in good faith by them in accordance with the advice or opinion of any such counsel, accountants or other professionals.

4.6    **Indemnification**.

(a)    To the maximum extent permitted by applicable law, the Trust Indemnified Parties shall be entitled to indemnification and reimbursement for reasonable fees and expenses (including attorneys' fees and costs but excluding taxes in the nature of income taxes imposed on compensation paid to the Trust Indemnified Parties) in defending any and all of their actions or inactions in their capacity as Trust Indemnified Parties, or on behalf of the Trust, and for any other liabilities, losses, damages, claims, costs and expenses arising out of or due to the implementation or administration of the Plan or the Trust Agreement (other than taxes in the nature of income taxes imposed on compensation paid to such persons), in each case, except for any actions or inactions found by Final Order to be arising out of their willful misconduct, bad

faith or fraud.  Any valid indemnification claim of any of the Trust Indemnified Parties shall be satisfied from the Trust.

(b)     Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trust Indemnified Parties in connection with any action, suit or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the Trust shall be paid by the Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trust Indemnified Parties, to repay such amount in the event that it shall be determined ultimately by Final Order that the Trust Indemnified Parties or any other potential indemnitee are not entitled to be indemnified by the Trust.

(c)     The Trustee is authorized, but not required, to purchase and maintain appropriate amounts and types of insurance on behalf of the Trust Indemnified Parties, as determined by the Trustee, which may include insurance with respect to liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trust Indemnified Party, and/or as an employee, agent, lawyer, advisor or consultant of any such person.

(d)     The indemnification provisions of this Trust Agreement with respect to any Trust Indemnified Party shall survive the termination of such Trust Indemnified Party from the capacity for which such Trust Indemnified Party is indemnified.  Modification of this Trust Agreement shall not affect any indemnification rights or obligations in existence at such time.  In making a determination with respect to entitlement to indemnification of any Trust Indemnified Party hereunder, the person, persons or entity making such determination shall presume that such Trust Indemnified Party is entitled to indemnification under this Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome the presumption.

19

(e)     The rights to indemnification hereunder are not exclusive of other rights which any Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.

4.7     **Trustee Independence**.  The Trustee shall not act as an attorney, agent, or other professional for any person who holds a PI/WD Claim.  For the avoidance of doubt, this Section 4.7 shall not be applicable to the Delaware Trustee.

4.8     **No Bond**.  Neither the Trustee nor the Delaware Trustee shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

4.9     **Delaware Trustee**.

(a)     There shall at all times be a Delaware Trustee to serve in accordance with the requirements of the Act.  The Delaware Trustee shall either be (i) a natural person who is at least twenty-one (21) years of age and a resident of the State of Delaware; or (ii) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law to be eligible to serve as the Delaware Trustee, and shall act through one or more persons authorized to bind such entity.  If at any time the Delaware Trustee shall cease to be eligible to serve as Delaware Trustee in accordance with the provisions of this Section 4.9, it shall resign immediately in the manner and with the effect hereinafter specified in Section 4.9(c) below.  For the avoidance of doubt, the Delaware Trustee will only have such rights, duties and obligations as expressly provided by reference to the Delaware Trustee hereunder.  The Trustee shall have no liability for the acts or omissions of any Delaware Trustee.

(b)     The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities of the Trustee set forth herein.  The Delaware Trustee shall be a trustee of the Trust for the sole and limited purpose of fulfilling the

requirements of section 3807(a) of the Act and for taking such actions as are required to be taken by a Delaware Trustee under the Act.  The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to accepting legal process served on the Trust in the State of Delaware and the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under section 3811 of the Act.  There shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee.  To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating to the Trust or the Beneficial Owners, such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Trust Agreement.  The Delaware Trustee shall have no liability for the acts or omissions of any Trustee.  Any permissive rights of the Delaware Trustee to do things enumerated in this Trust Agreement shall not be construed as a duty and, with respect to any such permissive rights, the Delaware Trustee shall not be answerable for other than its willful misconduct, bad faith or fraud.  The Delaware Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Trust Agreement at the request or direction of the Trustee or any other person pursuant to the provisions of this Trust Agreement unless the Trustee or such other person shall have offered to the Delaware Trustee security or indemnity (satisfactory to the Delaware Trustee in its discretion) against the costs, expenses and liabilities that may be incurred by it in compliance with such request or direction.  The Delaware Trustee shall be entitled to request and receive written instructions from the Trustee and shall have no responsibility or liability for any losses or damages of any nature that may arise from any action taken or not taken by the Delaware Trustee in accordance with the written direction of the Trustee.  The Delaware Trustee may, at the

21

expense of the Trust, request, rely on and act in accordance with officer's certificates and/or opinions of counsel, and shall incur no liability and shall be fully protected in acting or refraining from acting in accordance with such officer's certificates and opinions of counsel.

(c)     The Delaware Trustee shall serve until such time as either the Trustee removes the Delaware Trustee or the Delaware Trustee resigns, and a successor Delaware Trustee is appointed by the Trustee in accordance with the terms of Section 4.9(d) below.  The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Trustee; provided that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustee in accordance with Section 4.9(d) below; provided further that if any amounts due and owing to the Delaware Trustee hereunder remain unpaid for more than ninety (90) days, the Delaware Trustee shall be entitled to resign immediately by giving written notice to the Trustee.  If the Trustee does not act within such sixty (60) day period, the Delaware Trustee, at the expense of the Trust, may apply to the Court of Chancery of the State of Delaware or any other court of competent jurisdiction for the appointment of a successor Delaware Trustee.

(d)     Upon the resignation or removal of the Delaware Trustee, the Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of section 3807 of the Act.  Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustee, and any fees and expenses due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully

vested with all the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of his or her duties and obligations under this Trust Agreement.  The successor Delaware Trustee shall make any related filings required under the Act, including filing a Certificate of Amendment to the Certificate of Trust of the Trust in accordance with section 3810 of the Act.

(e)     Notwithstanding anything herein to the contrary, any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated or any entity resulting from any merger, conversion or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the Parties hereto.

(f)     The Delaware Trustee shall be entitled to compensation for its services as agreed pursuant to a separate fee agreement between the Trust and the Delaware Trustee, which compensation shall be paid by the Trust.  Such compensation is intended for the Delaware Trustee's services as contemplated by this Trust Agreement.  The terms of this paragraph shall survive termination of this Trust Agreement and/or the earlier resignation or removal of the Delaware Trustee.

(g)     The Delaware Trustee shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document, other than this Trust Agreement, whether or not, an original or a copy of such agreement has been provided to the Delaware Trustee.  The Delaware Trustee shall have no duty to know or inquire as to the performance or non-performance of any provision of any other agreement, instrument or

document, other than this Trust Agreement. Neither the Delaware Trustee nor any of its directors, officers, employees, agents or affiliates shall be responsible for nor have any duty to monitor the performance or any action of the Trust, the Trustee or any other person, or any of their directors, members, officers, agents, affiliates or employee, nor shall it have any liability in connection with the malfeasance or nonfeasance by such party. The Delaware Trustee may assume performance by all such persons of their respective obligations. The Delaware Trustee shall have no enforcement or notification obligations relating to breaches of representations or warranties of any other person. The Delaware Trustee shall have no responsibilities (except as expressly set forth herein) as to the validity, sufficiency, value, genuineness, ownership or transferability of any Trust Asset, written instructions, or any other documents in connection therewith, and will not be regarded as making, nor be required to make, any representations thereto.

(h)     The Delaware Trustee shall not be responsible or liable for any failure or delay in the performance of its obligations under this Trust Agreement arising out of, or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority; acts of God; earthquakes; fires; floods; wars; terrorism; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.

## ARTICLE V

## TRUST ADVISORY COMMITTEE

5.1     **Members**.  The TAC shall consist of ~~seven~~eleven (~~7~~11) members.  To the extent that a member of the TAC elects to resign from the TAC in accordance with Section 5.3(b) below or is removed pursuant to Section 5.3(c) below, a successor shall be appointed pursuant to Section 5.4(a).

5.2     **Duties**.  The members of the TAC shall serve in a fiduciary capacity, representing the interests of all holders of PI/WD Claims.  The TAC shall have no fiduciary obligations or duties to any party other than the holders of PI/WD Claims.  The Trustee must obtain the consent of the TAC on matters identified in Section 2.2(e) above.  Where provided in the TDP, certain other actions by the Trustee are also subject to the consent of the TAC.  Except for the duties and obligations expressed in this Trust Agreement and the TDP, there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the TAC. To the extent that, at law or in equity, the TAC has duties (including fiduciary duties) and liabilities relating thereto to the Trust, the other Parties hereto or any Beneficial Owner of the Trust, it is hereby understood and agreed by the other Parties hereto that such duties and liabilities are replaced by the duties and liabilities of the TAC expressly set forth in the Trust Documents.

5.3     **Term of Office**.

(a)     Each member of the TAC shall serve until the earlier of (i) his or her death; (ii) his or her resignation pursuant to Section 5.3(b) below; (iii) his or her removal pursuant to Section 5.3(c) below; or (iv) the termination of the Trust pursuant to Section 6.2 below.

(b)     A member of the TAC may resign at any time by written notice to the other member of the TAC and the Trustee.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than thirty (30) days after the date such notice is given, where practicable.

(c)     A member of the TAC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause.  Such removal may be made by the vote of the majority of the remaining members of the TAC with the approval of the Trustee.

5.4     **Appointment of Successors**.

(a)     If a member of the TAC dies or resigns pursuant to Section 5.3(b) above, or is removed pursuant to Section 5.3(c) above, the vacancy shall be filled with an individual selected by a vote of the majority of the remaining TAC members with the approval of the Trustee, provided, however, that if the majority of the remaining TAC members and the Trustee cannot agree on the successor the matter shall be resolved pursuant to Section 6.12 below.

(b)     Each successor TAC member shall serve until the earlier of (i) his or her death; (ii) his or her resignation pursuant to Section 5.3(b) above; (iii) his or her removal pursuant to Section 5.3(c) above; or (iv) the termination of the Trust pursuant to Section 6.2 below.

(c)     No successor TAC member shall be liable personally for any act or omission of his or her predecessor TAC member.  No successor TAC member shall have any duty to investigate the acts or omissions of his or her predecessor TAC member.

5.5    **Compensation and Expenses of the TAC**.  The members of the TAC shall not receive compensation from the Trust for their services as TAC members but shall be reimbursed for all reasonable out-of-pocket costs or expenses incurred in connection with the performance of such member's duties hereunder.  A description of the amounts paid under this Section 5.5 shall be included in the Annual Report.

5.6    **No Bond**.  The members of the TAC shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

5.7    **Procedures for Obtaining Consent of the TAC**.

(a)    Where the Trustee is required to obtain the consent of the TAC pursuant to Section 2.2(e) above, the TDP or otherwise, the Trustee shall provide the TAC with a written notice stating that its consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons why the Trustee desires to take such action.  The Trustee shall provide the TAC as much relevant information concerning the proposed action as is reasonably practicable under the circumstances. The Trustee shall also provide the TAC with reasonable access to the professionals or experts retained by the Trust and its staff (if any) as the TAC may reasonably request during the time that the Trustee is considering such action, and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

(b)    The TAC must consider in good faith and in a timely fashion any request for its consent by the Trustee and must in any event advise the Trustee in writing of its consent or objection to the proposed action within five (5) business days of receiving the original request for consent from the Trustee.  The TAC may not withhold its consent unreasonably.  If the TAC

decides to withhold consent, it must explain in detail its objections to the proposed action.  If the TAC does not advise the Trustee in writing of its consent or objections to the proposed action within five (5) days of receiving notice regarding such request, then consent of the TAC to the proposed action shall be deemed to have been affirmatively granted.

(c)    If, after following the procedures specified in this Section 5.7, the TAC continues to object to the proposed action and to withhold its consent to the proposed action, the Trustee and the TAC shall resolve their dispute pursuant to Section 6.12.  The TAC shall bear the burden of proving that it reasonably withheld its consent.  If the TAC meets that burden, the Trust shall then bear the burden of showing why it should be permitted to take the proposed action notwithstanding the TAC's reasonable objection.

(d)    Action by the TAC shall require the affirmative vote of the majority of the TAC members then in office, except where the Trust Documents expressly require the unanimous consent of the TAC.

## ARTICLE VI

## GENERAL PROVISIONS

6.1    **Irrevocability**.  To the fullest extent permitted by applicable law, the Trust is irrevocable.

6.2    **Term; Termination**.

(a)    The term for which the Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the provisions of this Section 6.2.

(b)    The Trust shall automatically dissolve as soon as practicable but no later than ninety (90) days after the date on which the Bankruptcy Court approves the dissolution upon the satisfaction of the purposes of the Trust, wherein (i) all reasonably expected assets have been

collected; (ii) all payments with respect to PI/WD Claims under Section 3.4 above have been made; (iii) necessary arrangements and reserves have been made to discharge all anticipated remaining obligations and operating expenses in a manner consistent with Trust Documents; and (iv) a final accounting has been filed and approved by the Bankruptcy Court (the "**Dissolution Date**").

(c)     On the Dissolution Date or as soon as reasonably practicable thereafter, after the wind-up of the affairs of the Trust by the Trustee and payment of all of the Trust's liabilities have been provided for as required by applicable law including section 3808 of the Act, all monies remaining in the Trust shall be distributed or disbursed in accordance with Section 3.4.

(d)     Following the dissolution and distribution of the assets of the Trust, the Trust shall terminate, and the Trustee shall execute and cause a Certificate of Cancellation of the Certificate of Trust of the Trust to be filed in accordance with the Act.   Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.  A certified copy of the Certificate of Cancellation shall be given to the Delaware Trustee for its records promptly following such filing.

6.3    **Amendments**.  Any amendment to or modification of this Trust Agreement must be made in writing.  The Trustee may amend this Trust Agreement with the unanimous consent of the TAC from time to time, without the consent, approval or other authorization of but with notice to the Bankruptcy Court, to make:  (i) minor modifications or clarifying amendments necessary to enable the Trustee to effectuate the provisions of this Trust Agreement including Exhibits hereto; (ii) amendments to the TDP or any TDP Supplements; or (iii) modifications to satisfy any requirements, conditions or guidelines contained in any opinion, directive, order,

statute, ruling or regulation of any federal, state or other applicable governmental entity. Notwithstanding the foregoing, the TDP or any TDP Supplement may be amended in writing by the Trustee with the unanimous consent of the TAC without an order of the Bankruptcy Court, provided, however, the amended TDP or TDP Supplement shall be filed with the Bankruptcy Court within thirty (30) days following the effective date of such amended TDP or TDP Supplement.  Notwithstanding the foregoing, (i) no amendment or modification of this Trust Agreement shall modify this Trust Agreement in a manner that is inconsistent with the Plan or the Confirmation Order without the approval of the Bankruptcy Court, other than to make minor modifications or clarifying amendments as necessary to enable the Trustee to effectuate the provisions of this Trust Agreement; (ii) neither this Trust Agreement, the TDP, any TDP Supplement, nor any other Exhibit to this Trust Agreement or the TDP shall be modified or amended in any way that could jeopardize, impair, or modify the Trust's Qualified Settlement Fund status under the QSF Regulations; and (iii) any amendment or modification of this Trust Agreement, or Exhibit hereto, or the TDP, or schedule thereto, affecting the rights, duties, immunities or liabilities of the Delaware Trustee shall require the Delaware Trustee's written consent. **<u>Severability</u>**.  Should any provision in this Trust Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement.

6.5 **<u>Notices</u>**.

(a) Notices to persons asserting PI/WD Claims shall be given in accordance with such person's claims form submitted to the Trust with respect to his, her or its PI/WD Claim.

(b) Any notices or other communications required or permitted hereunder to the following Parties shall be in writing and delivered to the addresses or e-mail addresses

designated below, or to such other addresses or e-mail addresses as may hereafter be furnished in writing to each of the other Parties listed below in compliance with the terms hereof.

To the Trust:

[_____]

With a copy to:

[_____]

To the Delaware Trustee;

[_____]

With a copy to:

[_____]

To the TAC:

[_____]

[_____]

[_____]

With a copy to:

[_____]

[_____]

[_____]

(c)    All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses.

6.6    **Successors and Assigns**.    The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Trust, the TAC, the Trustee, and their respective

successors and assigns, except that neither the Trust, the TAC, nor the Trustee, may assign or otherwise transfer any of their rights or obligations, if any, under this Trust Agreement except in the case of the Trustee in accordance with Section 4.2(a) above, and in the case of the TAC members in accordance with Section 5.4(b) above.

6.7    **Limitation on PI/WD Claims Interests for Securities Laws Purposes**.  PI/WD Claims, and any interests therein, shall not:  (a) be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will, under the laws of descent and distribution or otherwise by operation of law; (b) be evidenced by a certificate or other instrument; (c) possess any voting rights; and (d) be entitled to receive any dividends or interest.

6.8    **Exemption from Registration**.  The Parties hereto intend that the interests of the Beneficial Owners under this Trust Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws.  If it should be determined that any such interests constitute "securities," the Parties hereto intend that the exemption provisions of section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of the beneficial interests in the Trust will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

6.9    **Entire Agreement; No Waiver**.  The entire agreement of the Parties relating to the subject matter of this Trust Agreement is contained herein (including the TDP), and in the documents referred to herein (including the Plan), and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof.  No failure

to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof or of any other right, power, or privilege.  The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

6.10   **Headings**.   The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

6.11   **Governing Law**.  The validity and construction of this Trust Agreement and all amendments hereto and thereto shall be governed by the laws of the State of Delaware, and the rights of all Parties hereto and the effect of every provision hereof shall be subject to and construed according to the laws of the State of Delaware without regard to the conflicts of law provisions thereof that would purport to apply the law of any other jurisdiction; provided, however, that the Parties hereto intend that the provisions hereof shall control and there shall not be applicable to the Trust, the Trustee, the Delaware Trustee, the TAC, or this Trust Agreement, any provision of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to or regulate in a manner inconsistent with the terms hereof:  (a) the filing with any court or governmental body or agency of Trustee accounts or schedules of Trustee fees and charges; (b) affirmative requirements to post bonds for the Trustee, officers, agents, or employees of a trust; (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property; (d) fees or other sums payable to the Trustee, officers, agents, or employees of a trust; (e) the allocation of receipts and expenditures to income or principal; (f) restrictions or limitations on the permissible nature, amount, or concentration of trust investments or requirements relating to the titling, storage, or

other manner of holding of trust assets; (g) the existence of rights or interests (beneficial or otherwise) in trust assets; (h) the ability of beneficial owners or other persons to terminate or dissolve a trust; or (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of the Trustee or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee, the Delaware Trustee, or the TAC, set forth or referenced in this Trust Agreement. section 3540 of the Act shall not apply to the Trust.

6.12    **Dispute Resolution**.  Unless otherwise expressly provided for herein, the dispute resolution procedures of this Section 6.12 shall be the exclusive mechanism to resolve any dispute arising under or with respect to this Trust Agreement. For the avoidance of doubt, this Section 6.12 shall not apply to any dispute with respect to the resolution of PI/WD Claims which shall be governed exclusively by the TDP.

(a)    **Informal Dispute Resolution**.  Any dispute under this Trust Agreement shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when a disputing party sends to the counterparty or counterparties a written notice of dispute ("**Notice of Dispute**").  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed thirty (30) days from the date the Notice of Dispute is received by the counterparty or counterparties, unless that period is modified by written agreement of the disputing party and counterparty or counterparties.  If the disputing party and the counterparty or counterparties cannot resolve the dispute by informal negotiations, then the disputing party may invoke the formal dispute resolution procedures as set forth below.

(b)    **Formal Dispute Resolution**.  The disputing party shall invoke formal dispute resolution procedures, within the time period provided in the preceding subparagraph, by serving

on the counterparty or counterparties a written statement of position regarding the matter in dispute ("**Statement of Position**").  The Statement of Position shall include, but need not be limited to, any factual data, analysis or opinion supporting the disputing party's position, and any supporting documentation and legal authorities relied upon by the disputing party.  Each counterparty shall serve its Statement of Position within thirty (30) days of receipt of the disputing party's Statement of Position, which shall also include, but need not be limited to, any factual data, analysis or opinion supporting the counterparty's position, and any supporting documentation and legal authorities relied upon by the counterparty.  If the disputing party and the counterparty or counterparties are unable to consensually resolve the dispute within thirty (30) days after the last of all counterparties have served its Statement of Position on the disputing party, the disputing party may file with the Bankruptcy Court a motion for judicial review of the dispute in accordance with Section 6.12(d).

(c)    **Judicial Review**.  The disputing party may seek judicial review of the dispute by filing with the Bankruptcy Court (or, if the Bankruptcy Court shall not have jurisdiction over such dispute, such court as has jurisdiction pursuant to Section 1.5 above) and serving on the counterparty or counterparties and the Trustee, a motion requesting judicial resolution of the dispute.  The motion must be filed within forty-five (45) days of receipt of the last counterparty's Statement of Position pursuant to the preceding subparagraph.  The motion shall contain a written statement of the disputing party's position on the matter in dispute, including any supporting factual data, analysis, opinion, documentation and legal authorities, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly administration of the Trust.  Each counterparty shall respond to the motion within the time

period allowed by the rules of the court, and the disputing party may file a reply memorandum, to the extent permitted by the rules of the court.

6.13    **Effectiveness**.   This Trust Agreement shall become effective on the Effective Date.

6.14    **Counterpart Signatures**.   This Trust Agreement may be executed in any number of counterparts and by different Parties on separate counterparts (including by PDF transmitted by e-mail), and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties have executed this Trust Agreement this _____ day

of _____, 2025.


**TRUSTEE**                                    **DELAWARE TRUSTEE**

[_____]                                 [_____]

**Ellen K. Reisman**

By:_____                By:_____

    Name:                                          Name:

    Title:                                         Title:


**TRUST ADVISORY COMMITTEE**

**N. Kirkland Pope**                           **C. Calvin Warriner**

[TAC Member #1]                                [TAC Member #5]

By:_____                By:_____

    Name:                                          Name:

    Title:                                         Title:

[TAC Member #2]                                [TAC Member #6]

**Ellen Relkin**                               **Joseph H. Saunders**

By:_____                By:_____

    Name:                                          Name:

    Title:                                         Title:

[TAC Member #3]                                [TAC Member #7]

**Rayna E. Kessler**                           **Kevin N. Fitzgerald**

By:_____                By:_____

    Name:                                          Name:

    Title:                                         Title:

**Jason S. Goldstein**                         **David Harman**

[TAC Member #4]

    _____

By: _____
    Name:
_____ Title:

**David Landever**                  **Ashleigh Raso**


_____    _____

**George Williamson**


_____

## **EXHIBIT 1**

## **TRUST DISTRIBUTION PROCEDURES**

## **EXHIBIT 2**

## **CERTIFICATE OF TRUST**

## EXHIBIT 3

### INVESTMENT GUIDELINES

**In General**.  Only the following investments will be permitted:

(i)     Demand and time deposits, such as certificates of deposit, in banks or other savings institutions whose deposits are federally insured;

(ii)    U.S. Treasury bills, bonds, and notes, including, but not limited to, long-term U.S. Treasury bills, bonds, notes, and other Government Securities as defined under Section 2(a)(16) of the Investment Company Act of 1940, 15 U.S.C. § 80a-2(a)(16), including, but not limited to, Fannie Mae, Freddie Mac, Federal Home Loan Bank, and Federal Farm Credit;

(iii)   Repurchase agreements for U.S. Treasury bills, bonds, and notes;

(iv)    AA or AAA corporate bonds (with the rating awarded by at least two of the three major rating agencies (Standard & Poor's, Moody's, or Fitch)); or

(v)     Open-ended mutual funds owning only assets described in subparts (i) through (iv) of this subsection.

The value of bonds of any single company and its affiliates owned by the Trust directly rather than through a mutual fund shall not exceed 10% of the investment portfolio at time of purchase; this restriction does not apply to any of the following:   Repurchase Agreements; Money Market Funds; U.S. Treasuries; and U.S. Government Agencies.

Any such investments shall be made consistently with the Uniform Prudent Investor Act. The determination of the rating of any investments shall be made by the Trust's financial advisor on the date of acquisition of any such investment or on the date of re-investment.  The Trust's financial advisor shall reconfirm that all investments of Trust Assets still meet the original rating requirement on a quarterly basis.  If the Trust's financial advisors determine that any particular investment no longer meets the rating requirement, there shall be a substitution of that investment with an investment that meets the ratings requirement as promptly as practicable, but in no event later than the next reporting period. Previously purchased securities downgraded below AA may be held for a reasonable and prudent period of time if the Trust's financial advisor believes it is in the interest of the Trust to do so.

The borrowing of funds or securities for the purpose of leveraging, shorting, or other investments is prohibited; provided this limitation shall not alter or impair in any respect the power granted to the Trustee under Section 2.1 of the Trust Agreement.  Investment in non-U.S. dollar denominated bonds is prohibited.  The standing default investment instruction for all cash in any account or subaccount that holds any Trust Assets in cash shall be invested in the [BlackRock Fed Fund (CUSIP 09248U809)].

See example fund-level requirements table on following page.

# Fund Level Requirements

1. OTC Derivatives Counterparty Exposure – Not allowed
2. Non-U.S. dollar denominated bonds – Not allowed

| TYPE OF INVESTMENT | ELIGIBLE | PROHIBITED | COMMENTS |
|---|---|---|---|
| | | | |
| U.S. Treasury Securities | X | | |
| U.S. Agency Securities | X | | |
| Mortgage-Related Securities | | X | |
| Asset-Backed Securities | | X | |
| Corporate Securities (public) | X | | |
| Municipal bonds | X | | |
| | | | |
| **DERIVATIVES:** | | No investment, including futures, options and other derivatives, may be purchased if its return is directly or indirectly determined by an investment prohibited elsewhere in these guidelines. | |
| Futures | | X | |
| Options | | X | |
| Currency Forwards | | X | |
| Currency Futures | | X | |
| Currency Options | | X | |
| Currency Swaps | | X | |
| Interest Rate Swaps | | X | |
| Total Return Swaps | | X | |
| Structured Notes | | X | |
| Collateralized Debt Obligations | | X | |
| Credit Default Swaps | | X | |
| Mortgage-Related Derivatives | | X | |
| | | | |
| **FOREIGN / NON-U.S. DOLLAR:** | | | |
| Foreign CDs | | X | |
| Foreign U.S. Dollar Denominated Securities | | X | |
| Non-U.S. Dollar Denominated Bonds | | X | |
| Supranational U.S. Dollar Denominated Securities | | X | |
| | | | |
| **COMMINGLED VEHICLES (except STIF):** | | | |
| Collective Funds | | X | |
| Commingled Trust Funds (open ended mutual funds only) | | X | |
| Common Trust Funds | | X | |
| Registered Investment Companies | | X | |
| | | | |
| **MONEY MARKET SECURITIES:** | | | |
| Qualified STIF | | X | |
| Interest Bearing Bank Obligations Insured by a Federal or State Agency | X | | |
| Commercial Paper | | X | |
| Master Note Agreements and Demand Notes | | X | |
| Repurchase Agreements | | X | |
| | | | |
| **OTHER:** | | | |
| Bank Loans | | X | |
| Convertibles (e.g., Lyons) | | X | |
| Municipal Bonds | X | | |
| Preferred Stock | | X | |
| Private Placements (excluding 144A) | X | | |
| Rule 144A Issues | X | | |
| Zero Coupon Bonds | X | | |
| Commodities | | X | |
| Catastrophe Bonds | | X | |